# No. 20-2128

## In the United States Court of Appeals
## For the Third Circuit

MONIQUE RUSSELL; JASMINE RIGGINS; ELSA M. POWELL; DESIRE EVANS

v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,

*Appellant*

On Appeal from the United States District Court for the Eastern District of Pennsylvania, No. 2:18-cv-05629-JDW (Wolson, J.)

## BRIEF OF APPELLANT AND JOINT APPENDIX (VOLUME I, PAGES JA1 TO JA78)

MORGAN, LEWIS & BOCKIUS LLP
  Brian W. Shaffer
  Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103
(215) 963-5000

MORGAN, LEWIS & BOCKIUS LLP
  William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

*Counsel for Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit Local Appellate Rule 26.1, Defendant-Petitioner Educational Commission for Foreign Medical Graduates makes the following disclosure:

(1)    For nongovernmental corporate parties, please list all parent corporations:

*Educational Commission for Foreign Medical Graduates has no parent corporation.*

(2)    For nongovernmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

*No publicly held corporation owns more than 10% of Educational Commission for Foreign Medical Graduates' stock.*

(3)    If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*At this time, Educational Commission for Foreign Medical Graduates believes that AIG may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy a possible judgment in the action.*

i

4)      In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: (1) the debtor, if not identified in the case caption; (2) the members of the creditors' committee or the top 20 unsecured creditors; and, (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

*Not applicable.*

Dated:  September 2, 2020                    Respectfully submitted,

Morgan, Lewis & Bockius LLP

By:    */s/ William R. Peterson*
          William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ...................................................................i

Table of Citations.......................................................................................v

Statement of Jurisdiction.............................................................................1

Statement of the Issues...............................................................................2

Statement of the Case.................................................................................3

Summary of the Argument.........................................................................14

Standard of Review...................................................................................17

Argument.................................................................................................18

I.      The District Court Erred in Analyzing Rule 23(a). ......................................18

      A.     The district court did not find—and Named Plaintiffs did not show—that their alleged emotional distress is typical of the class. ......................................................................................19

      B.     Named Plaintiffs fail typicality and adequacy because they propose to inflict emotional distress on class members......................22

      C.     Named Plaintiffs' proposal to certify only claims for emotional distress defeats Rule 23(a)'s typicality and adequacy requirements. ......................................................24

II.    The District Court Erred by Certifying a Class Without Finding that Named Plaintiffs Satisfied Rule 23(b).............................................................28

      A.     Class certification requires the party seeking certification to satisfy one of the three subsections of Rule 23(b). ............................30

# TABLE OF CONTENTS
## (continued)

**Page**

B.     This Court should, consistent with *Gates*, require Rule 23(b)(3) to be satisfied for the claim as a whole, even when a party seeking certification invokes Rule 23(c)(4)..............................32

III.   The District Court Abused Its Discretion in Analyzing the *Gates* Factors....................................................................................................39

A.     The district court erred in analyzing choice-of-law and inconsistencies among state law.........................................................40

      1.     Plaintiffs failed to present the required "extensive analysis" of state law. ...............................................................41

      2.     The district court erred in holding, in the alternative, that Pennsylvania law governs the claims of out-of-state plaintiffs based on out-of-state medical treatment. ......................................................................43

B.     The district court failed to consider the type of claim at issue, including that claims of emotional distress are particularly unsuitable for class treatment.............................................................46

C.     The district court abused its discretion in analyzing the efficiencies to be gained.....................................................................49

D.     The district court's analysis would permit certification of an issue class in virtually any case............................................................53

Conclusion & Prayer for Relief ..............................................................55

Certificate of Bar Membership, Compliance with Type-Volume Limitation and Typeface Requirements, and Virus Check.........................................56

Certificate of Service ..............................................................................57

Joint Appendix (Volume I, Pages JA1 to JA78)

# TABLE OF CITATIONS

**Page(s)**

## CASES

*A.H. by next friends C.H. v. Church of God in Christ, Inc.*,
   831 S.E.2d 460 (Va. 2019) ................................................................43

*Aiello v. Providian Fin. Corp.*,
   239 F.3d 876 (7th Cir. 2001) ...........................................................49

*Alban v. Fiels*,
   61 A.3d 867 (Md. 2013) ............................................................11, 42

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)...........................................................................19

*Arch v. Am. Tobacco Co., Inc.*,
   175 F.R.D. 469 (E.D. Pa. 1997).......................................................26

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ...........................................................18, 20

*Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*,
   637 F.3d 827 (7th Cir. 2011) ...........................................................26

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) .............................................................18

*Bruni v. City of Pittsburgh*,
   941 F.3d 73 (3d Cir. 2019) ...............................................................46

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) .................................................29, 33, 42

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)........................................................14, 17, 31, 38

*D.C. by & through Garter v. County of San Diego*,
   783 F. App'x 766 (9th Cir. 2019) .....................................................52

TABLE OF CITATIONS
(continued)

**Page(s)**

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ...........................................................................20

*Ferreras v. Am. Airlines, Inc.*,
946 F.3d 178 (3d Cir. 2019) ......................................................................31, 33

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011) .....................................................................*passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)...............................................................17, 18, 20, 54

*Gonzalez v. Corning*,
885 F.3d 186 (3d Cir. 2018) ............................................................36, 37, 38, 52

*Grandalski v. Quest Diagnostics Inc.*,
767 F.3d 175 (3d Cir. 2014) ................................................................40, 41, 45

*Griffith v. United Air Lines, Inc.*,
203 A.2d 796 (Pa. 1964) .................................................................................44

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989).........................................................................................45

*Hedgepeth v. Whitman Walker Clinic*,
22 A.3d 789 (D.C. 2011) .................................................................................43

*Hohider v. United Parcel Serv., Inc.*,
574 F.3d 169 (3d Cir. 2009) ......................................................................35, 36

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) ...........................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006) ..............................................................................17

*In re Krebs*,
527 F.3d 82 (3d Cir. 2008) ..............................................................................38

# TABLE OF CITATIONS
(continued)

**Page(s)**

*In re Modafinil Antitrust Litig.*,
  837 F.3d 238 (3d Cir. 2016) ................................................................17, 22, 31

*In re Nassau Cty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) ...........................................................................30

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ...........................................................................20

*In re Sch. Asbestos Litig.*,
  789 F.2d 996 (3d Cir. 1986) ...........................................................................41

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) .....................................................................18, 21

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*,
  421 F.Supp. 3d 12, 45 (E.D. Pa. 2019) ...........................................................39

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
  967 F.3d 264 (3d Cir. 2020) ...........................................................................34

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ......................................................................41

*Luppino v. Mercedes Benz USA*,
  718 F. App'x 143 (3d Cir. 2017) ...............................................................38, 39

*Maniscalco v. Brother Int'l (USA) Corp.*,
  709 F.3d 202 (3d Cir. 2013) ...........................................................................45

*Marcus v. BMW of N.A., LLC*,
  687 F.3d 583 (3d Cir. 2012) .....................................................................17, 38

*Martin v. Behr Dayton Thermal Prods. LLC*,
  896 F.3d 405 (6th Cir. 2018) ..........................................................................34

*McKenna v. City of Philadelphia*,
  649 F.3d 171 (3d Cir. 2011) ...........................................................................50

# TABLE OF CITATIONS
### (continued)

**Page(s)**

*Nafar v. Hollywood Tanning Sys., Inc.*,
  339 F. App'x 216 (3d Cir. 2009) ........................................................25

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ..............................................................20

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ..............................................................23

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) .............................................................21

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .............................................................21

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985).........................................................................43

*Robertson v. Monsanto Co.*,
  287 F. App'x 354 (5th Cir. 2008) .......................................................46

*Romero v. Allstate Ins. Co.*,
  52 F. Supp. 3d 715, 724 (E.D. Pa. 2014)......................................38, 39

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
  211 F.3d 1228 (11th Cir. 2000) ....................................................47, 48

*Slade v. Progressive Sec. Ins. Co.*,
  856 F. 3d 408 (5th Cir. 2017) ......................................................26, 27

*Spence v. Bd. of Educ. of Christina Sch. Dist.*,
  806 F.2d 1198 (3d Cir. 1986) ....................................10, 15, 47, 51

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ..............................................................40

*Taylor v. Johnston*,
  985 P.2d 460 (Alaska 1999) ..............................................................28

# TABLE OF CITATIONS
(continued)

**Page(s)**

*Township of Bordentown, N.J. v. FERC*,
   903 F.3d 234 (3d Cir. 2018) ............................................................51

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016).........................................................20, 34

*Walmart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).........................................................................18

*Walsh v. Ford Motor Co.*,
   807 F.2d 1000 (D.C. Cir. 1986).....................................................41

## STATUTES & CONSTITUTIONAL PROVISIONS

28 U.S.C. § 1292 ..................................................................................1

28 U.S.C. § 1332 ..................................................................................1

U.S. Const. art. I, § 8, cl. 3................................................................45

U.S. Const. art. III ..............................................................................20

## RULES

Fed. R. Civ. P. 23 .......................................................................*passim*

## OTHER AUTHORITIES

Principles of the Law of Aggregate Litigation (2010)...................48, 49

Restatement (Second) of Conflict of Laws § 148 (1971)..............44, 45

Restatement (Second) of Torts § 324A (1965)..............................13

Restatement (Second) of Torts § 892B (1979).............................28

Restatement (Third) of Torts: Inten. Torts to Persons (2019)..............29

## STATEMENT OF JURISDICTION

The district court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), over this class action in which the alleged amount in controversy exceeds the sum of $5,000,000 exclusive of costs and interest, there are more than 100 members in the proposed putative class, and there is diversity between the defendant (a citizen of Pennsylvania) and at least one of the putative plaintiffs. *See* JA83–JA88 (Notice of Removal, detailing the basis for the district court's jurisdiction).

This Court has jurisdiction over this interlocutory appeal of a class certification decision pursuant to 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f). The district court certified the class on March 23, 2020. JA63–JA65. Appellant Educational Commission for Foreign Medical Graduates filed a timely petition for permission to appeal on April 6, 2020 (JA1–JA34), which a motions panel of this Court granted on May 11 (JA66).

## STATEMENT OF THE ISSUES

1.      Whether Named Plaintiffs satisfied their burden to prove adequacy and typicality under Rule 23(a) when:

     a.      Named Plaintiffs failed to demonstrate that the emotional distress they allegedly suffered was typical of other class members;

     b.      under Named Plaintiffs' theory, certifying the class and providing notice would inflict emotional distress on class members; and

     c.      Named Plaintiffs are acting adversely to the interests of class members by asserting claims only for emotional distress (and no other injuries).

2.      Whether Rule 23 permits certification of the class action in the absence of a finding that plaintiffs satisfied one of the subsections of Rule 23(b).

3.      Whether the district court correctly analyzed the factors set forth in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011), including:

     a.      whether the district court erred in analyzing variations in state law;

     b.      whether the district court erred by failing to consider the type of claim at issue, including this Court's holding that emotional distress liability and damages are too interwoven to be tried separately; and

     c.      whether the district court erred in analyzing efficiencies created by certifying only duty and breach, while deferring all other issues—including affirmative defenses, causation, injury, and damages—for later  proceedings.

## STATEMENT OF THE CASE

This appeal concerns the certification of a class action against the Educational Commission for Foreign Medical Graduates ("ECFMG"), a Philadelphia-based private non-profit organization that promotes quality health care for the public. JA201.  Among other services, ECFMG certifies graduates of international medical schools as having met certain criteria to enter U.S. graduate medical education (usually residency programs).  *Id.*

The certification provided by ECFMG is circumscribed.  At the relevant time, ECFMG  (1) certified that an applicant received passing grades on an English exam and two substantive exams (the first two steps of the United States Medical Licensing Examination ("USMLE")), JA205–JA206;  JA653 at 88:21–89:2; and (2) primary source verified the diploma provided by an applicant by asking the issuing medical school to confirm its legitimacy, JA653 at 88:3–14.

ECFMG does not make any additional representations regarding the applicant.  In particular, ECFMG does not (and is not expected to) verify an applicant's identity, Social Security number, immigration status, passport information, criminal background, readiness to treat patients, ethics, honesty, morality, or character.  JA681 at 198:16–22, 200:13–15; JA691–JA692 at 240:18–241:6, 242:6–243:3, 244:22–245:13.

ECFMG does not provide its certifications to the general public. Instead, it discloses certification information only to residency programs, licensing boards, and organizations that employ physicians. JA692 at 243:4–244:8. There is no suggestion in this case that any recipient of ECFMG certification information misunderstood its limited scope or relied on it for purposes for which it was not intended.

### Dr. Akoda

Plaintiffs are a class of individuals who received medical treatment from obstetrician/gynecologist John Nosa Akoda, who was issued a certificate from ECFMG in 1997. JA275.

The district court (and Named Plaintiffs) erroneously stated that John Akoda "was not a doctor." JA35. This is incorrect: public records reflect that "John Akoda" was licensed to practice medicine in Maryland and Virginia,[1] and it is undisputed that he was fully licensed to practice medicine when he treated class members.

Plaintiffs' true complaint is not that John Akoda was not licensed to practice medicine (he was), it is that Plaintiffs believe that John Akoda should not have been

---

[1] *See* Maryland Board of Physicians, https://www.mbp.state.md.us/bpqapp/ Profile.aspx (Maryland license for Dr. Charles John Nosa Akoda issued on September 14, 2011 and revoked on July 10, 2017); https://dhp.virginia interactive.org/Lookup/Detail/0101250081 (Virginia license for "Charles J. Akoda" issued on June 21, 2011 and suspended on April 25, 2017).

licensed to practice medicine.  But rather than suing Akoda himself, state Boards that licensed him, or hospitals that employed him, Named Plaintiffs sued ECFMG.

It is undisputed that Dr. Akoda passed the two substantive examinations and presented to ECFMG a medical school diploma in his name that was verified as authentic by the issuing school, the University of Benin, a Nigerian medical school. JA176; JA753.

After obtaining ECFMG certification, Dr. Akoda successfully:

- passed Step 3 of the United States Medical Licensing Examination (USMLE), which provides a final assessment of physicians assuming independent responsibility for delivering general medical care, JA321;

- was admitted to and completed a residency program at Howard University Hospital, JA797; JA799;

- became licensed to practice medicine in Maryland and Virginia, JA321;

- was awarded hospital privileges at Prince George's Hospital Center and hired by several medical offices, *id.*; and

- achieved Board certification in his specialty, JA801.

In 1996, Jersey Shore Medical Center, a residency program that Dr. Akoda had entered, noted for ECFMG certain discrepancies relating to Dr. Akoda's identity. JA279.    Following an investigation—in which Dr. Akoda addressed those discrepancies and provided supporting hard-copy documentation, JA287; JA289— ECFMG found that there was insufficient evidence of misconduct for it to sanction Dr. Akoda.  JA293; JA669 at 150:24–151:6.  Jersey Shore Medical Center also

reported to the Maryland Board of Physicians its suspicion that Dr. Akoda's application for medical licensure in the State of Maryland included an incorrect Social Security number. JA806. The Board took no action against Dr. Akoda.

In November 2016, following a two-year investigation by the U.S. Attorney's office, Dr. Akoda pleaded guilty to misuse of a Social Security number. JA304–JA313. During the course of this investigation, law enforcement did not prevent Dr. Akoda from practicing medicine. Indeed, in 2014, ECFMG was instructed by federal authorities not to take adverse action against Dr. Akoda for fear of impeding the government's ongoing investigation. JA917; JA318–JA324.

The guilty plea was evidence that Dr. Akoda had previously applied to ECFMG under two different names: Oluwafemi Charles Igberase in 1992 and Igberase Oluwafemi Charles in 1994. JA304–JA313. ECFMG immediately revoked his certificate following the guilty plea based on Dr. Akoda's admission that he provided a falsified passport to ECFMG. JA921–JA923.[2]

### *Plaintiffs Sue ECFMG for Emotional Distress*

In December 2018, Named Plaintiffs Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans sued ECFMG in the Court of Common Pleas of

---

[2] Although Dr. Akoda's motive in using a false name is unknown, one possibility is that he believed that his exam history kept him from securing a residency position and reapplying to ECFMG using a different name would allow him to present a "cleaner" profile for new residency applications. JA717.

Philadelphia County on behalf of a putative class of "[a]ll patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." JA102; JA91–JA125.  ECFMG removed the matter to federal court.  JA83–JA88.

ECFMG was not Named Plaintiffs' first choice of defendant.  In September 2017, Monique Russell and Jasmine Evans filed a putative class action against Dimensions Health Corporation (and other defendants) who operated Prince George's Hospital Center, where Dr. Akoda practiced.  *See Russell v. Dimensions Corp.,* CAL 17-22761 (Prince George's Cty. Cir. Ct., Md.).  They were represented in that matter by the same counsel that represents them before this Court.  Russell and Evans voluntarily dismissed the Maryland suit after the defendants filed a motion for summary judgment.  *Id.*

Named Plaintiffs are former patients of Dr. Akoda, either because Dr. Akoda was their regular obstetrician/gynecologist or was the doctor who happened to be "on-call" at the hospital when they gave birth.

Significantly, Named Plaintiffs do not seek any recovery based on any alleged malpractice by Dr. Akoda, any misdiagnosis or improperly performed medical procedure, or any physical injuries.  Instead, the only harm for which they seek recovery is "emotional distress" allegedly suffered when they learned that Dr. Akoda

pleaded guilty to misuse of a social security number. JA1385 at 5:22–25.[3] Perhaps inspired by the statute of limitations, Named Plaintiffs do not allege that they (or class members) suffered any emotional distress at the time of their treatment by Dr. Akoda. Instead, they allege that they suffered emotional distress (and thus that their claim against ECFMG accrued) when they learned of Dr. Akoda's guilty plea.[4]

The four Named Plaintiffs vary significantly in their treatment by and allegations against Dr. Akoda, although none has received any mental health treatment for any "emotional distress" related to Dr. Akoda:

- For Ms. Russell, Dr. Akoda performed a successful emergency c-section. JA1177. She not only does not complain about her treatment but agrees that it "really was best/necessary." JA1182. She never sought any mental health treatment after hearing about Dr. Akoda's guilty plea. JA1139.

- For Ms. Riggins, Dr. Akoda performed a successful elective c-section and provided prenatal care. JA1176. She had no concerns about her treatment and no history of mental health or psychiatric treatment. JA1145.

- For Ms. Powell, Dr. Akoda successfully delivered her baby, performed emergency surgery, and assisted with post-natal care. JA1174. She alleges that Dr. Akoda was flirtatious and made inappropriate comments. *Id.* She has no history of mental health or psychiatric treatment. JA1151.

- For Ms. Evans, Dr. Akoda performed a successful emergency c-section. JA1172. She alleges that he improperly manipulated her clitoris. *Id.* Ms.

---

[3] Although some of the Named Plaintiffs also allege that they suffered offensive touching (i.e., inappropriate treatment) by Dr. Akoda, during the class certification process, Named Plaintiffs confirmed that they were pursuing a theory that the alleged emotional distress was caused by learning information about Dr. Akoda's guilty plea. JA1385 at 5:22–25.

[4] As detailed below, if Named Plaintiffs' theory is correct, then certifying the class and providing notice would inflict emotional distress on unnamed class members.

Evans has extensive history of mental health treatment, both before and after encountering Dr. Akoda. JA1160–JA1162. None of her mental health records refers to Dr. Akoda. JA1161.

### Named Plaintiffs Move for Class Certification

Despite these extensive variations, in October 2019, Named Plaintiffs moved for class certification, asking the district court to certify a class of "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)". JA182. Apparently conceding that emotional distress damages would require individual inquiries, Named Plaintiffs suggested two class certification "options" for the district court under Rule 23(c)(4): one option was "certification on liability only" for negligence and negligent infliction of emotional distress; and the other option was certification of nine different discrete issues. JA182–JA183.

Notably, Named Plaintiffs did not argue that the putative class action satisfied any of the prongs of Rule 23(b). Instead, they argued only that they satisfied Rule 23(a) and "the [r]equirements of Rule 23(c)(4)." JA190. They argued that certification under Rule 23(c)(4) is, in effect, independent of Rule 23(b). JA191–JA193.

Named Plaintiffs made no attempt to analyze variations of the laws of the different states where class members were treated. Instead, counsel merely represented that they were "unaware of meaningful conflicts." *See* JA194

9

("Pennsylvania law will likely apply to all issues in this action—and, at any rate, Plaintiffs are unaware of meaningful conflicts between the tort law of Pennsylvania applicable to resolution of liability or the common issues and the tort law of the states in which Igberase interacted with class members.").

### ECFMG Explains Why Class Certification Is Unwarranted

In response, ECFMG noted that the numerous individual questions of law and fact preclude certification.  At a high level, ECFMG explained that Rule 23(c)(4) could not be used to evade the requirements of Rule 23(b)(3): "Plaintiffs' reliance on Rule 23(c)(4) does not obviate their need to satisfy Rule 23(b)(3)."  JA722.

The proposed class action could not satisfy these standards.  This Court has held that claims for emotional distress cannot be bifurcated in the way that Named Plaintiffs suggest because emotional distress liability and damages are "too interwoven to allow a fair determination of damages apart from liability."  JA724 (quoting, *inter alia*, *Spence v. Bd. of Educ. of Christina Sch. Dist.,* 806 F.2d 1198, 1202 (3d Cir. 1986)).

Similarly, liability could not be determined on a classwide basis because causation presents extremely difficult, individualized inquiries.  JA726–JA729.  ECFMG explained that the Named Plaintiffs "offered no trial plan or other explanation about how they expect to try either proposed issue class in a manageable

way, and concede (as they must) that there will still be thousands of mini-trials even if an issue class is certified." JA730–JA731.

In addition, choice-of-law issues rendered the proposed class unmanageable. The applicable law would be the state where each class member interacted with Dr. Akoda—including Maryland, Virginia, and Washington, D.C. And there are material differences between the laws of these states: Maryland, for example, "does not recognize the tort of negligent infliction of emotional distress." JA732 (quoting *Alban v. Fiels*, 61 A.3d 867, 876 (Md. 2013)).

ECFMG also explained the significant issues under Rule 23(a) caused by Named Plaintiffs' decision to pursue only claims for putative emotional distress. Class members who suffered actual, physical injuries could be precluded from asserting those claims. JA733. And the purported class includes members "who may not yet (or ever) suffer emotional distress." JA734. Not only do Named Plaintiffs not demonstrate that their injuries are typical but if Named Plaintiffs are correct, "some class members might suffer emotional distress only upon receiving notice of this class action, if it is certified." *Id.*

### The District Court Holds a Hearing Regarding Class Certification

After a reply (JA1340–JA1361) and a sur-reply (JA1371–JA1380) were filed, the district court held a hearing regarding class certification on January 30, 2020. Named Plaintiffs acknowledged two important facts at the hearing. First, they

confirmed that the only damages sought by the proposed class would be "emotional distress damages." JA1386 at 6:13–14.

Second, Plaintiffs' counsel acknowledged that the class included individuals who suffered no emotional distress: "Now, it may be, just like with any class, that there are individuals who were treated by Akoda who suffered no—suffered no harm as a result of it, the involvement in the care was minimal. The individuals upon finding out of Akoda's fraud didn't suffer any provable emotional distress." JA1392 at 12:17–21.

The district court also discussed with Plaintiffs' counsel the relationship between Rule 23(b)(3) and Rule 23(c)(4), seeking to confirm that "if I certify a class here, it is ultimately a (b)(3) class." JA1403–JA1404 at 23:25–24:1. Counsel "agree[d] that in essence, it's a (b)(3) class." JA1404 at 24:12; *see also id.* at 24:21–22 ("[I]n this context, it's essentially a (b)(3) class in terms of if we're certifying on the issue of liability.").

### *The District Court Certifies a Class*

Two months later, Judge Wolson certified an issue class under Federal Rule of Civil Procedure 23(c)(4), comprising "All patients examined or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda) beginning with his

enrollment in a postgraduate medical education program at Howard University in 2007." JA63–JA65.[5]

The district court did not certify the issue of "liability" as Named Plaintiffs requested. Instead, the court certified only four discrete issues that make up a part of the liability inquiry:

> (1) whether Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") undertook or otherwise owed a duty to class members;

> (2) whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable to class members pursuant to Restatement (Second) of Torts § 324A;

> (3) whether ECFMG breached any duty that it owed to class members; and

> (4) whether ECFMG breached any duty that it owed to hospitals and state medical boards.

JA64.

The district court expressly declined to consider Rule 23(b), holding instead that it "will consider Rule 23(a) and then turn to the *Gates* factors in conducting its analysis." JA43.

ECFMG petitioned this Court for permission to appeal under Rule 23(f), JA1–JA34, which this Court granted. JA66.

---

[5] The restriction that the class be limited to patients treated after Dr. Akoda enrolled at Howard University was intended to exclude patients treated at Jersey Shore Medical Center and in Nigeria.

## SUMMARY OF THE ARGUMENT

This Court should reverse the order certifying the narrow issues for class treatment.  First, Named Plaintiffs failed to satisfy Rule 23(a).  The district court failed to find that the injury that Named Plaintiffs allegedly suffered—emotional distress upon learning of Dr. Akoda's guilty plea—is typical of class members.  And if Named Plaintiffs' theory were correct, then certifying the class and sending notice to class members would, in fact, inflict emotional distress on class members who are currently uninjured.  The district court failed to address this adversity between Named Plaintiffs and the class.  Nor did the district court correctly analyze the potential effects of the emotional-distress-only class action on members who suffered actual, physical injuries arising out of treatment by Dr. Akoda.

Second, the district court erred by certifying a class without finding that Named Plaintiffs had satisfied any subsection of Rule 23(b).  The plain text of the Rule and black-letter law require that a party seeking certification must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  There are different ways in which this Court's precedent could be harmonized with Rule 23(b), but one proposition is indisputable: a class action cannot be certified without finding that one portion of Rule 23(b) has been satisfied.

Third, the district court erred in analyzing the factors set forth in *Gates*, 655 F.3d 255. With respect to variations in state law, the district court misplaced the burden. Rather than requiring Named Plaintiffs to affirmatively prove that there was no conflict, the district court relied on the fact that the parties did not identify a conflict. And the court was wrong: there are meaningful differences in the availability of recovery for negligent infliction emotional distress among the states. The district court's alternative suggestion—that Pennsylvania law could govern claims by out-of-state plaintiffs arising from out-of-state medical treatment provided by an out-of-state doctor—is erroneous under Pennsylvania choice-of-law rules.

And the district court did not consider "the type of claim(s) and issue(s) in question." Plaintiffs' request for damages for emotional distress should have foreclosed class certification. This Court has already held that emotional distress liability and damages cannot be bifurcated in the way that Named Plaintiffs suggest. *Spence*, 806 F.2d at 1202.

The district court also erred in evaluating whether efficiencies would result from the class action. Given the numerous issues left for individual treatment— including causation, injury, damages, apportionment of fault, as well as all of ECFMG's affirmative defenses—all of the common issues would need to presented again at any individual proceeding. Indeed, the class action certified here is essentially indistinguishable from the class rejected in *Gates*, in which certification

under Rule 23(c)(4) was improper because resolution of the narrow and abstract common issues was "unlikely to substantially aid resolution of the substantial issues on liability and causation." *Gates*, 655 F.3d at 272, 274.

Class certification should be reversed.

## STANDARD OF REVIEW

Class certification is proper only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites" of Rule 23 are met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008).

A party seeking class certification must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 569 U.S. at 33; *accord Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) ("[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)."). "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 248 (3d Cir. 2016).

This Court "review[s] a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 312 (internal quotation marks omitted). "[W]hether an incorrect legal standard has been used is an issue of law to be reviewed de novo." *Id.* (quoting *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006)).

# ARGUMENT

## I.    The District Court Erred in Analyzing Rule 23(a).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).    Two of Rule 23(a)'s requirements—typicality and adequacy—"often 'tend[] to merge' because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (quoting *Falcon*, 457 U.S. at 157–58 n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge.")); *see also Dukes*, 564 U.S. at 349 n.5 (same).

To evaluate typicality, a court must "ask 'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentive of the plaintiffs are aligned with those of the class." *Beck*, 457 F.3d at 295–96 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009) (holding that typicality requires, *inter alia*, that "the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory").    Similarly, Rule 23(a)(4)'s adequacy requirement is designed "to uncover conflicts of interest between named parties and

the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Named Plaintiffs fail to carry their burden to demonstrate either typicality or adequacy.

## A. The district court did not find—and Named Plaintiffs did not show—that their alleged emotional distress is typical of the class.

Named Plaintiffs failed to show that their claims are "typical, in common-sense terms, of the class." Named Plaintiffs allege that they experienced emotional distress as a result of learning that Dr. Akoda pleaded guilty to social security fraud. *See* JA839, JA926, JA957 (claiming to "suffer excruciating emotional anguish as well as fear and anxiety, as a result of learning that Akoda was a fraud"). But in seeking class certification, Named Plaintiffs failed to demonstrate that such an injury is typical of class members, as opposed to their own idiosyncratic reactions.

Indeed, at the hearing, Plaintiffs' counsel acknowledged that the proposed class includes members who did not experience similar emotional distress. *See* JA1392 at 12:21 (acknowledging that the class includes individuals who "didn't suffer any provable emotional distress").

But Plaintiffs made no attempt to prove—and the district court did not make any findings regarding—which of these two reactions was "typical." If Named Plaintiffs' purported emotional distress is atypical and unusual, then Rule 23(a) cannot be satisfied and no class should be certified.

ECFMG does not argue that a class must be defined so that every member has suffered injury and would have Article III standing. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) ("We now squarely hold that unnamed, putative class members need not establish Article III standing."); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016) (involving a class action with some uninjured class members). *But see, e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("The class must therefore be defined in such a way that anyone within it would have standing."). But injury must be typical. If Named Plaintiffs had shown (and the district court found) that emotional distress was a typical reaction of class members, then the possibility of uninjured (atypical) class members would be no bar to certification.

But without a finding that Named Plaintiffs' alleged injuries are typical, Rule 23(a) has not been satisfied. Typicality may be satisfied where class members suffer the "same injury" as the proposed class representatives. *Falcon*, 457 U.S. at 157–58. Typicality may also be satisfied where class members suffered a different injury than the proposed class representatives, so long as all the injuries are shown to result from a single challenged practice. *Baby Neal*, 43 F.3d at 58. But injury must be typical for the proposed class representatives to satisfy the typicality requirement. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (typicality satisfied where class members "all have claims"

arising from defendant's course of conduct). The "test of typicality" includes "whether other members have the same or similar injury." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). If most class members were uninjured, then Named Plaintiffs would not be "sufficiently *similar* to the rest of the class" in their "factual circumstances" to satisfy typicality. *Schering Plough*, 589 F.3d at 597 (emphasis in original).

The Seventh Circuit rejected a proposed class action for similar reasons in *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006), which involved allegations regarding deception about the ingredients in fountain Diet Coke. The Seventh Circuit noted that the proposed class "could include millions who were not deceived and thus have no grievance." *Id.* Because "[c]ountless members of Oshana's putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception," the named plaintiff's claims did not "have the same essential characteristics as the claims of the class at large" and were atypical. *Id.* (internal quotation marks omitted).

The district court erred by failing to consider (or make any findings regarding) the typicality of the Named Plaintiffs' alleged injuries. According to the district court, typicality was satisfied because "the Plaintiffs' claims arise from the same facts and legal theories as members of the class." JA53. In effect, the district court found typicality satisfied because Named Plaintiffs alleged that class members

suffered similar emotional distress.  But allegations are insufficient—typicality must be proven "by a preponderance of the evidence."  *In re Modafinil*, 837 F.3d at 248.

Because the district court failed to perform the requisite rigorous analysis and find that Named Plaintiffs' alleged emotional distress is typical of the class, certification should be reversed.

### B.    Named Plaintiffs fail typicality and adequacy because they propose to inflict emotional distress on class members.

Even more significantly, if Named Plaintiffs were correct that emotional distress is a class members' typical reaction to learning of Dr. Akoda's guilty plea, then certification of the class would inflict injury on class members and cause them to suffer emotional distress.  Under Named Plaintiffs' theory, class members who are unaware of Dr. Akoda's guilty plea have, at present, suffered no compensable injury.  By sending notice of the class action (and guilty plea) to class members, Named Plaintiffs plan to cause them to suffer emotional distress that they would not suffer but for Named Plaintiffs use of the class action vehicle.

It is difficult to imagine a greater conflict of interest between Named Plaintiffs and class members.  Undersigned counsel have identified no other case in which plaintiffs propose to inflict potential injury (emotional distress or otherwise) on class members in order to allow the injured to recover on a classwide basis.  Whether viewed as adequacy or typicality, that conflict of interest precludes class certification.

Typicality requires that "the interests of the class and the class representatives are aligned." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001). Far from being "aligned," Named Plaintiffs affirmatively seek to injure their fellow class members.

Nor can Named Plaintiffs be adequate representatives of class members who would suffer injury only because of Named Plaintiffs' actions. Indeed, during trial of the claim of any class member who became injured after learning of the certification, ECFMG would argue that: (1) the intentional infliction of emotional distress by Named Plaintiffs and class counsel breaks any causal link between ECFMG's actions and a class members' emotional distress; and (2) at a minimum, the jury must apportion some liability for emotional distress to Named Plaintiffs' and their counsel.[6]

---

[6] Indeed, it appears that some Named Plaintiffs suffered emotional distress after being exposed to advertisements by plaintiffs' counsel or from other Named Plaintiffs. *See, e.g.*, JA866–JA867 (Riggins: "Plaintiff began experiencing these injuries when she learned in July 2017 that Akoda was not really a doctor. Plaintiff learned this from Monique Russell."); JA927 (Evans: "The Plaintiff first experienced her injuries and damages relevant to this matter upon learning about Akoda's fraudulent conduct. She first learned this information from the radio."); JA1274 at 148:10–17 (Evans explaining that she learned about Dr. Akoda from "a radio ad" by her current lawyers); JA1306 at 14:17 & JA1301–JA1302 at 59:16–62:25 (Powell explaining that she "came to feel violated" when she "found out that Akoda was not Akoda," which occurred at a meeting at a hotel with her current lawyers).

23

This class action appears to be unprecedented.  Under Named Plaintiffs' theory, many class members are presently uninjured and will continue to be uninjured.  There is no reason to disturb this status quo by providing notice of a class action and inflicting emotional distress on uninjured class members.  Named Plaintiffs' proposal to injure their fellow class members creates an insoluble conflict of interest, defeating typicality and rendering them inadequate class representatives.

The district court's class certification ruling failed to address the incongruity of Named Plaintiffs inflicting injuries on their fellow class members through certification.  It should be reversed.

### C. Named Plaintiffs' proposal to certify only claims for emotional distress defeats Rule 23(a)'s typicality and adequacy requirements.

Named Plaintiffs decision to seek recovery only for emotional distress renders them inadequate representatives of class members who suffered actual, physical injuries.  If Named Plaintiffs' theory were correct—and Dr. Akoda never attended medical school and should not have been licensed to practice medicine (much less been certified as a specialist)—then one would expect his patients to have suffered from improper treatment.  Patients who suffered from malpractice, particularly medical malpractice involving the birth of a child, might seek very significant damages.  Indeed, Named Plaintiffs include some allegations that Dr. Akoda treated patients improperly or incorrectly.

But Named Plaintiffs—who do not allege that they suffered from malpractice or any physical effects as a result of negligent medical care—do not seek to recover for malpractice.  They seek to recover only for emotional distress.  This plan gives rise to typicality and adequacy issues, each of which defeats class certification.

Named Plaintiffs' interests are not aligned with those of the class.  Named Plaintiffs seek to recover solely for alleged emotional distress, without regard for the extent of physical injuries that may have been experienced by class members.  Class members who allegedly suffered physical injuries, by contrast, are interested in pursuing a remedy for any injury they experienced, including claims for physical injuries.  The disconnection between the interests of Named Plaintiffs and class members defeats typicality and precludes class certification.

By pursuing recovery only for emotional distress, Named Plaintiffs may waive unnamed class members' ability to assert claims relating to any alleged physical injuries.  The doctrine of *res judicata* prohibits claim-splitting.  *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224–25 (3d Cir. 2009).  Unnamed class members who pursue claims for emotional distress as part of this class action could not subsequently pursue their related claims for malpractice (or other theories of liability) in a subsequent case.  That is why this Court has recognized claim splitting as a "very important issue in assessing the adequacy of representation requirement."  *Id.* at 225 (reversing a grant of class certification seeking to recover

only for limited injuries where, as here, the district court failed to consider "whether any potential future claims by class members with personal injury would be at risk of being barred by *res judicata*").

Courts regularly hold that named plaintiffs cannot manufacture a class action by waiving (or choosing not to pursue) the potential claims of unnamed class members: "[N]amed plaintiffs who would intentionally waive or abandon potential claims of absentee plaintiffs have interests antagonistic to those of the class." *Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 480 (E.D. Pa. 1997); *see also Slade v. Progressive Sec. Ins. Co.*, 856 F. 3d 408, 412 (5th Cir. 2017) ("When the class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class."); *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830–31 (7th Cir. 2011) ("A representative can't throw away what could be a major component of the class's recovery.").

These principles should govern this class certification: Named Plaintiffs, who seek to intentionally abandon class members' claims for actual, physical injuries from improper medical treatment, have interests antagonistic to those of the class, and their plan creates an irreconcilable conflict of interest.

The district court also suggested that the opportunity to opt out would cure any conflicts between named and unnamed class members, JA53,[7] but the opt-out procedure is "not a panacea," *Slade*, 856 F.3d at 415 n.3, and the district court abused its discretion by holding that it solved any adequacy issues.  If the potential to opt out could always cure a conflict between named and unnamed class members, adequacy would be a dead letter.  Here, the relative seriousness of potential physical injuries during childbirth compared to allegations of emotional distress at learning of a doctor's pleading guilty to misuse of a Social Security number means that the risk posed by potential preclusion is disproportionately high, and Plaintiffs' willingness to expose those claims to possible preclusion (or limitations) reveals a fundamental adequacy problem that defeats class certification.

Because the district court failed to make findings regarding the typicality of Named Plaintiffs' injuries, failed to consider the typicality or adequacy implications of Named Plaintiffs' plan to inflict injuries on unnamed class members, and abused its discretion in analyzing the effects of Named Plaintiffs' decision to abandon claims for physical injuries, class certification was improper under Rule 23(a) and should be reversed.

---

[7] Nor did the district court explain why there would be an opportunity for class members to opt out or what the scope of any opt out would be.  As detailed below, the district court did not find that Named Plaintiffs had satisfied Rule 23(b)(3), and nothing in Rule 23(c)(4) creates a right for class members to opt out of the issue class.

## II.    The District Court Erred by Certifying a Class Without Finding that Named Plaintiffs Satisfied Rule 23(b).

Even if Named Plaintiffs had satisfied Rule 23(a), the district court erred by certifying a class without finding that Named Plaintiffs satisfied any of the subsections of Rule 23(b).   The district court certified only narrow, abstract questions of duty and breach.  Not only are all issues of damages left to individual proceedings, but so are key liability questions, including the existence of injury (whether a particular class member has suffered emotional distress), but-for and proximate causation (whether that emotional distress was caused by ECFMG or intervening causes and whether ECFMG's alleged conduct is too remote to support liability), apportionment of liability (among various entities responsible or potentially responsible for the class member's emotional distress), and all of ECFMG's affirmative defenses (including, for example, a class member's consent to treatment by Dr. Akoda[8]).  Given the overwhelming number of individual issues

---

[8] Class members' consent to treatment by Dr. Akoda is fatal to their claims.  Under the Restatement and general principles of tort law, the type of misrepresentation alleged in this case (regarding a doctor's identity or medical education) does not vitiate a patient's consent to treatment.  *See Taylor v. Johnston*, 985 P.2d 460, 466 (Alaska 1999) (involving essentially indistinguishable facts, where a plaintiff asserted claims based on a theory that physician should not have been licensed, and holding that "[t]he fact that [the doctor] was licensed in Alaska at the time of the procedure defeats [any] claim for medical battery based on fraud"); *see also* Restatement (Second) of Torts § 892B.1 (consent is "effective for all consequences of the conduct and for the invasion of any interests resulting from it" and is ineffective only if induced "by a substantial mistake concerning the nature of the

and the absence of any efficiency gained by class proceedings, Rule 23(b)(3) does not permit certification of this class action.

The district court erroneously held that Rule 23(b) is irrelevant to certifying an issue class under Rule 23(c)(4).  *See* JA43 (rejecting ECFMG's argument regarding Rule 23(b) and holding that it only had to "consider Rule 23(a) and then turn to the *Gates* factors in conducting its analysis").

This Court has recognized that courts have struggled with the relationship between Rule 23(b) and Rule 23(c)(4), noting that "[c]ourts have disagreed over the extent to which the ability to certify issue classes alters the predominance requirement," a "complicated area of class action procedure."  *Gates*, 655 F.3d at 272–73.

Some circuits have held that "a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745–46 n.21 (5th Cir. 1996).  Others have held that "a court may

---

invasion of his interests or the extent of the harm to be expected from it"); Restatement (Third) of Torts: Inten. Torts to Persons § 15 TD No 4, cmt. f (2019) ("[A] patient's consent to medical treatment is not vitiated by the doctor's false representation that he has not been convicted of a crime (Illustration 10) or by his exaggeration of the amount of experience he has conducting the medical treatment in question.").  Here, a patient's consent to medical treatment by Dr. Akoda would not be vitiated by any misrepresentation regarding his name or Social Security number.

employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006).

No circuit agrees with the approach of the district court in this case, which read *Gates* to hold that Rule 23(b) need not be considered when a party invokes Rule 23(c)(4), creating (in effect) a fourth type of class action.  Under the plain text of Rule 23 and the cases interpreting it, the party seeking certification must satisfy one of the subsections of Rule 23(b).  This, alone, requires reversal.

### A.  Class certification requires the party seeking certification to satisfy one of the three subsections of Rule 23(b).

Under the plain text of Rule 23, class certification requires satisfaction of Rule 23(a) and one subpart of Rule 23(b):

> TYPES OF CLASS ACTIONS.  A class action may be maintained if Rule 23(a) is satisfied and if:
>
> > (1) prosecuting separate actions by or against individual class members would create a risk of: [conflicting adjudications];
> >
> > . . .
> >
> > (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> >
> > (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).  The Rules do not include any provision for a fourth type of class action.  A party seeking certification must always satisfy one of the subsections of Rule 23(b).

The Supreme Court and this Court have acknowledged that class certification requires satisfaction of Rule 23(b).  *See, e.g.*, *Comcast*, 569 U.S. at 33 (class certification requires a plaintiff to "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)"); *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019) ("A party seeking class certification must satisfy the four requirements of Rule 23(a), as well as the requirements of either Rule 23(b)(1), (b)(2), or (b)(3)."); *In re Modafinil*, 837 F.3d 238, 248 (3d Cir. 2016) ("[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." (internal quotation marks omitted)).

Rule 23(c)(4), which provides only that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues," does not create an exception to these rules.  The plain text of Rule 23 and the cases cited above require, unequivocally, that a party seeking class certification must satisfy one of the provisions of Rule 23(b).

Indeed, in a brief filed with the Supreme Court of the United States, Plaintiffs' counsel acknowledged that Rule 23(b) must still be satisfied even when Rule 23(c)(4) is invoked.  *See* Brief in Opposition, *Behr Dayton Thermal Prods., LLC v.*

*Martin*, No. 18-472 (U.S. 2019), *available at* https://tinyurl.com/w4ep2ju (arguing that this Court "rest[s] the determination whether to certify an issue class on whether the issue class itself satisfies the Rule 23(b)(3) requirements of predominance and superiority, and appl[ies] a 'functional' analysis to consider whether an issue class is a superior method of adjudicating a case").

Here, the district court did not make any finding that Named Plaintiffs satisfied any of the three subparts of Rule 23(b). To the contrary, the district court expressly declined to consider Rule 23(b). JA43. Standing alone, the failure to find any provision of Rule 23(b) satisfied requires reversal of class certification.

**B.      This Court should, consistent with *Gates*, require Rule 23(b)(3) to be satisfied for the claim as a whole, even when a party seeking certification invokes Rule 23(c)(4).**

This Court should provide further guidance regarding how Rule 23(c)(4) (and the decision in *Gates*) interact with Rule 23(b) and explain how Rule 23(b) must be satisfied when a party seeks certification under Rule 23(c)(4). Critically, *Gates* does not hold that Rule 23(b) is irrelevant to certification of a class under Rule 23(c)(4).

ECFMG contends that Rule 23(b)(3)'s predominance requirement must be satisfied with respect to the claim as a whole. Rule 23(b)(3) expressly requires that a court compare the issues that can be resolved through class treatment (i.e., "questions of law or fact common to class members") against the issues that must be tried individually (i.e., "questions affecting only individual members") to determine

32

which predominates.  Fed. R. Civ. P. 23(b)(3); *see Ferreras*, 946 F.3d at 185 ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member." (internal quotation marks omitted)).  As the Fifth Circuit explained, considering predominance only with respect to the certified issues would mean that predominance would always be satisfied, "eviscerat[ing] the predominance requirement of rule 23(b)(3)" and permitting "certification in any case where there is a common issue."  *Castano*, 84 F.3d at 745 n.21.  This Court, in *Gates*, correctly rejected the suggestion that predominance could be determined without considering the claim as a whole, correctly holding instead that courts considering certification (even under Rule 23(c)(4)) must examine both the issues certified for class treatment and the remaining issues.

Holding that predominance and superiority must be satisfied for the claims as a whole would not require departing from the factors listed as considerations in the *Gates* decision.  Several of these factors—such as "the efficiencies to be gained by granting partial certification," "whether the substantive law separates the issue(s) from other issues concerning liability or remedy," and "the repercussions certification . . . will have on the effectiveness and fairness of resolution of remaining issues," *Gates*, 655 F.3d at 273—track, in effect, the requirement of Rule

23(b) that a court compare the common issues against the individual issues to determine which predominate. As this Court recently recognized, the mere existence of individual issues does not mean that common issues do not predominate for the claim as a whole: "[An] action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately[.]" *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (quoting *Tyson Foods*, 136 S. Ct. at 1045).

Where, as here and as in *Gates* itself, a party seeks certification of common issues that are "inseverable from other issues that would be left for follow-up proceedings," are "not easily separate[d] from individual issues," and would not "substantially aid resolution of the substantial issues on liability and causation," then individual issues would predominate over common issues under a traditional analysis of predominance under Rule 23(b)(3). The remaining factors listed in *Gates*—such as "the type of claim(s) and issue(s) in question," "the overall complexity of the case," "choice-of-law questions," "the potential preclusive effect," and "the impact individual proceedings may have upon one another," *Gates*, 655 F.3d at 273—fit comfortably within the traditional superiority analysis of Rule 23(b)(3).[9]

---

[9] The Sixth Circuit correctly described *Gates* as a "superiority-like analysis." *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 412 (6th Cir. 2018), cert. denied, 139 S. Ct. 1319 (2019).

Although *Gates* did not describe this Circuit as adopting the requirement that Rule 23(b)(3) be satisfied for the claim as a whole, the factors that it adopts effectively track the requirements that common issues predominate for the claim as a whole and that class treatment be the superior method of adjudication. But a court cannot, as the district court did here, consider these factors in isolation, rather than as a guide to making the required findings of predominance and superiority under Rule 23(b)(3).[10]

Alternatively, *Gates* can be read to hold that its factors should be used to determine predominance under Rule 23(b)(3), leaving traditional superiority unaffected. The issue addressed in *Gates* was "the extent to which the ability to certify issue classes alters the predominance requirement." *Gates*, 655 F.3d at 272. This Court held that "the considerations set forth in *Hohider* and more recently in the Final Draft of the ALI's Principles of Aggregate Litigation provide the most sound guidance in resolving this complicated area of class action procedure," i.e., how the predominance requirement of Rule 23(b)(3) applies in a Rule 23(c)(4) class.[11] In this reading, the factors listed in *Gates* would guide a court in making the

---

[10] Consider, for example, Rule 23(b)(3) itself, which lists four "matters pertinent to [the] findings." Fed. R. Civ. P. 23(b)(3). A court would err by considering these findings on their own, rather than considering them in order to make the superiority and predominance findings under Rule 23(b)(3).

[11] Oddly, although *Gates* looked to *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 201 (3d Cir. 2009), for factors relevant to predominance under Rule 23(b)(3),

finding whether common issues predominate over individual ones in a class involving Rule 23(c)(4), *id.* at 272–73, but superiority would be left unchanged.[12] .

Here, the district court erred by considering the *Gates* factors in isolation, independent of Rule 23(b). To certify the class under Rule 23(b)(3), the district court was required to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," potentially based on consideration of the *Gates* factors.

There is an alternative way of harmonizing *Gates* with the plain text of Rule 23. This Court could read *Gates* as not addressing the requirements of Rule 23(b) at all and instead enumerating factors to be considered only in determining whether issue certification would be "appropriate" under Rule 23(c)(4). There is some support for this reading: "In *Gates v. Rohm & Haas Co.*, we enumerated several non-exhaustive factors relevant to assessing whether certification of an issue class under Rule 23(c)(4) is appropriate." *Gonzalez v. Corning*, 885 F.3d 186, 202 (3d Cir.

---

*Hohider* involved a class certification decision under Rule 23(b)(2), not Rule 23(b)(3). *See id.* at 198 ("In addition to the individualized inquiries necessary to adjudicate plaintiffs' claims, UPS contends the nature of the relief sought by plaintiffs renders the class ineligible for certification under Rule 23(b)(2).").

[12] As noted above, many *Gates* factors fit more naturally as part of a superiority analysis than predominance, but the opinion can be read to adopt the factors in taking a position on the circuit split "over the extent to which the ability to certify issue classes alters the predominance requirement."

2018), as amended (Apr. 4, 2018) (internal citation omitted).  In *Gonzalez*, this Court described "the appropriateness of certifying a Rule 23(c)(4) class" as "analytically independent from the predominance inquiry under Rule 23(b)(3)."  *Id.*  Under this understanding of *Gates*, a court considering certification of an issue class under Rule 23(c)(4) must conclude that certification is "appropriate" under the *Gates* factors **in addition** to concluding that the movant satisfied one of the subsections of Rule 23(b) under a traditional analysis.

Under this reading of *Gates*, this Court has yet to adopt a holding about "[t]he interaction between the requirements for class certification under Rule 23(a) and (b) and the authorization of issue classes under Rule 23(c)(4)." *Gates*, 655 F.3d at 272. If *Gates* held only that it was not "appropriate" to maintain an issue class under Rule 23(c)(4), then there was no need for *Gates* (or *Gonzalez*) to address whether Rule 23(b)(3) had been satisfied or how Rule 23(b)(3) would be satisfied when a party invokes Rule 23(c)(4).[13]

Moreover, to the extent that *Gates* is interpreted as adopting an incorrect standard (and holding that a class can be certified without considering Rule 23(b)), this panel can reevaluate its precedent in light of intervening Supreme Court

---

[13] If this Court agrees with this reading of *Gates*, then it could follow the same approach.  Because, as detailed below, the district court erred in analyzing the *Gates* factors, this Court could reverse the class certification order by holding that certification is not "appropriate" under Rule 23(c)(4) without addressing Rule 23(b)(3).

decisions. *E.g.*, *In re Krebs*, 527 F.3d 82, 84 (3d Cir. 2008) ("A panel of this Court may reevaluate the holding of a prior panel which conflicts with intervening Supreme Court precedent."). In the decade since *Gates*, the Supreme Court has confirmed that class certification requires satisfaction of Rule 23(b). *See Comcast*, 569 U.S. at 33 (requiring satisfaction "through evidentiary proof at least one of the provisions of Rule 23(b)").

Indeed, this Court has already held, albeit in an unpublished decision, that a plaintiff "may seek certification under Rule 23(c)(4) as to particular issues" only after "having satisfied Rule 23(a) and (b)'s requirements." *Luppino v. Mercedes Benz USA*, 718 F. App'x 143, 146 (3d Cir. 2017) (citing *Comcast*, 569 U.S. at 33); *see id.* ("Given the class certification's (b)(3) defects, described below, we need not address the District Court's conclusion that a (c)(4) class was not certifiable."); *see also Marcus*, 687 F.3d at 590 ("[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)."); *Gonzalez*, 885 F.3d at 192 (same).

District courts have also concluded, even following *Gates*, that Rule 23(a) and Rule 23(b) must be satisfied before an issue class may be certified under Rule 23(c)(4). *See Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 724 (E.D. Pa. 2014) (quoting *Gates* while noting that "[c]ertification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met");

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F.Supp. 3d 12, 45 (E.D. Pa. 2019) (relying on *Romero* for this proposition).

Particularly in light of the intervening Supreme Court authority, this Court should follow *Luppino* and the plain text of Rule 23 and hold that a plaintiff seeking certification under Rule 23(c)(4) must satisfy Rule 23(a) and (b).

Here, given the overwhelming number of individual issues—including the existence of emotional distress, apportionment, causation, and ECFMG's affirmative defenses—there is no serious argument that common issues would predominate over individual ones. Named Plaintiffs should not be able to evade the predominance requirement of Rule 23(b)(3) by invoking Rule 23(c)(4).

Under the plain text of Rule 23 and the cases interpreting it, the party seeking to certify a class must satisfy one of the prongs of Rule 23(b). Because the district court failed to find that Named Plaintiffs satisfied Rule 23(b)(3) or any other prong of Rule 23(b), the class certification must be reversed.

## III. The District Court Abused Its Discretion in Analyzing the *Gates* Factors.

Even if the district court were correct that a class can be certified under Rule 23(c)(4) without finding that the party seeking certification satisfied any provision of Rule 23(b), class certification should be reversed because the district court abused its discretion in analyzing the *Gates* factors. Like other aspects of class certification, "a court's decision to exercise its discretion under Rule 23(c)(4) . . . must be

supported by rigorous analysis." *Gates*, 655 F.3d at 272 (internal quotation marks omitted).

The district court failed to perform a rigorous analysis. Its discussion of the *Gates* factors begins on page 22 of the 28-page opinion. But the first four pages of that discussion concern Plaintiffs' request for certification of all liability issues, which the district court rejected. *See* JA56–JA59. Only four paragraphs of the opinion discuss whether Rule 23(c)(4) and *Gates* permit the certification ordered by the district court. *See* JA59–JA62.

### A.    The district court erred in analyzing choice-of-law and inconsistencies among state law.

As part of considering class certification, a district court must ordinarily resolve any choice-of-law disputes: "[I]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.28 (3d Cir. 2011) (en banc) (internal quotation marks and citations omitted); *see Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183–84 (3d Cir. 2014) (affirming denial of class certification due to variations in state law). *Gates* confirms that a court must consider "the substantive law underlying the claim(s), including any choice-of-law questions." 655 F.3d at 273.

The district court erred in two ways. First, Named Plaintiffs failed to carry their burden to prove that there was no variation in state law. Second, the district

40

court's alternative holding that Pennsylvania law could apply to claims of out-of-state patients is incorrect.

### 1.    Plaintiffs failed to present the required "extensive analysis" of state law.

The party seeking certification of a class action has the burden to conduct an "extensive analysis" of state law variations.  *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986); *see also Grandalski*, 767 F.3d at 183–84; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) (noting that the burden "rests squarely with the plaintiffs"); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("[M]ovants must credibly demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'" (quoting *In re Sch. Asbestos Litig.*, 789 F.2d at 1010)).

Named Plaintiffs failed to carry their burden in this case.  Although they filed this case in Pennsylvania (where ECFMG is headquartered), Dr. Akoda was not licensed to practice medicine in Pennsylvania and did not treat patients in Pennsylvania.  He was licensed to practice medicine in Maryland and Virginia and worked at private medical practices in Maryland and hospitals in Maryland and the District of Columbia.

The certified class comprises patients examined or treated in at least three jurisdictions: Maryland, Virginia, and the District of Columbia.  As detailed below, the law applicable to claims arising out of Dr. Akoda's treatment of a patient would

be the law of the state in which the treatment was provided.  Here, Named Plaintiffs were required to provide an "extensive analysis" of the law of all three jurisdictions to prove that dissimilarities did not defeat predominance.

Plaintiffs failed to carry their burden.  Rather than provide the necessary "extensive analysis" of these states' laws, Plaintiffs' counsel merely represented that they were "unaware" of any relevant conflicts between the laws of Pennsylvania and other states.  JA194.

The district court erred by relying on this representation rather than holding Named Plaintiffs to their burden.  Instead of finding that Named Plaintiffs had proved that there were no variations in state law, the district court erroneously placed the burden on the parties (effectively, on ECFMG) to prove variations.  *See* JA45 (relied on the fact that "the parties have not identified any [variations]").

Not only did the district court misplace the burden, but its cursory analysis is incorrect.  As ECFMG argued, there appear to be extensive variation regarding the claim of negligent infliction of emotional distress.  The Fifth Circuit surveyed the law and correctly concluded that "[n]egligent infliction of emotional distress . . . involves wide variations" among the states.  *Castano*, 84 F.3d at 742–43, n.15.

Maryland, for example, "does not recognize the tort of negligent infliction of emotional distress."  *Alban*, 61 A.3d at 876.  The District of Columbia recognizes the tort, but a plaintiff must prove, *inter alia*, that "the defendant has a relationship

with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being" and that there is "an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810–11 (D.C. 2011). Virginia requires "a showing of an underlying tort duty as the predicate for making a claim for the negligent infliction of emotional distress." *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 476 (Va. 2019).

Named Plaintiffs failed to provide the district court with the extensive analysis of state law necessary to determine whether the class should have been certified.

> **2. The district court erred in holding, in the alternative, that Pennsylvania law governs the claims of out-of-state plaintiffs based on out-of-state medical treatment.**

The district court held, in the alternative, that any variations in state law were irrelevant because it could apply the law of Pennsylvania to claims arising out of out-of-state treatment of out-of-state patients by Dr. Akoda.

The Supreme Court has affirmatively rejected this approach to class certification: A court may not "take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).

Pennsylvania follows the choice-of-law approach from the Restatement (Second) of Conflict of Laws. *Griffith v. United Air Lines, Inc.*, 203 A.2d 796 (Pa. 1964). Section 148(2) of the Restatement (Second) of the Conflicts of Laws governs fraud and misrepresentations. Named Plaintiffs' claims, which allege negligent infliction of emotional distress based on ECFMG's alleged misstatements to state regulatory authorities, residency programs, or employers, would appear to be governed by these rules.

Under the Restatement (and Pennsylvania choice-of-law rules), because the alleged false representations were made and relied upon in different states, a court must consider:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Applying this test, factors (e) and (f) are irrelevant; factors (a) and (b) favor the law of the state of treatment by Dr. Akoda; and only factor (c) suggests applying Pennsylvania law. Factor (d), residence, likely favors the state of treatment because

"the domicil of the plaintiff is regarded by the Restatement as more important than that of the defendant." *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 182 (3d Cir. 2014) (quoting Restatement (Second) of Conflict of Laws § 148, cmt. i).

Because of factors (a) and (b), the law of Maryland, Virginia, and the District of Columbia will apply: "If any two of the [Section 148(2)] contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 209 (3d Cir. 2013) (quoting Restatement (Second) of Conflicts of Law § 148, cmt j)).

Indeed, if Pennsylvania's choice-of-law rules purported to apply Pennsylvania substantive law to an out-of-state plaintiff's claims arising from out-of-state medical treatment, difficult constitutional questions would arise under the Commerce Clause. As the Supreme Court has explained, a State has no authority to enact a regulation that has "the practical effect" of "control[ling] conduct beyond the boundaries of the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Here, Pennsylvania could not regulate which doctors should be licensed in Maryland, could not require disclosures by Maryland doctors treating Maryland patients, could not set the rules for effective consent under Maryland law, and could not create a right to recovery in tort when a Maryland patient's treatment by a Maryland doctor purportedly leads to emotional distress. At a minimum, correctly holding that Pennsylvania's choice-

of-law rules would apply the law of the state of treatment would avoid these difficult constitutional issues.  *E.g.*, *Bruni v. City of Pittsburgh*, 941 F.3d 73, 85 (3d Cir. 2019) (applying principles of constitutional avoidance).

The district court failed to conduct a rigorous choice of law analysis and erred in suggesting that the law of Pennsylvania could apply to claims by out-of-state plaintiffs based on out-of-state medical treatment.

**B.    The district court failed to consider the type of claim at issue, including that claims of emotional distress are particularly unsuitable for class treatment.**

*Gates* directs that in determining whether certification of an issue is appropriate under Rule 23(c)(4), a court must consider "the type of claim(s) and issue(s) in question" and "whether the substantive law separates the issue(s) from other issues concerning liability or remedy."  655 F.3d at 273.  These factors were not addressed by the district court in its analysis.

Here, the nature of the claims should foreclose class certification, particularly class certification of narrow issues under Rule 23(c)(4).  Emotional distress is a particularly individualized injury.  It is undisputed, as the Fifth Circuit has recognized, that "emotional distress claims . . . will require some form of individualized proceedings."  *Robertson v. Monsanto Co.*, 287 F. App'x 354, 362 (5th Cir. 2008).

But at individual proceedings to determine the existence and cause of an individual class members' emotional distress, all of the evidence presented at any class proceeding would need to be revisited.[14]  Emotional distress damages cannot be separated from the evidence of liability purportedly giving rise to the emotional distress.  This Court has held, unequivocally, that a court cannot hold a trial limited to damages for emotional distress: such a proceeding would be "contrary to the rule that emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct." *Spence*, 806 F.2d at 1202.  Emotional distress liability and emotional distress damages are "too interwoven to allow a fair determination of damages apart from liability." *Id.*  In other words, the substantive law does not permit the issues to be separated from other issues concerning liability or remedy—they must be decided together.  Despite being argued by ECFMG, the *Spence* decision (and the principle that emotional distress damages may not be bifurcated from liability) went unmentioned by the district court.

The Eleventh Circuit reached a consistent result in *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228 (11th Cir. 2000), which involved an attempt to certify a class under Rule 23(b)(3) based on an alleged policy of racial discrimination.  The plaintiffs suggested (as Named Plaintiffs do here), that class treatment was justified

---

[14] Named Plaintiffs never presented any type of "trial plan" to the district court or otherwise attempted to detail how they intend that the cases be tried.

because of a common policy or conduct by the defendant. *Id.* at 1236. In reversing the certification, the Eleventh Circuit explained that proof of liability would require individual proceedings to determine whether a particular plaintiff was (or was not) subject to discrimination: "The idea that proof of a policy or practice of discrimination could establish that every member of the class is entitled to such damages is, given the substantive elements of the underlying cause of action, untenable." *Id.* at 1241. And because "every member of the class will have to prove actual damage in order to receive compensation for their loss, the policy or practice issue cannot possibly predominate over all the other issues in the case that are necessarily capable of only individualized resolution." *Id.* The same analysis applies here: the personal injury claims asserted by Named Plaintiffs require individual proof of whether each class member suffered emotional distress and whether that emotional distress was caused by ECFMG. Given the need for these individual proceedings, common issues cannot possibly predominate and class treatment is inappropriate.

This result accords with comments to the Principles of the Law of Aggregate Litigation adopted by *Gates*. Those comments recognize that aggregate treatment of narrow issues in personal injury claims is rarely appropriate: "[C]ommon issues will tend to arise more frequently with respect to economic injuries from a generally applicable course of conduct than with regard to personal injuries[.]" Principles of

the Law of Aggregate Litigation § 2.01, cmt. c (2010). For personal injuries, "the 'upstream' inquiry [i.e., the high-level duty and breach issues certified here] likely would not materially advance the disposition of claims." *Id.*; *see also id.* § 2.03, cmt. b ("[W]hen [a] common issue remains intertwined under applicable substantive law with other issues that are not common, including individualized defenses," then class treatment "would not materially advance the resolution of related claims" and creates a "prospect for substantial duplication of effort for both the parties and the courts [that] amounts to a danger signal that counsels strongly against aggregate treatment of the common issue in the first place"); *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001) (holding that a case seeking recovery for emotional distress "is not suitable for class action treatment because of the variance in injury among the members of the class and the cost of the individualized hearings that would in consequence be required for assessing damages" and noting that injuries "must vary very considerably across the members of the class"). These factors from *Gates*, which went unaddressed by the district court, should be fatal to certification under Rule 23(c)(4).

### C.    The district court abused its discretion in analyzing the efficiencies to be gained.

Nor did the district court correctly analyze whether any efficiencies would be gained from the class proceeding.

49

The district court certified only narrow, abstract questions of duty and breach, leaving issues such as causation, injury, damages, apportionment of fault, as well as all of ECFMG's affirmative defenses, to be tried in subsequent individual proceedings.

The district court stated, without elaboration, that juries in these individual proceedings "will not have to reexamine any of the evidence about ECFMG's conduct," but its prediction is incorrect.   JA61. Virtually all of the "common" evidence and arguments would need to be reheard in every individual case.

To determine causation (particularly proximate causation), understand who Dr. Akoda was, and even have a basic understanding of the theory of liability against ECFMG, every jury in every individual proceeding would need to hear essentially all of the evidence that Named Plaintiffs propose to present at the class proceeding. Evaluating causation would require a jury to consider the entire chain of events— including any alleged wrongdoing by ECFMG, residency programs that admitted Dr. Akoda, medical boards that licensed him, hospitals that gave him privileges, the specialty board that certified him, and law enforcement officers who investigated him—to decide which actor, if any, was the proximate cause of any alleged emotional distress suffered by any individual plaintiff.   *Cf. McKenna v. City of Philadelphia*, 649 F.3d 171, 178 (3d Cir. 2011) (explaining that "proximate cause" excludes "link[s] that are too remote, purely contingent, or indirect" (internal

quotation marks omitted)); *Township of Bordentown, N.J. v. FERC*, 903 F.3d 234, 247 n.6 (3d Cir. 2018) (noting that "intervening act[s]" can sever a causal chain).

Similarly, as noted above, to determine the amount of damages for emotional distress that an individual plaintiff could receive, a jury would need to rehear all of the evidence regarding ECFMG's liability. *Spence*, 806 F.2d at 1202. No efficiencies would be gained by such a proceeding.

The class action certified by the district court is indistinguishable from the issue class rejected by this Court in *Gates*. Like Named Plaintiffs, the *Gates* plaintiffs sought class certification of generalized, abstract questions of liability, while leaving the bulk of the claims for later, individual proceedings. *See Gates*, 655 F.3d at 272 (explaining that "causation and extent of contamination," "the fact of damages," and "the amount of damages" would need to be determined in follow-up proceedings). This Court recognized that in light of the "numerous individual issues that would remain," resolution of the common issues was "unlikely to substantially aid resolution of the substantial issues on liability and causation," so certification under Rule 23(c)(4) would be improper. *Id.* at 272, 274.

As in *Gates*, in this case, resolution of the proposed classwide issues would still leave causation, the fact of damages, and the amount of damages (and numerous other issues) to be determined in follow-up proceedings. The district court failed to follow this Court's direction to "explain how class resolution of the issue(s) will

fairly and efficiently advance the resolution of class members' claims, including resolution of remaining issues," *id.* at 273, and as a result, certified an issue class indistinguishable from the issue class rejected in *Gates*. *See also id.* (noting, as here, that there was "no marked division between damages and liability").

The mere identification of a purportedly common issue does not mean that resolution of the common issue through a class action will "fairly and efficiently" advance resolution of the case as a whole. *See D.C. by & through Garter v. County of San Diego*, 783 F. App'x 766, 768 (9th Cir. 2019) ("Based on its finding that certification of a liability-only class would not significantly advance the resolution of the class claims, the district court did not abuse its discretion by denying D.C.'s motion for certification of a liability-only class.").

The district court correctly recognized that this is not a case in which liability is appropriate for classwide treatment, but it should have followed by concluding that certification of narrow liability issues would not materially advance resolution of the underlying claims. *See Gonzalez*, 885 F.3d at 202–03 ("Unlike a situation in which a Rule 23(c)(4) class might be appropriate because liability is capable of classwide treatment but damages are not, Plaintiffs offer no theories of liability for which classwide treatment is apt. The District Court therefore correctly determined that a Rule 23(c)(4) class would not materially advance resolution of the underlying claims[.]"). Here, as in *Gonzalez*, Named Plaintiffs "offer no theories of liability for

52

which classwide treatment is apt," and therefore "a Rule 23(c)(4) class would not materially advance resolution of the underlying claims."

The district court erred by failing to conduct the rigorous analysis required under *Gates* and abused its discretion in concluding that certification of narrow issues would lead to efficiencies in resolution of the case as a whole.

### D.    The district court's analysis would permit certification of an issue class in virtually any case.

The class certification decision below suggests dramatic expansion of the class action device.  If the district court's analysis were correct, then class certification under Rule 23(c)(4) would be permissible (and proper) in virtually any case.

Under the text of Rule 23, "commonality" is just a single factor under Rule 23(a).  Identification of a common issue is necessary—but by no means sufficient—for class certification.  But under the district court's approach to Rule 23(c)(4), the entire certification inquiry effectively reduces to commonality.

The district court's error is confirmed by the fact that the justifications offered by the district court for class certification in this case would apply equally to virtually any case involving a common issue.  The court's statement—"the questions of duty and breach favor issue certification because they are questions of law and/or fact common to all class members and subject to common proof," JA59–JA60—merely restates that a common issue has been identified.  The statement that certification

would allow "a single trial with a single, preclusive determination" about the common issue is also a truism.  JA60.  The same would be true of any case in which a common issue has been identified.  And the district court's final justification—that "[p]artial certification will not damage any class member's statutory or constitutional rights," JA61—is not a justification for certifying the class but only identifies the absence of a barrier to certification.[15]

If the district court's approach to Rule 23(c)(4) were correct, then certification of an issue class would be appropriate in any case in which Rule 23(a) (including its commonality requirement) has been satisfied.  Such a result conflicts with the plain text of Rule 23, would be a dramatic expansion of the class action device, and cannot be squared with the rule that the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Falcon*, 457 U.S. at 155 (internal quotation mark omitted).

---

[15] Nor, as discussed above, is the district court's analysis correct.  Splitting claims for emotional distress from other injuries threatens class members' rights.

## CONCLUSION & PRAYER FOR RELIEF

For the foregoing reasons, the order certifying the class should be reversed.

Dated:  September 2, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:    */s/ William R. Peterson*
William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103

***Counsel for Appellant, Educational Commission for Foreign Medical Graduates***

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, William R. Peterson, counsel for Appellant Educational Commission for Foreign Medical Graduates, certify, pursuant to Local Appellate Rule 28.3(d), that I am a member in good standing of the Bar of this Court. I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)–(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Brief of Appellant Educational Commission for Foreign Medical Graduates is proportionately spaced and has a typeface of 14-point Times New Roman, contains 12,561 words, and that the text of the electronic brief is identical to the text of the paper copies. I further certify, pursuant to Local Appellate Rule 31.1(c), that McAfee Endpoint Security did not detect a virus.

*/s/ William R. Peterson*
William R. Peterson

## CERTIFICATE OF SERVICE

I, William R. Peterson, counsel for Appellant Educational Commission for Foreign Medical Graduates, certify that, on September 2, 2020, a copy of the foregoing Brief of Appellant and Joint Appendix (Volume I, Pages JA1 to JA78) was filed electronically through the appellate CM/ECF system with the Clerk of the Court. All counsel of record in this case are registered CM/ECF users. Pursuant to Local Appellate Rule 31.1, as amended by the April 29, 2013 order, seven copies of this brief were sent to the Clerk of the Court for delivery.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Appellant,*
*Educational Commission for*
*Foreign Medical Graduates*

Dated: September 2, 2020

# No. 20-2128

## In the United States Court of Appeals
## For the Third Circuit

MONIQUE RUSSELL; JASMINE RIGGINS; ELSA M. POWELL; DESIRE EVANS

v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,

*Appellant*

On Appeal from the United States District Court for the
Eastern District of Pennsylvania, No. 2:18-cv-05629-JDW (Wolson, J.)

## JOINT APPENDIX
## VOLUME I, PAGES JA1 TO JA78

CONRAD O'BRIEN PC
    Nicholas M. Centrella
    Robin S. Weiss
1500 Market Street, Suite 3900
Philadelphia, PA 19102
(215) 864-9600
ncentrella@cogr.com

JANET JANET & SUGGS
    Patrick A. Thronson
Executive Centre at Hooks Lane
4 Reservoir Circle, Suite 200
Baltimore, MD 21208
(410) 653-3200

***Counsel for Appellees***

MORGAN, LEWIS & BOCKIUS LLP
    William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188
william.peterson@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
    Brian W. Shaffer
    Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103
(215) 963-5000

***Counsel for Appellant***

***Additional Counsel on Inside Cover***

THE LAW OFFICES OF PETER G. ANGELOS, P.C.
      Paul M. Vettori
One Charles Center
100 N. Charles Street, 20th Floor
Baltimore, MD 21201
(410) 649-2027
pvettori@lawpga.com

Z LAW, LLC
      Cory L. Zajdel
2345 York Road, Suite #B-13
Timonium, MD 21093
(443) 213-1977
clz@zlawmaryland.com

***Counsel for Appellees***

# TABLE OF CONTENTS

| ECF No. | Document Description | Date Filed | Page |
|---|---|---|---|
| | *Volume I, Pages JA1 to JA78* | | |
| 1-1 | Petition by Educational Commission for Foreign Medical Graduates for Leave to Appeal Pursuant to Fed. R. Civ. P. 23(f) (3d Cir. No. 20-8024) | 4/6/2020 | JA1 |
| 57 | Memorandum | 3/23/2020 | JA35 |
| 58 | Order | 3/23/2020 | JA63 |
| 10-1 | Order, No. 20-8024 (3d Cir. No. 20-8024) | 5/11/2020 | JA66 |
| — | District Court Docket | Printed 8/30/2020 | JA67 |
| | *Volume II, Pages JA79 to JA562* | | |
| 1 | Civil Cover Sheet | 12/31/2018 | JA79 |
| | Designation Forms | | JA80 |
| | Defendant's Notice of Removal | | JA83 |
| | Exhibit A: Plaintiffs' Class Action Civil Complaint (Phila. Ct. Com. Pl. No. 181101690) | | JA90 |
| | Exhibit A | | JA113 |
| | Exhibit B | | JA119 |
| | Exhibit C | | JA122 |
| 7 | Answer to Class Action Civil Complaint and Affirmative Defenses | 2/6/2019 | JA126 |
| 32 | Motion for Class Certification | 10/7/2019 | JA167 |

i

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---------|---------------------|------------|------|
| 32-1 | Memorandum of Law in Support of Motion for Class Certification | | JA169 |
| 32-2 | Certificate of Service | | JA199 |
| 32-3 | Exhibit 1 | | JA200 |
| 32-4 | Exhibit 2 | | JA202 |
| 32-5 | Exhibit 3 | | JA204 |
| 32-6 | Exhibit 4 | | JA207 |
| 32-7 | Exhibit 5 | | JA210 |
| 32-8 | Exhibit 6 | | JA215 |
| 32-9 | Exhibit 7 | | JA217 |
| 32-10 | Exhibit 8 | | JA238 |
| 32-11 | Exhibit 9 | | JA241 |
| 32-12 | Exhibit 10 | | JA245 |
| 32-13 | Exhibit 11 | | JA251 |
| 32-14 | Exhibit 12 | | JA253 |
| 32-15 | Exhibit 13 | | JA255 |
| 32-16 | Exhibit 14 | | JA257 |
| 32-17 | Exhibit 15 | | JA259 |
| 32-18 | Exhibit 16 | | JA262 |

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---------|---------------------|------------|------|
| 32-19 | Exhibit 17 | | JA267 |
| 32-20 | Exhibit 18 | | JA272 |
| 32-21 | Exhibit 19 | | JA274 |
| 32-22 | Exhibit 20 | | JA276 |
| 32-23 | Exhibit 21 | | JA278 |
| 32-24 | Exhibit 22 | | JA280 |
| 32-25 | Exhibit 23 | | JA283 |
| 32-26 | Exhibit 24 | | JA286 |
| 32-27 | Exhibit 25 | | JA288 |
| 32-28 | Exhibit 26 | | JA290 |
| 32-29 | Exhibit 27 | | JA292 |
| 32-30 | Exhibit 28 | | JA294 |
| 32-31 | Exhibit 29 | | JA296 |
| 32-32 | Exhibit 30 | | JA303 |
| 32-33 | Exhibit 31 | | JA314 |
| 32-34 | Exhibit 32 | | JA317 |
| 32-35 | Exhibit 33 | | JA325 |
| 32-36 | Exhibit 34 | | JA383 |
| 32-37 | Exhibit 35 | | JA419 |

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---|---|---|---|
| 32-38 | Exhibit 36 | | JA459 |
| 32-39 | Exhibit 37 | | JA490 |
| 32-40 | Exhibit 38 | | JA525 |
| 32-41 | Exhibit 40 | | JA532 |
| | *Volume III, Pages JA563 to JA1037* | | |
| 32-42 | Exhibit 41 | | JA563 |
| 32-43 | Exhibit 42 | | JA571 |
| 32-44 | Exhibit 43 | | JA579 |
| 32-45 | Exhibit 44 | | JA604 |
| 32-46 | Exhibit 45 | | JA628 |
| 33 | Exhibit 39 to Motion to Certify Class | 10/8/2019 | JA698 |
| 39 | Defendant Educational Commission for Foreign Medical Graduates' Opposition to Plaintiffs' Motion for Class Certification | 10/28/2019 | JA707 |
| 39-1 | Exhibit 1: Verification Papers – University of Ibadan | | JA743 |
| 39-2 | Exhibit 2: Verification Papers – University of Benin | | JA749 |
| 39-3 | Exhibit 3: October 14, 2019 Expert Report from Dr. Mark A. Smith | | JA755 |
| 39-4 | Exhibit 4: October 14, 2019 Expert Report from Dr. Laurence H. Beck | | JA772 |

iv

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---|---|---|---|
| 39-5 | Exhibit 5: March 16, 2007 Letter to John-Charles Akoda from Howard University Hospital | | JA796 |
| 39-6 | Exhibit 6: Howard University Hospital Certificate of Completion of Residency for John-Charles Nosa Akoda MD | | JA798 |
| 39-7 | Exhibit 7: January 31, 2014 Letter to John-Charles Akoda from American Board of Obstetrics and Gynecology | | JA800 |
| 39-8 | Exhibit 8: May 22, 2002 Letter to Dr. Oluwafemi Charles Igberase from William C. Kelly | | JA802 |
| 39-9 | Exhibit 9: November 7, 2000 Letter to State of Maryland Board of Physician Assurance from Meridian Health System | | JA805 |
| 39-10 | Exhibit 10: May 5, 2017 Virginia Department of Health Professions Report | | JA807 |
| 50-1 | Exhibit 11 (Redacted): Plaintiff Desire Evans's Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents | | JA811 |
| 50-2 | Exhibit 12 (Redacted): Plaintiff Elsa Powell's Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents | | JA836 |

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---|---|---|---|
| 50-3 | Exhibit 13 (Redacted): Plaintiff Jasmine Riggins' Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents | | JA863 |
| 50-4 | Exhibit 14 (Redacted): Plaintiff Monique Russells' Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents | | JA887 |
| 39-15 | Exhibit 15: Email from Kara Corrado to Lisa Cover, Suzann Paolini, and Roman Mizak (March 18, 2016) | | JA911 |
| 39-16 | Exhibit 16: Email from Kara Corrado to Lisa Cover (Nov. 29, 2016) | | JA915 |
| 39-17 | Exhibit 17: Notice #101 from Lisa Cover (March 1, 2017) | | JA920 |
| 50-5 | Exhibit 18 (Redacted): Plaintiff Desire Evans's Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents | | JA924 |
| 46-6 | Exhibit 19 (Unredacted): Plaintiff Elsa Powell's Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents | | JA954 |

# TABLE OF CONTENTS
### (continued)

| ECF No. | Document Description | Date Filed | Page |
|---|---|---|---|
| 46-7 | Exhibit 20 (Unredacted): Plaintiff Jasmine Riggins' Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents | | JA984 |
| 46-8 | Exhibit 21 (Redacted): Plaintiff Monique Russells' Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents | | JA1008 |
| 39-22 | Exhibit 22: February 26, 2018 Expert Report from Dr. Thomas Bojko | | JA1033 |
| *Volume IV, Pages JA1038 to JA1517* | | | |
| 39-23 | Exhibit 23: Docket from Russell et al v. Dimensions Health Corporation, CAL 17-22761 (Cir. Ct. Prince George's Cty, MD) | | JA1038 |
| 39-24 | Exhibit 24: Stipulation of Dismissal, CAL 17-22761 | | JA1053 |
| 50-6 | Exhibit 25 (Redacted): Questionnaire Responses | | JA1058 |
| 46-10 | Exhibit 26 (Redacted): September 25, 2019 Expert Report from Dr. Gladys Fenichel | | JA1124 |
| 50-7 | Exhibit 27 (Redacted): September 23, 2019 Independent Medical Examination Report on Plaintiff Monique Russell, conducted by Dr. Gladys Fenichel | | JA1132 |

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---------|---------------------|------------|------|
| 46-12 | Exhibit 28 (Redacted): September 25, 2019 Independent Medical Examination Report on Plaintiff Jasmine Riggins, conducted by Dr. Gladys Fenichel | | JA1141 |
| 46-13 | Exhibit 29 (Redacted): September 23, 2019 Independent Medical Examination Report on Plaintiff Elsa Powell, conducted by Dr. Gladys Fenichel | | JA1147 |
| 50-8 | Exhibit 30 (Redacted): September 23, 2019 Independent Medical Examination Report on Plaintiff Desire Evans, conducted by Dr. Gladys Fenichel | | JA1154 |
| 46-15 | Exhibit 31 (Redacted): October 14, 2019 Rebuttal Expert Report from Dr. Gladys Fenichel | | JA1164 |
| 46-16 | Exhibit 32 (Redacted): September 23, 2019 Expert Report from Dr, Jay Goldberg | | JA1168 |
| 39-33 | Exhibit 33: Facebook Comments Produced by Plaintiff Monique Russell | | JA1179 |
| 39-34 | Exhibit 34: October 14, 2019 Rebuttal Expert Report from Dr. Susan McDonald | | JA1183 |
| 39-35 | Exhibit 35: Jalloh et al v. Chaudry et al, CAL 16-22162 (Cir. Ct. Prince George's Cty, MD) – Complaint | | JA1214 |
| 50-9 | Exhibit 36 (Redacted): September 5, 2019 Transcript of Deposition of Desire Evans | | JA1236 |

# TABLE OF CONTENTS
## (continued)

| ECF No. | Document Description | Date Filed | Page |
|---|---|---|---|
| 50-10 | Exhibit 37 (Redacted): September 6, 2019 Transcript of Deposition of Elsa Powell | | JA1285 |
| 39-38 | Exhibit 38: Russell et al v. Dimensions Health Corporation, CAL 17-22761 (Cir. Ct. Prince George's Cty, MD) – First Amended Class Action Complaint | | JA1315 |
| 39-39 | Text of Proposed Order | | JA1339 |
| 47 | Reply Memorandum of Law in Support of Motion for Class Certification | 11/11/2019 | JA1340 |
| 47-1 | Exhibit 1 | | JA1362 |
| | Exhibit 2 | | JA1365 |
| | Exhibit 3 | | JA1367 |
| 48 | Defendant Educational Commission for Foreign Medical Graduates' Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification | 11/18/2019 | JA1371 |
| 63 | Transcript of Proceedings Held on January 30, 2020 | 4/6/2020 | JA1381 |
| 5-1 | Response in Opposition to Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f), No. 20-8024 (3d Cir. No. 20-8024) | 4/20/2020 | JA1469 |
| 9 | Reply in Support of Petition for Permission to Appeal, No. 20-8024 (3d Cir. No. 20-8024) | 4/27/2020 | JA1501 |

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---|---|---|---|
| | *Volume V (Under Seal), Pages JA1518 to JA1908* | | |
| 40 | Defendant Educational Commission for Foreign Medical Graduates' Opposition to Plaintiffs' Motion for Class Certification (Under Seal) | 10/28/2019 | JA1518 |
| | Exhibit 11 (Under Seal): Plaintiff Desire Evans's Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents | | JA1554 |
| | Exhibit 12 (Under Seal): Plaintiff Elsa Powell's Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents | | JA1579 |
| | Exhibit 13 (Under Seal): Plaintiff Jasmine Riggins' Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents | | JA1606 |
| | Exhibit 14 (Under Seal): Plaintiff Monique Russells' Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents | | JA1630 |
| | Exhibit 18 (Under Seal): Plaintiff Desire Evans's Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents | | JA1654 |

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---|---|---|---|
| | Exhibit 21 (Under Seal): Plaintiff Monique Russells' Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents | | JA1684 |
| | Exhibit 25 (Under Seal): Questionnaire Responses | | JA1709 |
| | Exhibit 26 (Under Seal): September 25, 2019 Expert Report from Dr. Gladys Fenichel | | JA1775 |
| | Exhibit 27 (Under Seal): September 23, 2019 Independent Medical Examination Report on Plaintiff Monique Russell, conducted by Dr. Gladys Fenichel | | JA1783 |
| | Exhibit 28 (Under Seal): September 25, 2019 Independent Medical Examination Report on Plaintiff Jasmine Riggins, conducted by Dr. Gladys Fenichel | | JA1792 |
| | Exhibit 29 (Under Seal): September 23, 2019 Independent Medical Examination Report on Plaintiff Elsa Powell, conducted by Dr. Gladys Fenichel | | JA1798 |
| | Exhibit 30 (Under Seal): September 23, 2019 Independent Medical Examination Report on Plaintiff Desire Evans, conducted by Dr. Gladys Fenichel | | JA1805 |

# TABLE OF CONTENTS
(continued)

| ECF No. | Document Description | Date Filed | Page |
|---------|---------------------|------------|------|
| | Exhibit 31 (Under Seal): October 14, 2019 Rebuttal Expert Report from Dr. Gladys Fenichel | | JA1815 |
| | Exhibit 32 (Under Seal): September 23, 2019 Expert Report from Dr, Jay Goldberg | | JA1819 |
| | Exhibit 36 (Under Seal): September 5, 2019 Transcript of Deposition of Desire Evans | | JA1830 |
| | Exhibit 37 (Under Seal): September 6, 2019 Transcript of Deposition of Elsa Powell | | JA1879 |

# No. 20-____

## In the United States Court of Appeals
## For the Third Circuit

MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL,
and DESIRE EVANS, on behalf of themselves and all others similarly
situated,

*Plaintiffs-Respondents*,

v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,

*Defendant-Petitioner.*

On Petition for Permission to Appeal from the United States District Court for the
Eastern District of Pennsylvania, No. 2:18-cv-05629-JDW (Wolson, J.)

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F)

MORGAN, LEWIS & BOCKIUS LLP
   Brian W. Shaffer
   Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103
(215) 963-5000

MORGAN, LEWIS & BOCKIUS LLP
   William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

*Counsel for Defendant-Petitioner*

### CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit Local Appellate Rule 26.1, Defendant–Petitioner Educational Commission for Foreign Medical Graduates makes the following disclosure:

(1)    For nongovernmental corporate parties, please list all parent corporations:

*Educational Commission for Foreign Medical Graduates has no parent corporation.*

(2)    For nongovernmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

*No publicly held corporation owns more than 10% of Educational Commission for Foreign Medical Graduates' stock.*

(3)    If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*At this time, Educational Commission for Foreign Medical Graduates believes that AIG may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy a possible judgment in the action.*

i

4)    In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: (1) the debtor, if not identified in the case caption; (2) the members of the creditors' committee or the top 20 unsecured creditors; and, (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

*Not applicable.*

Dated:  April 6, 2020                    Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:   _____
         William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002

         Brian W. Shaffer
         Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103

ii

JA3

## TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ............................................................i

Table of Contents ............................................................... iii

Table of Authorities ................................................................v

Introduction ....................................................................1

Factual Background ...............................................................3

Questions Presented ..............................................................8

Relief Sought....................................................................9

Reasons for Granting the Petition .................................................10

I.  Review Would Facilitate Development of the Law on Class
    Certification Under Rule 23(c)(4). .............................................10

    A.  This Court should clarify the relationship between the *Gates*
        factors and Rule 23(b). ...................................................12

    B.  This Court should correct the district court's misapplication
        of *Gates*. ..............................................................14

II. This Court Should Grant Interlocutory Review Because The District
    Court's Class Certification Determination Was Erroneous. ........................17

    A.  The district court erred in analyzing variations in state law. ..............18

    B.  The district court erred in analyzing Rule 23(a). ...............................21

III. Class Certification Places Inordinate Pressure on ECFMG to Settle............23

JA4

Conclusion & Prayer for Relief ................................................................25

Certificate of Service ............................................................................26

Certificate of Compliance with Rule 32(a)...........................................27

Attachment

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Alban v. Fiels*,
    61 A.3d 867 (Md. 2013) ......................................................................19

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)...........................................................................23

*Bordentown v. FERC*,
    903 F.3d 234 (3d Cir. 2018) ...............................................................17

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)........................................................................12

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ........................................................passim

*Grandalski v. Quest Diagnostics Inc.*,
    767 F.3d 175 (3d Cir. 2014) ...............................................................18

*Hammersmith v. TIG Ins. Co.*,
    480 F.3d 220 (3d Cir. 2007) ...............................................................20

*Hedgepeth v. Whitman Walker Clinic*,
    22 A.3d 789 (D.C. 2011) ....................................................................20

*Hershman v. Muhlenberg College*,
    17 F. Supp. 3d 454 (E.D. Pa. 2014)....................................................20

*In re Sch. Asbestos Litig.*,
    789 F.2d 996 (3d Cir. 1986) ..........................................................18, 20

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust
Litig.*,
    No. 13-md-2445, 2019 WL 4735520 (E.D. Pa. Sept. 27, 2019) ........13

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ..........................................................18

*Luppino v. Mercedes Benz USA*,
    718 F. App'x 143 (3d Cir. 2017) .....................................................1, 12

*Microsoft Corp. v. Baker*,
 137 S. Ct. 1702 (2017) ......................................................................10

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 259 F.3d 154 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ..........................23, 24

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985) .........................................................................20

*Rodriguez v. Nat'l City Bank*,
 726 F.3d 372 (3d Cir. 2013) .......................................................10, 17

*Romero v. Allstate Ins. Co.*,
 52 F. Supp. 3d 715, 724 (E.D. Pa. 2014) .............................................13

*Slade v. Progressive Sec. Ins. Co.*,
 856 F. 3d 408 (5th Cir. 2017) ..........................................................22

*Spence v. Bd. of Ed. of Christina Sch. Dist.*,
 806 F.2d 1198 (3d Cir. 1986) ......................................................1, 15

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
 552 U.S. 148 (2008) ......................................................................24

*Sullivan v. DB Investments, Inc.*,
 667 F.3d 273 (3d Cir. 2011) (en banc) .............................................18

*Walsh v. Ford Motor Co.*,
 807 F.2d 1000 (D.C. Cir. 1986) ......................................................18

**OTHER AUTHORITIES**

Aaron Young, PhD, et al., *A Census of Actively Licensed Physicians
 in the United States, 2016*, Journal of Medical Regulation (Vol. 10,
 No. 2) .......................................................................................24

Fed. R. Civ. P. 23 ...........................................................................passim

## INTRODUCTION

The district court certified a multistate class of hundreds of plaintiffs seeking to recover for emotional distress. Despite the fact that the claims as a whole are unquestionably unsuitable for class adjudication, the district court relied on Rule 23(c)(4) to certify narrow and abstract issues, limited to duty and breach.

This interlocutory appeal will permit this Court to clarify the relationship between Rule 23(c)(4) and Rule 23(b), an important and unsettled issue in the law of class certification. The district court held that under this Court's decision in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011), Rule 23(b) has no relevance to certification under Rule 23(c)(4). *See* Dkt. 57, Class Certification Memorandum (cited hereinafter as "Mem.") at 9. But this Court, after *Gates*, has held that a plaintiff "may seek certification under Rule 23(c)(4)" only after "having satisfied Rule 23(a) and (b)'s requirements." *Luppino v. Mercedes Benz USA*, 718 F. App'x 143, 146 (3d Cir. 2017).

This Court should also permit interlocutory review because of the errors committed by the district court. For example, the district court's cursory consideration of the *Gates* factors led to certification of an issue class that is "unlikely to substantially aid resolution of the substantial issues on liability and causation." *Gates*, 655 F.3d at 274; *see also Spence v. Bd. of Ed. of Christina Sch.*

1

*Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986) (explaining that emotional distress is "too interwoven to allow a fair determination of damages apart from liability").

And the district court misplaced the burden of proof regarding variations in state law, noting that the "parties have not identified any variations" in the law of the relevant case, Mem. at 11, rather than asking whether Plaintiffs carried their burden of proof to demonstrate the absence of variations. The district court's alternative holding—that Pennsylvania law could apply to claims arising from out-of-state treatment rendered by an out-of-state doctor to an out-of-state patient—is facially incorrect. Mem. at 11.

Nor did the district court ever seriously grapple with the other problems inherent in attempting to certify a class seeking to recover for emotional distress. Even if Plaintiffs suffered compensable emotional distress merely because they learned that they were examined by an allegedly unqualified doctor, Plaintiffs have not demonstrated that such a reaction is typical. And if learning that the doctor was unqualified is what causes emotional distress, then certifying and providing notice of this class action will actually **cause** injuries to class members.

For these reasons—and because of the settlement pressure that class certification creates—this Court should grant this petition for permission to appeal.

2

## FACTUAL BACKGROUND

Petitioner Educational Commission for Foreign Medical Graduates ("ECFMG") is a Philadelphia-based private non-profit organization that promotes quality health care for the public. *See* Dkt. 32-3.  Among other tasks, ECFMG certifies graduates of international medical schools as ready to enter U.S. graduate medical education (usually residency programs). *See id.*

The certification provided by ECFMG is limited.  ECFMG would only (1) certify that the applicant received passing grades on an English exam and two substantive exams (the first two steps of the United States Medical Licensing Examination ("USMLE")), Dkt. 32-5; Dkt. 32-46 at 88:21–89:2; and (2) verify the diploma provided by the applicant by asking the issuing medical school to confirm its legitimacy, Dkt. 32-46 at 88:3–14.

Other than certifying the test results and the diploma, ECFMG did not make any additional representations regarding the applicant.  In particular, ECFMG's reports did not (and were not expected to) verify an applicant's identity, Social Security number, immigration status, passport information, criminal background, readiness to treat patients, ethics, honesty, morality, or character. *Id.* at 198:16–22, 200:13–15, 240:18–241:6, 242:6–243:3, 244:22–245:13.

3

### *Dr. Akoda*

This case involves obstetrician/gynecologist John Nosa Akoda, who ECFMG certified in 1997.[1]  Dkt. 32-21.  It is undisputed that Dr. Akoda passed the two substantive examinations and presented to ECFMG a medical school diploma in his name that was verified as authentic by the University of Benin, a Nigerian medical school.  Dkt. 32-1 at 4; Dkt. 39-2.  After obtaining ECFMG certification, Dr. Akoda successfully:

- passed Step 3 of the USMLE, Dkt. 32-34 at 4;

- was admitted to and completed a residency program at Howard University Hospital, Dkt. 39-5; Dkt. 39-6;

- became licensed to practice medicine in Maryland and Virginia, Dkt. 32-34 at 4;

- was awarded hospital privileges at Prince George's Hospital Center and hired by several medical offices, *id.*; and

- achieved Board certification in his specialty, Dkt. 39-7.

In 1996, Jersey Shore Medical Center, a residency program that Dr. Akoda had entered, raised concerns with ECFMG regarding Dr. Akoda's identity.  Dkt. 32-23.  Following an investigation—in which Dr. Akoda addressed those concerns and provided supporting hard-copy documentation, Dkt. 32-26; Dkt. 32-27—ECFMG

---

[1] The district court's statement that John Akoda "was not a doctor," Mem. at 1, is incorrect.  John Akoda completed a residency program, was licensed to practice medicine, and achieved Board certification as a specialist.  By any meaning of the term, John Akoda was a "doctor."

concluded that there was insufficient evidence of any discrepancy.  Dkt. 32-29; Dkt. 32-46 at 150:24–151:6   Jersey Shore Medical Center also reported its suspicions to the Maryland Board of Physicians, which took no action against Dr. Akoda.  Dkt. 39-9.

In November 2016, following a two-year investigation by the U.S. Attorney's office, Dr. Akoda pleaded guilty to misuse of a Social Security number.  Dkt. 32-32. It was discovered that Dr. Akoda had previously applied to ECFMG under two different names: Oluwafemi Charles Igberase in 1992 and Igberase Oluwafemi Charles in 1994.  *Id.*  ECFMG immediately revoked his certificate.  Dkt. 32-33.

### Plaintiffs Sue ECFMG for Emotional Distress

The four named plaintiffs—Monique Russell, Jasmine Riggins, Elsa Powell, and Desire Evans—are former patients of Dr. Akoda, either because Dr. Akoda was their regular doctor or was the doctor who happened to be "on-call" at the hospital when they gave birth.  Even among Plaintiffs, there is significant variation in their treatment by and allegations against Dr. Akoda:

- For Ms. Russell, Dr. Akoda performed a successful emergency c-section. Dkt. 46-16 at 9.  She not only does not complain about her treatment but agrees that it "really was best/necessary."  Dkt. 39-33.  She never sought any mental health treatment after hearing about Dr. Akoda's guilty plea. Dkt. 50-7.

- For Ms. Riggins, Dr. Akoda performed a successful elective c-section and provided prenatal care.  Dkt. 46-16 at 8.  She had no concerns about her treatment and no history of mental health or psychiatric treatment.  Dkt. 46-12 at 4.

JA12

- For Ms. Powell, Dr. Akoda successfully delivered her baby, performed emergency surgery, and assisted with post-natal care. Dkt. 46-16 at 6. She alleges that Dr. Akoda was flirtatious and made inappropriate comments. *Id.* at 6. She has no history of mental health or psychiatric treatment. Dkt. 46-13 at 4.

- For Ms. Evans, Dr. Akoda performed a successful emergency c-section. Dkt. 46-16 at 4. She alleges that he improperly manipulated her clitoris. *Id.* at 4. Ms. Evans has extensive history of mental health treatment, both before and after encountering Dr. Akoda. Dkt. 50-8 at 6–8. None of her mental health records refers to Dr. Akoda. *Id.* at 7.

Despite the large number of persons and entities potentially responsible for Plaintiffs' alleged emotional distress[2]—most obviously, Dr. Akoda himself but also including the residency program from which he graduated, states that licensed him, and hospitals and medical practices that employed him—Plaintiffs chose to sue ECFMG on behalf of a putative class.[3]

Following extensive briefing and a hearing, Judge Wolson certified an issue class under Federal Rule of Civil Procedure 23(c)(4), comprising "All patients examined or treated in any manner by Oluwafemi Charles Igberase (a/ka Charles J.

---

[2] At the hearing, Plaintiffs' counsel confirmed that the only harm for which they seek for the class to recover is "emotional distress." Jan. 30, 2020 Hearing Tr. at 5:22–25.

[3] This litigation follows an unsuccessful putative class action against Dimensions Health Corporation and others who operated Prince George's Hospital Center, where Dr. Akoda practiced. *See Russell v. Dimensions Corp., et al.*, CAL 17-22761 (Prince George's Cty. Cir. Ct., Md.); *Dews v. Dimensions Healthcare Sys.*, CAL 17-37091 (Prince George's Cty. Cir. Ct., Md.). The plaintiffs in those cases abandoned their claims after receiving the defendants' motions for summary judgment.

6

Akoda) beginning with his enrollment in a postgraduate medical education program

at Howard University in 2007." Dkt. 58 at 1–2.

The following issues were certified:

(1) whether Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") undertook or otherwise owed a duty to class members;
(2) whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable to class members pursuant to Restatement (Second) of Torts § 324A;
(3) whether ECFMG breached any duty that it owed to class members; and
(4) whether ECFMG breached any duty that it owed to hospitals and state medical boards.

*Id.* at 2.

# QUESTIONS PRESENTED

1.      Whether Rule 23(c)(4) permits certification of a class limited to questions of duty and breach with respect to a multistate class seeking only highly individualized emotional distress damages, without any finding that questions of law or fact common to class members predominate over questions affecting only individual class members and without any finding that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy?

2.      Whether the district court erred in certifying the class, including:

a.      whether the district court correctly applied this Court's decision in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011);

b.      whether the district court erred in analyzing choice-of-law and misallocated the burden regarding variations in state law;

c.      whether the district court erred in analyzing typicality, without considering whether any other class members suffered the same alleged emotional damages as Plaintiffs; and

d.      whether the district court erred by failing to consider that certification will cause emotional distress to class members.

## RELIEF SOUGHT

Petitioner seeks leave to appeal the March 23, 2020 Order granting Plaintiffs' motion for class certification.

JA16

## REASONS FOR GRANTING THE PETITION

Interlocutory review of a district court's class certification order may be granted "on the basis of any consideration." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1710 (2017).  This Court has identified several circumstances in which review is appropriate, including (1) "when the appeal might 'facilitate development of the law on class certification,'" (2) "when the district court's class certification determination was erroneous;" and  (3) "when class certification risks placing 'inordinate . . . pressure on defendants to settle.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 376–77 (3d Cir. 2013) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 164–65 (3d Cir. 2001), *as amended* (Oct. 16, 2001)). Review is warranted under all three criteria.

## I.    Review Would Facilitate Development of the Law on Class Certification Under Rule 23(c)(4).

This Court should provide guidance on certification of issue classes under Rule 23(c)(4), which provides, "When appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).

This Court has not addressed Rule 23(c)(4) at length in nearly a decade.  In *Gates v. Rohm and Haas Co.*, this Court recognized "[t]he interaction between the requirements for class certification under Rule 23(a) and (b) and the authorization of issue classes under Rule 23(c)(4)" as "a difficult matter" that has "generated

10

divergent interpretations among the courts."  655 F.3d at 272.  And this Court set forth a list of factors that district courts should consider as part of the "rigorous analysis" in deciding whether to certify an issue class:

- the type of claim(s) and issue(s) in question;

- the overall complexity of the case;

- the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives;

- the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy;

- the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s);

- the potential preclusive effect or lack thereof that resolution of the proposed issue class will have;

- the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues;

- the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and

- the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*Id.* at 273.

Two issues related to Rule 23(c)(4) and the *Gates* factors warrant clarification by this Court.  First, did the district court correctly hold—contrary to a decision by

11

this Court post-dating *Gates*—that the *Gates* factors render Rule 23(b) irrelevant to class certification?  Second, did the district court's cursory discussion of *Gates* satisfy the "rigorous analysis" required by this Court?

### A.  This Court should clarify the relationship between the *Gates* factors and Rule 23(b).

The district court interpreted *Gates* as holding that Rule 23(b) is irrelevant to certification of an issue class under Rule 23(c)(4), holding that it only had to "consider Rule 23(a) and then turn to the *Gates* factors in conducting its analysis." Order at 9.  This decision appears to be the first case ever interpreting *Gates* in this manner.

Numerous decisions—including one from this Court—cast serious doubt on this understanding of *Gates*.  Two years after *Gates*, the Supreme Court unequivocally reaffirmed that "a party seeking to maintain a class action" must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  Relying on *Comcast*, an unpublished decision from this Court held that a plaintiff "may seek certification under Rule 23(c)(4)" only after "having satisfied Rule 23(a) and (b)'s requirements." *Luppino*, 718 F. App'x at 146; *see also id.* (holding that the "conclusion that a (c)(4) class was not certifiable" need not be addressed because of "the class certification's (b)(3) defects").

12

Nor have other district courts shared the understanding of the district judge in this case. *See Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 724 (E.D. Pa. 2014) (quoting *Gates* while noting that "[c]ertification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met"); *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, No. 13-md-2445, 2019 WL 4735520, at *18 (E.D. Pa. Sept. 27, 2019) (relying on *Romero* for this proposition).

Indeed, Plaintiffs' counsel—in a brief filed with the Supreme Court—disavowed the district court's interpretation of *Gates*. Janet, Janet & Suggs, LLC, who the district court appointed class counsel, represented to the Supreme Court that this Court "rest[s] the determination whether to certify an issue class on whether the issue class itself satisfies the Rule 23(b)(3) requirements of predominance and superiority, and appl[ies] a 'functional' analysis to consider whether an issue class is a superior method of adjudicating a case." Brief in Opposition, *Behr Dayton Thermal Prods., LLC v. Martin*, No. 18-472 (U.S. 2019), *available at* https://tinyurl.com/w4ep2ju.

The district court's treatment of Rule 23(b)(3) as irrelevant is particularly puzzling, given the acknowledgment by Plaintiffs' counsel at the class certification hearing that "in essence, it's a (b)(3) class" that Plaintiffs seek to certify. Jan. 30, 2020 Hearing Tr. 24:10-12; *see also id.* at 23:2–24:1 (The Court: "[I]f I certify a

13

class here, it is ultimately a (b)(3) class. Right?"). It is incongruous to suggest that the certified class is "in essence" a Rule 23(b)(3) class but that Rule 23(b)(3) need not be satisfied. And the district court noted the difficulty in understanding the interaction of the provisions of Rule 23. *See id.* at 26:3–5 ("[O]ne of my questions for you all is sort of the interplay between Rule 23(a) and (b) on the one hand and 23(c)(4) on the other hand[.]").

The correct standard for certification of an issue class is an important one, which warrants clarification by this Court. If the certification order in this case is correct, then certification would be proper in any case in which a plaintiff can identify a common issue of law or fact potentially affecting numerous plaintiffs. No matter how predominant the individualized issues and evidence (or superior individual suits or other judicial tools might be), a district court would always be free to slice off a narrow, abstract issue and certify it for class treatment. This is a far cry from the "rigorous analysis" of Rule 23(b) demanded by this Court and the Supreme Court.

### B.  This Court should correct the district court's misapplication of *Gates*.

Even apart from the district court's failure to consider Rule 23(b) (much less find that the requirements of the Rule had been met), the district court failed to engage in the rigorous analysis under Rule 23(c)(4) required this this Court's precedent: "[A] court's decision to exercise its discretion under Rule 23(c)(4), like

14

any other certification determination under Rule 23, must be supported by rigorous analysis." *Gates*, 655 F.3d at 272 (quoting *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200–01 (3d Cir. 2009) (alteration in original)).

The district court's discussion of the *Gates* factors begins on page 22 of the 28-page opinion.  But the first four pages of that truncated discussion concern Plaintiffs' request for certification of all liability issues, which the district court rejected.  *See* Mem. at 22–25.  Only four paragraphs of the opinion discuss whether Rule 23(c)(4) and *Gates* permit the certification ordered by the district court.  *See* Order at 25-28.

This brief discussion does not engage in a rigorous analysis of the *Gates* factors sufficient to justify certification.  For example, the district court failed to consider "the type of claims at issue."  This failure is significant in light of this Court's holding that claims based on emotional distress are particularly "unsuitable for class treatment," given that emotional distress liability and damages are "too interwoven to allow a fair determination of damages apart from liability."  *Spence*, 806 F.2d at 1202.

And the district court's analysis of "efficiencies to be gained" conflicts with this Court's analysis in *Gates*.  In *Gates*, the plaintiffs brought claims based on alleged exposure to environmental contamination.  Like Plaintiffs, the *Gates* plaintiffs sought certification of generalized, abstract questions of liability, while

15

JA22

leaving the bulk of the claims for later, individual proceedings. *See Gates*, 655 F.3d at 272 (explaining that "causation and extent of contamination," "the fact of damages," and "the amount of damages" would need to be determined in follow-up proceedings). In light of the "numerous individual issues that would remain," resolution of the common issues was "unlikely to substantially aid resolution of the substantial issues on liability and causation," so certification under Rule 23(c)(4) would be improper. *Id.* at 272, 274.

As in *Gates*, in this case, determination of the classwide issues would still leave causation, the fact of damages, and the amount of damages to be determined in follow-up proceedings. The district court failed to follow this Court's direction to "explain how class resolution of the issue(s) will fairly and efficiently advance the resolution of class members' claims, including resolution of remaining issues," *id.* at 273, and as a result, certified an issue class indistinguishable from the issue class rejected in *Gates*.

And although the district court suggested that a jury in individual proceedings "will not have to reexamine any of the evidence about ECFMG's conduct," that suggestion is incorrect. Mem. at 27. To determine causation (particularly proximate causation), understand who Dr. Akoda was, and even have a basic understanding of the theory of liability against ECFMG, every jury in every individual proceeding would need to hear essentially all of the evidence that Plaintiffs propose to present

on the class issues. And in every case, determining causation would require a jury to consider the entire chain of events—including any alleged wrongdoing by ECFMG, residency programs that admitted Dr. Akoda, medical boards that licensed him, hospitals that gave him privileges, the specialty board that certified him, and law enforcement officers who investigated him—to decide which actor, if any, was the proximate cause of any alleged emotional distress suffered by any individual plaintiff. *Cf. Bordentown v. FERC*, 903 F.3d 234, 247 (3d Cir. 2018) (noting that "intervening act[s]" can sever a causal chain). No efficiencies would be gained by such a proceeding.

Every justification offered by the district court for certification of the issue class in this proceeding would apply equally to the issue class denied certification in *Gates*. Granting interlocutory review would allow this Court to develop the law on class certification under Rule 23(c)(4) and provide guidance on application of the *Gates* factors in cases where parties seek to certify narrow issues for class treatment while leaving the majority of the claims for individual determinations.

II.    **This Court Should Grant Interlocutory Review Because The District Court's Class Certification Determination Was Erroneous.**

Review of a district court's class certification determination is also appropriate when that determination is erroneous. *Rodriguez*, 726 F.3d at 377. Even apart from the errors in failing to consider Rule 23(b)(3) and applying the *Gates* factors, the district court committed other errors that warrant review.

17

### A.     The district court erred in analyzing variations in state law.

"[I]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n.28 (3d Cir. 2011) (en banc) (internal quotation marks and citations omitted); *see Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183–84 (3d Cir. 2014) (affirming denial of class certification due to variations in state law).   The district court incorrectly analyzed variations in state law and misplaced the burden of proof.

The party seeking certification of a class action has the burden to conduct an "extensive analysis" of state law variations.  *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986); *see also Grandalski*, 767 F.3d at 183-84; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) (noting that the burden "rests squarely with the plaintiffs"); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("[M]ovants must credibly demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'" (quoting *In re Sch.l Asbestos Litig.*, 789 F.2d at 1010)).

Plaintiffs failed to carry their burden in this case.  Although ECFMG is headquartered in Pennsylvania, Dr. Akoda was not licensed to practice medicine in Pennsylvania and did not treat patients in Pennsylvania.  He was licensed to practice medicine in Maryland and Virginia, worked in two private medical practices in

Maryland, and secured privileges at hospitals in Maryland and the District of Columbia.  The certified class comprises patients examined or treated in at least three jurisdictions (Maryland, Virginia, and the District of Columbia).   Rather than provide the necessary "extensive analysis" of these states' laws, Plaintiffs' counsel merely represented that they were "unaware" of any relevant conflicts between the laws of Pennsylvania and other states.  Dkt. 32-1 at 22–23.

The district court followed suit and misallocated the burden of proof.  Rather than asking whether Plaintiffs proved that there was no variation, the district court relied on the fact that "the parties have not identified any [variations]," Mem. at 11, placing the burden on ECFMG to identify differences in state law rather than on Plaintiffs to prove uniformity.

The district court overlooked conflicts between the laws of the relevant jurisdictions.  Maryland, for example, "does not recognize the tort of negligent infliction of emotional distress." *Alban v. Fiels*, 61 A.3d 867, 876 (Md. 2013).  Pennsylvania and the District of Columbia recognize causes of action for negligent infliction of emotional distress but with significant variations: In the District of Columbia, a plaintiff must prove, *inter alia*, that "the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being" and that there is "an especially likely risk that the defendant's negligence would cause serious emotional

19

distress to the plaintiff." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011). Pennsylvania courts are split as to whether the Pennsylvania Supreme Court would approve of negligent infliction of emotional distress claims based on similar considerations. *Hershman v. Muhlenberg College*, 17 F. Supp. 3d 454, 460 n.6 (E.D. Pa. 2014).

The district court did not grapple with these variations in state law or engage in any meaningful analysis of the availability of emotional distress damages in regular negligence claims. Its reasoning falls well short of the "extensive analysis" of state law variations required to show "that class certification does not present insuperable obstacles." *In re Sch. Asbestos Litig.*, 789 F.2d at 1010.

The district court's alternative holding—that Pennsylvania law would apply to the claims of class members treated in hospitals across the country—is erroneous. Mem. at 11. The Supreme Court has rejected this approach: Courts cannot avoid variations in state law by taking "a transaction with little or no relationship to the forum and apply[ing] the law of the forum." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).

Pennsylvania applies a "flexible" choice-of-law analysis that "permits analysis of the policies and interests underlying the particular issue before the court" and applies the law of the state with the "most interest in the problem." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) (quoting *Griffith v.*

20

*United Air Lines, Inc.*, 203 A.2d 796, 805–06 (Pa. 1964)).  Pennsylvania has little (if any) interest in the emotional distress resulting from out-of-state treatment rendered by an out-of-state doctor to an out-of-state plaintiff.  Indeed, serious problems under the Commerce Clause would arise if Pennsylvania purported to apply its law to claims arising out of the relationship between doctors and patients in other states.

The alternative holding fails, and Plaintiffs' failure to present an analysis of variations in state law, standing alone, should have precluded certification.

## B.    The district court erred in analyzing Rule 23(a).

Nor did the district court correctly analyze Rule 23(a).  Even assuming (the highly questionable premise) that Plaintiffs suffered compensable emotional distress when they learned, years after the fact, that their Board-certified doctor (who delivered hundreds of healthy babies to healthy mothers) had misused a Social Security number, Plaintiffs did not demonstrate that their reactions were typical of the reactions of other members of the putative class.  For class members who were perfectly satisfied with the medical care and treatment that they received from Dr. Akoda, there is no reason to believe that members of the class would share Plaintiffs' atypical emotional distress.  *See* Jan. 30, 2020 Hearing Tr. at 12:20–21 (Plaintiffs' counsel conceding  that the class includes individuals who "didn't suffer any provable emotional distress").

21

Indeed, if Plaintiffs' liability theory were correct—and learning that Dr. Akoda misused a Social Security number would predictably cause emotional distress to his former patients—then certification of this class action would **cause harm** to unnamed class members. Under Plaintiffs' theory, learning of Dr. Akoda's guilty plea causes emotional distress. Class members who are unaware of the guilty plea have (at present) suffered no harm at all. But certifying the class and providing notice would inflict emotional distress on class members solely for the purpose of allowing them to recover for this distress against ECFMG. Whether this issue is viewed as typicality (because Plaintiffs, unlike unnamed class members, have allegedly already suffered emotional distress), adequacy (because of the inherent conflict of interest in Plaintiffs' plans to inflict emotional distress on their fellow class members), or superiority (because of the harms to class members), the fact should preclude certification.

And to the extent that class members were dissatisfied with their treatment by Dr. Akoda—and suffered actual, physical injuries as a result of malpractice—a class action seeking only emotional distress could preclude them from asserting their claims. The district court relied on the opportunity to opt out to cure any conflicts between named and unnamed class members, Mem. at 19, but if opting out could always cure a conflict between named and unnamed class members, adequacy would be a dead letter. *But see Slade v. Progressive Sec. Ins. Co.*, 856 F. 3d 408, 412 (5th

22

Cir. 2017) ("When the class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class.").

Moreover, the issue class has not been certified under any provision of Rule 23(b), and nothing in Rule 23(c)(4) creates a right for class members to opt out.[4] This procedural issue further demonstrates the need for this Court's clarification of the proper standard under Rule 23(c)(4) for issue certification.

## III. Class Certification Places Inordinate Pressure on ECFMG to Settle.

Finally, this Court should grant review because of the settlement pressure created by class certification. Rule 23(f) recognizes that "granting class certification is often the defining moment in class actions" because it may "create unwarranted pressure to settle nonmeritorious claims on the part of defendants." *Newton*, 259 F.3d at 162. Rather than "run the risk of potentially ruinous liability," *id.* at 164 (quoting Fed. R. Civ. P. 23(f) advisory committee's note), a class action defendant "[f]aced with even the small chance of a devastating loss" may be pressured into settling questionable claims, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011). The mere "potential for uncertainty and disruption in a lawsuit" alone might "allow plaintiffs with weak claims to extort settlements from [an] innocent

---

[4] At the hearing, the district court stated that "[w]e still do notice and an opt-out period" for a "true (c)(4) class" but offered no support for this proposition.

23

JA30

compan[y]." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 149 (2008).

Class certification places inordinate pressure on ECFMG to settle. There are hundreds of class members alleging emotional distress damages that are difficult to quantify and which, if they proceeded trial, could result in outsized judgments. The threat of class-wide determinations regarding ECFMG's duties gives rise to particular concern for ECFMG because, in the event of unfavorable holdings, ECFMG could theoretically face class actions in connection with treatment rendered by any international medical graduate (who compose approximately 22% of all doctors in the United States). Aaron Young, PhD, et al., *A Census of Actively Licensed Physicians in the United States, 2016*, Journal of Medical Regulation (Vol. 10, No. 2), at 10, *available at* https://tinyurl.com/tlnkqat. Class certification thus places "inordinate or hydraulic pressure" on ECFMG to settle and weighs in favor of granting review. *Newton*, 259 F.3d at 164.

24

## CONCLUSION & PRAYER FOR RELIEF

For the foregoing reasons, this Court should grant this petition for permission to appeal under Rule 23(f) and permit interlocutory review of the class certification order.

Dated:  April 6, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: _____

William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103

*Counsel for Defendant-Petitioner*
*Educational Commission for Foreign Medical Graduates*

25

JA32

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2020, the foregoing Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) was filed with the Clerk of Court for the U.S. Court of Appeals for the Third Circuit by email to emergency_motions@ca3.uscourts.gov, in accordance with the April 1, 2020 Filing Notice on acceptance of original proceedings filings by email. I also certify that copies of the foregoing Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) were served by email upon the following counsel:

Nicholas M. Centrella
CONRAD O'BRIEN
1500 Market Street
Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102

Jonathan Schochor
Philip C. Federico
Brent P. Ceryes
SCHOCHOR FEDERICO & STATON, PA
1211 St. Paul Street
Baltimore, MD 21202

Cory L. Zajdel
Z LAW LLC
2345 York Road, Suite #B-13
Timonium, MD 21093

Patrick A. Thronson
JANET JANET & SUGGS LLC
4 Reservoir Circle, Suite 200
Baltimore, MD 21208

David E. Haynes
Karen E. Evans
THE COCHRAN FIRM
1100 New York Ave NW
Suite 340
Washington, DC 20005

Paul M. Vettori
Danielle S. Dinsmore
LAW OFFICES OF PETER ANGELOS
One Charles Center
100 N. Charles Street
Baltimore, MD 21201

Robin Schleifer Weiss
HAGGERTY GOLDBERG
SCHLEIFER & KUPERSMITH
92 Buck Road
Holland, PA 18966

*Counsel for Plaintiffs-Respondents*

_William Peterson_
William R. Peterson

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.     This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) because this petition contains 5,171 words, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

_William Peterson_
_____
William R. Peterson
*Counsel for Defendant-Petitioner,*
*Educational Commission for Foreign*
*Medical Graduates*

Dated: April 6, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MONIQUE RUSSELL, JASMINE RIGGINS,  ELSA M. POWELL, and DESIRE EVANS, on behalf of themselves and all others similarly situated,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,**<br><br>*Defendant.* | **Case No. 2:18-cv-05629-JDW** |

## <u>MEMORANDUM</u>

For years, a man using the name "John Charles Akoda" passed himself off as an OB/GYN. It turns out he was not a doctor at all.  Now, four of his former patients ask the Court to certify a class of his former patients. But they aren't suing him. They are suing the Educational Commission For Foreign Medical Graduates ("ECFMG"), a non-profit organization that certified that the man posing as Akoda had graduated from medical school abroad. Plaintiffs claim that ECFMG was negligent when it certified him as a doctor and when it failed to investigate allegations of identity fraud against him. They want the Court to certify a class only on liability issues so that, if they prevail, they can

JA35

proceed to individual proceedings about the emotional damages that they claim. For the reasons that follow, the Court will certify a class to consider the duty and breach elements of Plaintiffs' claims, which are subject to common proof, but will decline to certify issues about causation and damages, which are not.

## I.    BACKGROUND

### A.    ECFMG's Role In Qualifying International Medical Graduates

ECFMG is a non-profit based in Philadelphia. It certifies international medical graduates ("IMGs")—*i.e.*, individuals who received a medical education outside of the United States and Canada—to practice medicine in the United States. It verifies that IMGs received a degree from an appropriate institution and administers tests of medical knowledge and English proficiency. For qualified IMGs, it issues a certification, which IMGs can then use to apply to residency and other graduate medical education programs and to apply for state medical licenses.

ECFMG has a process for investigating what it calls "irregular behavior," meaning actions that might subvert ECFMG's certification process. It conducts investigations that include interviews with accused IMGs, as well as other individuals involved, and review of relevant documents. If ECFMG concludes that an IMG has engaged in irregular

2

behavior, it can revoke its certification of that IMG, or it can take lesser
actions.

### B.    Igberase/Akoda

In April 1992, Oluwafemi Charles Igberase applied to ECFMG for
certification. He failed ECFMG's medical licensing exam twice but passed on
his third try. ECFMG then issued him a certificate as an IMG. However, he
did not gain admission to a residency program. In March 1994, Igberase
submitted a second application to ECFMG for certification. In this second
application, he used a false date of birth and a different name: Igberase
Oluwafemi Charles. ECFMG approved this second application in December
1994. In November 1995, ECFMG determined that Igberase fraudulently
applied for two ECFMG certifications under two different names and revoked
each certification.

Igberase applied for certification to ECFMG a third time in 1996, using
a fake passport and yet another name: John Charles Akoda. ECFMG certified
Akoda in August 1997. In 1998, Igberase applied for and was admitted to a
residency program at Jersey Shore Medical Center ("JSMC"). In August 2000,
JSMC asked ECFMG to investigate Akoda because JSMC learned that the
individual known as "Akoda" had served as a resident in two other U.S.
residency programs under the name Igberase. ECFMG began an
investigation. Using the "Akoda" identity, Igberase disputed the JSMC

3

allegations. In December 2000, JSMC advised ECFMG that it had dismissed Akoda from its residency program for using a false social security number. Plaintiffs allege that ECFMG took no action to retract Akoda's certification.

In 2006, Igberase applied for a residency at Howard University Hospital, using the Akoda identity and another individual's social security number. After completing the program in 2011, he applied for and received a Maryland medical license using fake identification documents. That same year, he became a member of the medical staff at Prince George's Hospital Center and began seeing patients there.

On June 9, 2016, law enforcement executed search warrants concerning Igberase/Akoda and discovered fraudulent or altered documents, including medical diplomas, transcripts, and letters of recommendation. He signed a plea agreement admitting to misuse of a social security number. ECFMG revoked the certification it had issued to Akoda. In March 2017, Igberase was sentenced by the United States District Court for the District of Maryland. Shortly thereafter, Prince George's Hospital Center terminated his medical privileges, and the Maryland Board of Physicians revoked his license.

### C.    Procedural History

Plaintiffs Monique Russell, Jasmine Riggins, Elsa Powell, and Desire Evans are former patients of Igberase (who they knew as "Akoda"). He performed unplanned emergency cesarean section surgery on Ms. Russell and

Ms. Riggins. He also delivered Ms. Evans' child and Ms. Powell's child. None of the patients knew Igberase's true identity, and all assumed he was a doctor. They allege that he touched them without informed consent and that he performed inappropriate examinations of a sexual nature while utilizing inappropriate and explicit sexual language.

Plaintiffs assert claims of negligence and negligent infliction of emotional distress ("NIED") against ECFMG, arising out of its certification of Igberase. They ask the Court to certify a class of "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." (ECF No. 1, Ex. A at ¶ 48.) Plaintiffs ask the Court to certify the class as to liability, which they describe as "Option A." Alternatively, they propose nine specific issues for which the Court should certify a class ("Option B"):  (1) whether ECFMG undertook or otherwise owed a duty to class members who were patients of Igberase; (2) whether ECFMG breached its duty to class members; (3) whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable for foreseeable injuries to third persons such as class members pursuant to Restatement (Second) of Torts § 324A; (4) whether ECFMG breached its duty to hospitals and state medical boards; (5) whether the emotional distress and other damages that Plaintiffs allege were a foreseeable result of ECFMG's conduct; (6) whether ECFMG's conduct

5

involved an unusual risk of causing emotional distress to others under Restatement (Second) of Torts § 313; (7) whether ECFMG is subject to liability under Restatement (Second) of Torts § 876 for assisting Igberase in committing fraud; (8) whether ECFMG knew or should have known that Akoda was, in fact, Igberase; and (9) whether it was foreseeable that ECFMG's conduct could result in emotional distress experienced by class members. (ECF No. 32-1 at 11.)  Of these, issues 5, 6, and 9 focus on questions of causation and damages (the "Damages Issues"), while the others relate to questions of liability.  The Court held oral argument on January 30, 2020.

## II.   STANDARD OF REVIEW

A court must not certify a class "casually." *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 132 (E.D. Pa. 2015). Instead, class "certification is proper only if the trial court is satisfied, after a rigorous analysis" that all of the necessary requirements have been fulfilled. *Ferreras v. American Airlines, Inc.*, 946 F.3d 178, 183 (3d Cir. 2019) (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). A rigorous analysis requires that factual determinations be made by a preponderance of the evidence. *See id.* This inquiry will at times require a court to examine issues that overlap, to some extent, with issues left for the final merits determination. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305,

318 (3d Cir. 2008). However, the Court should only do so to the extent

necessary to resolve the class certification motion, and no more. *See Amgen*

*Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

A party seeking to certify a class must satisfy the requirements of

Federal Rule of Civil Procedure 23, which ordinarily means the four

requirements of Rule 23(a) and the requirements of one subparagraph of Rule

23(b). *See Gonzalez v. Corning*, 885 F.3d 186, 192 (3d Cir. 2018), *as amended*

(Apr. 4, 2018). Here, however, Plaintiffs seek to proceed with an issues class

under Rule 23(c)(4), which provides that, "[w]hen appropriate, an action may

be brought or maintained as a class action with respect to particular issues."

Fed. R. Civ. P. 23(c)(4). ECFMG argues that Plaintiffs cannot certify an

issues class until Plaintiffs show that "the common issues predominate over

the individual issues," *i.e.*, that Plaintiffs satisfy Rule 23(b)(3). (ECF No. 48

at 4.)

ECFMG's argument misunderstands the law in the Third Circuit. In

*Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3d Cir. 2011), the Circuit noted a

disagreement among courts about how to apply Rule 23(b)(3)'s predominance

requirement in cases arising under Rule 23(c)(4): some courts held that a

plaintiff had to satisfy Rule 23(b)(3)'s predominance requirement for a case as

a whole before certifying certain issues; while other courts allowed

certification of an issue even if common issues did not predominate in the

7

JA41

case as a whole. *See id.* at 272-73. The Third Circuit declined to join "either camp in the circuit disagreement" and instead set forth a list of factors that courts should consider:  (a) the type of claim(s) and issue(s) in question; (b) the overall complexity of the case; (c) the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; (d) the substantive law underlying the claim(s), including any choice of law questions it might present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; (e) the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); (f) the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; (g) the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; (h) the impact individual proceedings may have upon one another, including whether remedies are undividable such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and (i) the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s). *Id.* at 273.

JA42

ECFMG's argument that the Court should require Plaintiffs to satisfy Rule 23(b)(3)'s predominance requirement before turning to these factors parrots one of the camps that the Third Circuit acknowledged but refused to join in *Gates*. Because the Third Circuit rejected that view, this Court must do the same. Therefore, the Court will consider Rule 23(a) and then turn to the *Gates* factors in conducting its analysis. At each stage, the burden will remain on Plaintiffs to show by a preponderance of the evidence that the Court should certify a class.

## III.  ANALYSIS

### A.  Choice Of Law

Before tackling the question of class certification, the Court addresses the law that applies here. It does so because the parties spar about the applicable choice of law and ECFMG contends that multiple state laws might apply, thereby making class certification inappropriate. The Third Circuit has held that a "district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements" for class certification. *Gates*, 655 F.3d at 270. Thus, the Court must resolve the parties' genuine legal dispute about the choice of law so that it can then answer the question of whether to certify a class.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state, so Pennsylvania choice-of-law rules apply. *See Klaxon Co. v.*

9

*Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania employs a flexible approach that considers both contacts establishing significant relationships with a state and a qualitative appraisal of the relevant states' policies with respect to the controversy. *See Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219-20 (3d Cir. 2005); *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805-06 (1964). First, the court must determine whether an actual conflict exists between the laws of two or more states. Then, if an actual conflict exists, the court must determine whether the conflict is "true," "false," or "unprovided-for." *Rose v. Dowd*, 265 F. Supp.3d 525, 530 (E.D. Pa. 2017). No actual conflict exists if the laws between the states are the same or "if the same result would ensue under the laws of the forum state and those of the foreign jurisdiction." *Id.*; *see also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If no conflict exists, the law of the forum state governs, and the court may end its choice-of-law analysis. *Id.*

Several states aside from Pennsylvania are implicated in this case: New Jersey, Maryland, and the District of Columbia, at a minimum. Other states might have some connection, but the parties have not identified them with any certainty, so the Court has not analyzed them. In any event, the Court concludes that those states' interests in the case would be far weaker than Pennsylvania's interest and that Pennsylvania law would therefore

apply. Not surprisingly, there is little, if any, variation between each state's law governing negligence and NIED.

The elements of negligence and negligent infliction of emotional distress are the same under Pennsylvania, New Jersey, and DC law. Even looking past the elements themselves, the Court discerns no real difference between them, and the parties have not identified any. Nor is there a conflict with Maryland law. While Maryland does not recognize NIED as a separate claim, "[r]ecovery may be had in a tort action for emotional distress arising out of negligent conduct." *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1066 (Md. Ct. Spec. App. 1986). So the same result would ensue under Maryland or Pennsylvania law. As such, there is no "actual" conflict between Maryland and Pennsylvania law, and Pennsylvania law applies.

Even if there were a true conflict between Pennsylvania law and any other state's law, the Court would apply Pennsylvania law to all of the claims in the case. The Court must apply the law of the state with the "most significant contacts or relationships with the particular issue." *Hammersmith*, 480 F.3d at 229-30. ECFMG suggests that Maryland has a greater interest because it involves treatment of Maryland residents by a fake doctor in Maryland. (ECF No. 40 at 19-20.)  But this case is not about Igberase's conduct; it is about ECFMG's conduct. Under the circumstances of this case, Pennsylvania has a greater interest than Maryland, DC, New

11

Jersey, or any other state in determining what duties apply to its corporate citizen and whether that citizen has fulfilled those duties.

**B.    Class Certification**

**1.    Class definition/ascertainability**

A plaintiff seeking certification of a class must provide a proper class definition. *See* Fed. R. Civ. P. 23(c)(1)(B); *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591-92 (3d Cir. 2012). In addition, a plaintiff seeking certification of a class generally must prove that the certified class is ascertainable. *See Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The ascertainability inquiry is twofold, requiring a plaintiff to show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (quotes omitted). A plaintiff need not identify all of the class members at the time of the class certification. Instead, she only has to show that class members can be identified. *See id.* However, courts should shy away from methods that rely on potential class members' say-so. *See Carrera v. Bayer Corp.*, 725 F.3d 300, 306 (3d Cir. 2013).

Here, Plaintiffs ask the Court to certify a class that includes "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." (ECF No. 32-1 at 10.) ECFMG

complains that the class is not ascertainable because it captures patients that Igerbase encountered in Nigeria, before ECFMG certified him. At oral argument, Plaintiffs clarified that they intend the class to capture only patients that Igberase encountered after ECFMG certified his application. (Tr. at 9:5-10:5.)

ECFMG also contends that the class is not ascertainable because the phrase "examined and/or treated in any manner" is vague and would lead to confusion. The Court disagrees. The class definition is intended to capture any patient who received medical care or treatment from Igberase after ECFMG certified him. That phrase does not raise the type of questions that would require individual fact-finding or a subjective determination in order to identify class members.

Finally, ECFMG argues that there is no way to identify class members. Plaintiffs, however, point to medical records from the treating facilities and note that they have already used those records to identify more than 700 class members. (Tr. at 14:13-14:11.)  Those records, which Plaintiffs can obtain by subpoena after certification, provide the type of objective, administratively feasible mechanism required to identify class members. By obtaining the relevant records from Prince George's Hospital Center, Plaintiffs have satisfied their burden of demonstrating that the class is ascertainable; the Court is not just taking their word for it. ECFMG

13

speculates that Howard might not have records from the relevant time frames because records retention requirements would not require it. The possibility that some records might have been lost, however, does not render the class not ascertainable. *See Byrd,* 784 F.3d at 164 ("[A]scertainability only requires the plaintiff to show that class members *can be identified.* Accordingly, there is no records requirement.") (emphasis in original) (internal quotation omitted).

### 2.    Rule 23(a) factors

Rule 23(a) sets forth four threshold requirements for all class actions: numerosity; commonality; typicality; and adequacy of representation. *See* Fed. R. Civ. P. 23(a). The Court addresses each requirement in turn.

### a.    Numerosity

A plaintiff seeking certification must demonstrate that the class is so numerous that joinder of all members is impracticable. "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016) (citation omitted). Here, Plaintiffs have shown that the potential class includes at least the 712 people that Igberase treated at Prince George's Hospital Center. That number alone would render joinder all but impossible, and the class is more expansive than

14

that. Plaintiffs have therefore satisfied the numerosity requirement. Notably, ECFMG does not argue otherwise.

### b.    Commonality

Rule 23(a)(2) requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). Commonality does not require perfect identity of questions of law or fact among all class members. Rather, 'even a single common question will do.'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quoting *Dukes*, 564 U.S. at 359). However, the common issue must be "central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350. There can be legal and factual differences among members of the class, as long as the defendant subjected them all to the same harmful conduct. Ultimately, the commonality bar is not a high one. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).

Here, Plaintiffs have identified several common legal and factual questions that are central to the validity of their claims. In particular, questions about whether ECFMG owed a legal duty either to class members or hospitals and state medical boards, and questions about whether ECFMG breached those duties, are common to all members of the class. Plaintiffs

15

have therefore satisfied the commonality requirement.

ECFMG contends that questions about duty and breach are not common throughout the class because choice-of-law questions might result in different outcomes. Because the Court has already resolved the choice-of-law question, that argument has no impact. ECFMG also argues that determining whether a duty exists requires the Court to assess "the foreseeability of harm to a plaintiff in a particular situation." (Tr. of Hearing dated 1/30/20 at 47:19-48:2.)  ECFMG's argument conflates "foreseeability" as it relates to a duty and "foreseeability" as it relates to causation. Although the concept is embedded in both inquiries, it is not the same.

"The type of foreseeability that determines a duty of care, as opposed to proximate cause, is not dependent on the foreseeability of a specific event. Instead, in the context of duty, the concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury." *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1369 (3d Cir. 1993) (internal quotations and citations omitted). Duty is predicated on the relationship existing between the parties at the relevant time, *i.e.*, the time that ECFMG certified Igberase to apply to a U.S. residency program and/or the time that it investigated (or failed to investigate) his identity fraud. *See, e.g.*, *Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985).

16

JA50

ECFMG's argument would leave open the possibility that a duty would not be fixed until after the fact because the circumstances that define the existence of a duty would not be known at the time that the defendant has to decide how to conduct itself. The law should not sanction such uncertainty. Parties are entitled to know the duties incumbent upon them when they decide how to conduct themselves, not later.

### c.    Typicality

The third requirement, typicality, is normally met where "claims of representative Plaintiffs arise from the same alleged wrongful conduct." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004); FRCP 23(a)(3). "Typicality" aids a court in determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Marcus*, 687 F.3d at 594 (citation omitted).

To determine whether a named plaintiff is so different as to prevent a finding of typicality, a court must address three distinct concerns:  "(1) the claims of the class representative must be the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to

become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *Id.* at 598. The Third Circuit has set a "low threshold" for typicality, such that even "relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (quotes omitted).

Here, Plaintiffs' claims are typical of class members to the extent that the class members consist of Igberase's patients during and after his residency. All of the claims arise from the same legal theory: negligence. The claims also arise from a single course of conduct by ECFMG: the certification and subsequent (allegedly inadequate) investigation of his identity. ECFMG has not suggested any Plaintiff is subject to a unique defense. And nothing before the Court demonstrates that the Plaintiffs have incentives that are at odds with the class they seek to represent.

ECFMG notes that Igberase treated all of the Plaintiffs after entering private practice and obtaining his license and therefore suggests that Plaintiffs are not typical of patients that Igberase treated at Howard. That difference does not render Plaintiffs atypical, however. Patients treated

during and after residency all have claims based on the same course of
ECFMG's conduct.

However, Plaintiffs' claims are not typical of class members to the
extent that the class members consist of Igberase's patients at JSMC. Those
patients can assert negligence claims based on ECFMG's initial certification
of Akoda, but they cannot assert claims based on ECFMG's subsequent
investigation because ECFMG did not conduct the investigation until after
Igberase had treated those patients. Because the named Plaintiffs' claims are
different from patients at JSMC in a meaningful way, the Court will exclude
patients from JSMC from the class.

ECFMG also claims that Plaintiffs are not typical because they claim
only to have suffered emotional damages, and some class members might
have suffered physical harm at Igberase's hands as well. Again, these
distinctions exist, but they do not overcome the fact that the Plaintiffs' claims
arise from the same facts and legal theories as members of the class. To the
extent any member of the class wants to assert additional claims against
ECFMG based on other injuries that Igberase caused, she will have the
opportunity to opt out of the class and assert those claims individually. And,
nothing about the certification of a class in this case has any impact on a
class member's ability to assert tort claims, including claims for other
injuries, against Igberase himself.

### d.    Adequacy

The final 23(a) factor considers adequacy of both the Plaintiffs and counsel to represent the class. The "principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015). ECFMG does not challenge counsel's adequacy, and the Court finds that they have the requisite experience and skill necessary to represent the class.

As to the named Plaintiffs, the Court's inquiry focuses on whether the class representatives have conflicts of interest with the putative class members. *See New Directions Treatment Svcs. v. City of Reading*, 390 F.3d 313 (3d Cir. 2007). Only a "fundamental" conflict of interest will impact the adequacy analysis, meaning a conflict that arises because some class members benefitted from conduct that harmed other class members. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). No such conflict exists here. No member of the class benefitted from Igberase's deception or from ECFMG's conduct. The most that can be said is that some members of the class might not have suffered any emotional damage. But no one benefitted.

ECFMG contends that Plaintiffs are not adequate because they sought to represent a class in a different case about Igberase and ultimately dismissed that case without prejudice. The Court does not know why they made that decision. Nor, apparently, does ECFMG because its argument just speculates about whether they might do the same in this case. Without far more context, the Court has no basis to make any determination about Plaintiffs' commitment to this case based on a decision that they made in another case.

ECFMG also contends that, during their depositions, Plaintiffs did not understand what ECFMG does. Yet none of the Plaintiffs demonstrated a complete lack of knowledge of the case. They just showed confusion about some details. A class representative's lack of knowledge about her case does not make her inadequate, as long as she has "minimal knowledge about the case and [can] make the requisite decisions required of a plaintiff." *In re Suboxone Antitrust Litig.*, MDL No. 2445, 2019 WL 4735520, at * 22 (E.D. Pa. Sept. 27, 2019). Finally, ECFMG claims that some members of the class might not have suffered emotional distress. However, that does not render the Plaintiffs inadequate or suggest a conflict between any Plaintiff and the class she seeks to represent.

21

### 3.    Rule 23(c)(4)/*Gates* factors

Having determined that Plaintiffs can satisfy the Rule 23(a) factors, the Court turns to the question of whether to certify an issues class under Rule 23(c)(4). "Rule 23(c)(4) both imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified, and gives it ample power to treat common things in common and to distinguish the distinguishable." *Gates*, 655 F.3d at 272. "Courts frequently use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication." *Suboxone*, 2019 WL 4735520, at *40 (quote omitted). An issue class need not "seek to prove all of [the] required liability elements through common evidence." *Id.* at *44. Instead, the question is whether one can sever the issues to be certified from the issues not to be certified. *Id.* at * 45.

Here, any duty that applied to ECFMG and ECFMG's potential breach of that duty focus on ECFMG's conduct, not on any individual member of the class. On the other hand, questions about causation and any damages focus on each individual class member.

### a.    Option A (liability class)

Plaintiffs' claims for negligence and NIED require them to prove the four elements of negligence:  duty; breach; causation; and damages. *See Brewington for Brewington v. City of Phila.*, 199 A.3d 348, 355 (Pa. 2018);

22

*Phillips v. Cricket Lighters*, 841 A.2d 1000, 1010 (Pa. 2003). The Court cannot certify a class that encompasses elements of causation and damages because those issues are too individualized.

"[C]ausation . . . often require[s] individual proof." *Gates*, 655 F.3d at 264. Certainly, that is the case here. Indeed, it is all but impossible to separate questions of causation and harm from the individual damages that any plaintiff suffered. After all, prevailing on causation implies that a harm was indeed caused. *See, e.g.*, *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 465 (D.N.J. 2009) ("without a common injury, there can be no common causation, as there is nothing to cause.").

In Pennsylvania, courts use the "substantial factor" test to determine causation. *Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977) (citing to Restatement (Second) of Torts § 431). When evaluating whether negligent conduct is a substantial factor in causing the injury, courts consider the other factors that might contribute to the harm, the extent of the effect of those other factors, whether the actor's conduct created a force or series of forces which are continuous and active up to the time of the harm, or whether instead the actor created a situation harmless unless acted upon by other forces for which the actor is not responsible, and lapse of time between an actor's conduct and the harm. *See Hall v. Millersville Univ.*, 400 F. Supp. 3d 252, 273 (E.D. Pa. 2019) (citing Restatement (Second) of Torts § 433). These considerations render

23

causation a highly individualized inquiry, rather than common to all class members, and therefore disfavor certification of causation. *See, e.g., Barnes v. American Tobacco Co.*, 161 F.3d 127, 145 (3d Cir. 1998) (issues of causation had to be resolved individually); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

Given the individual nature of the causation and damages inquiry, the Court will not certify a class to tackle liability as a whole. There would be little efficiency to be gained from such a certification because the evidence in the class action portion of the case would overlap with the evidence in the individual portion of the case. Presenting the evidence twice would eliminate any efficiency. Also, a jury hearing the class action part of the case would have to hear and consider the same evidence as the jury (or juries) hearing the individual part of the case: whether Igberase's ability to pose as a doctor caused emotional harm and the extent of that harm. Because two juries would be hearing the same evidence, there would be a substantial risk (if not a certainty) of violating the Seventh Amendment's Reexamination Clause. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1182) ("Seventh Amendment problems are inherent when separate juries determine fact of damage and the amount of damages.").

At the hearing, Plaintiffs argue that the Court can draw a distinction between harm, meaning "an invasion of a legally protected interest," and damages when considering the elements of negligence and then certify the liability elements. (Tr. at 32:21-34:5.) Plaintiffs' argument, however, suggests that an improper touching would be negligent, even if it did not cause any damages. That is wrong. A plaintiff cannot prove a negligence claim without proving damage, even if there was some invasion of a legally protected interest. *See Troutman v. Tabb*, 427 A.2d 673, 677 (Pa. Super. Ct. 1981).

### b.   Option B (specific issues)

Having rejected Option A, the Court turns to Plaintiffs' Option B, the certification of nine specific issues. Of the issues that Plaintiffs propose, the Court will not certify the Damages Issues for the reasons discussed above. In addition, Plaintiffs ask the Court to certify a class to answer the question of whether ECFMG faces liability for assisting Igberase in committing fraud, but that is not one of the claims in the case, a fact that Plaintiffs confirmed at oral argument. (Tr. at 7:12-8:24.) Because that question is not at issue in this case, the Court will not certify it.

The remaining issues, however, all relate to whether ECFMG had a relevant legal duty and whether it breached that duty. An analysis of the *Gates* factors reinforces that these issues are appropriate for certification. *First*, the questions of duty and breach favor issue certification because they

25

are questions of law and/or fact common to all class members and subject to common proof. All of the proposed class members are identical in terms of their legal relationship to ECFMG. In other words, barring any exceptional circumstances, which neither party has raised, whatever duty (if any) ECFMG owes to one proposed class member, ECFMG owes the same duty (if any) to the next proposed class member. Moreover, whether ECFMG has breached this duty is a common question of fact for each prospective class member, as the question looks to ECFMG's own conduct and not the conduct of individual class members. As such, these types of issue are amenable to certification.

*Second*, there are efficiencies to be gained by certifying a class on these issues because it will allow for a single trial with a single, preclusive determination about ECFMG's conduct, rather than the presentation of the same evidence about ECFMG again, and again, and again to separate juries. Moreover, there do not appear to be any realistic procedural alternatives to gain similar efficiencies. For example, the Court has considered whether non-mutual collateral estoppel might have all, or at least some, of the same impact and permit trial of these issues to a single jury. It would not because there is no guarantee it would apply. Indeed, if a court or jury ruled in ECFMG's favor, ECFMG could not use that decision in a subsequent case against a different plaintiff. *See Jean Alexander Cosmetics, Inc. v L'Oreal*

26

JA60

*USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (application of collateral estoppel requires, among other things, the party being precluded to have been represented in prior case). The Court explored other alternatives with the parties but found none.

*Third*, and finally, certification of a class on issues related to duty and breach will not trigger any of the problems about which courts must be mindful under *Gates*. Partial certification will not damage any class member's statutory or constitutional rights. There are no indivisible remedies that partial certification could impact. The individual proceedings that will remain, which will focus on causation and damages, need not impact each other. And, partial certification does not raise problems under the Seventh Amendment because the jury in any individual proceeding will not have to reexamine any of the evidence about ECFMG's conduct. It will instead take that conduct, and the first jury's determination about its legal significance, as a given and decide whether and to what extent it impacted a particular plaintiff.

In its Opposition, ECFMG points to the possibility of a statute-of-limitations defense as a reason for the Court not to certify an issues class. However, at oral argument, ECFMG conceded that it has no basis to claim that any member of the class is subject to such a defense. ECFMG just speculates that someone **<u>might</u>** be subject to the defense. (Tr. at 61:23-62:22.)

27

Such speculation is not enough. In any event, any statute of limitations defense would focus on when a class member was aware of the harm she suffered. So, if any class member's personal situation triggers the statute of limitations, then ECFMG can raise that issue in a proceeding that focuses on that person.

## IV.    CONCLUSION

The Court's goal is to move this case efficiently, treating like things alike and different things differently. Here, that means certifying a class of Igberase's patients, beginning with his enrollment at Howard, on the issues of whether ECFMG owed class members or relevant third parties a duty and whether ECFMG breached those duties. The Court will therefore issue an appropriate Order, consistent with Rule 23(c)(1), certifying such a class.

**BY THE COURT:**


*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 23, 2020

28

JA62

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS, on behalf of themselves and all others similarly situated,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,**<br><br>*Defendant.* | **Case No. 2:18-cv-05629-JDW** |

## ORDER

AND NOW, this 23rd day of March, 2020, upon consideration of Plaintiff's Motion for Class Certification (ECF No. 32), all material submitted in support and opposition, and following oral argument, for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**.

It is **FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 23(c)(1)(B) the Court certifies the following class: "All patients examined or treated in any manner by Oluwafemi Charles Igberase (a/ka Charles J.

1

Akoda) beginning with his enrollment in a postgraduate medical education
program at Howard University in 2007."

It is **FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 23(c)(4),
the Court certifies the class with respect to the following issues:  (1) whether
Defendant Educational Commission for Foreign Medical Graduates
("ECFMG") undertook or otherwise owed a duty to class members; (2)
whether ECFMG undertook or otherwise owed a duty to hospitals and state
medical boards, such that ECFMG may be held liable to class members
pursuant to Restatement (Second) of Torts § 324A; (3) whether ECFMG
breached any duty that it owed to class members; and (4) whether ECFMG
breached any duty that it owed to hospitals and state medical boards.

It is **FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 23(g)(1),
the Court appoints the following class counsel:  Conrad O'Brien PC; The
Cochran Firm; Janet Janet & Suggs LLC; Law Offices of Peter Angelos, P. C.;
and Schochor Federico & Staton, PA.

It is **FURTHER ORDERED** that the Court will hold a status call with
the Parties on March 31, 2020, at 10:00 a. m. EDT. Plaintiffs' counsel shall
initiate the call and contact chambers at (267) 299-7320 when all counsel are
on the line.

2

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

JA65

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

CCO-065

No. <u>20-8024</u>

MONIQUE RUSSELL; JASMINE RIGGINS;
ELSA M. POWELL; DESIRE EVANS

v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,
Petitioner

(E.D. Pa. No. 2-18-cv-05629)

Present:  JORDAN, KRAUSE, and MATEY, <u>Circuit Judges</u>

1.  Petition by Educational Commission for Foreign Medical Graduates for Leave to Appeal Pursuant to Fed. R. Civ. P. 23(f)

2.  Respondents' Response in Opposition

3.  Petitioner's Unopposed Motion for Leave to File Reply in Support of Petition, with Reply Attached

Respectfully,
Clerk/CJG

_____ORDER_____
The foregoing petition for leave to appeal is granted, and the foregoing unopposed motion for leave to file reply is granted.

By the Court,

s/ Cheryl Ann Krause
Circuit Judge

Dated: May 11, 2020
Lmr/cc: All Counsel of Record

A True Copy:

Patricia S. Dodszuweit, Clerk

JA66

APPEAL,SPECIAL

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
### CIVIL DOCKET FOR CASE #: 2:18–cv–05629–JDW

| | |
|---|---|
| RUSSELL et al v. EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES | Date Filed: 12/31/2018 |
| Assigned to: HONORABLE JOSHUA D. WOLSON | Jury Demand: None |
| Referred to: MAGISTRATE JUDGE RICHARD A. LLORET (Settlement) | Nature of Suit: 360 P.I.: Other |
| Case in other court:  USCA, 20–02128 | Jurisdiction: Diversity |
|            USCA, 20–08024 | |
| Cause: 28:1332 Diversity–Personal Injury | |

**Plaintiff**

**MONIQUE RUSSELL**                     represented by   **CORY L. ZAJDEL**
Z LAW LLC
2345 YORK ROAD SUITE #B–13
TIMONIUM, MD 21093
4432131977
Email: clz@zlawmaryland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JONATHAN SCHOCHOR**
SCHOCHOR FEDERICO & STATON, PA
THE PAULTON
1211 ST. PAUL STREET
BALTIMORE, MD 21202
410–234–1000
Email: jschochor@sfspa.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**NICHOLAS M. CENTRELLA**
CONRAD O'BRIEN
1500 MARKET ST., CENTRE SQUARE
WEST TOWER 39TH FLOOR
PHILADELPHIA, PA 19102
215–864–8098
Fax: 215–864–0798
Email: ncentrella@conradobrien.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PHILIP C. FEDERICO**
SCHOCHOR FEDERICO & STATON PA
1211 ST PAUL ST
BALTIMORE, MD 21202
410–234–1000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BENJAMIN OSCAR PRESENT**
KLINE & SPECTER, PC
1525 LOCUST STREET
19TH FLOOR
PHILADELPHIA, PA 19102
(215) 772–2479
Email: benjamin.present@klinespecter.com
*TERMINATED: 01/24/2020*

JA67

**BRENT P. CERYES**
SCHOCHOR FEDERICO & STATION
PA
1211 ST PAUL STREET
BALTIMORE, MD 21202
410–598–1667
Email: bceryes@sfspa.com
*ATTORNEY TO BE NOTICED*

**DANIELLE S. DINSMORE**
LAW OFFICES OF PETER ANGELOS
ONE CHARLES CENTER
100 N. CHARLES STREET
BALTIMORE, MD 21201
410–649–2020
Email: ddinsmore@lawpga.com
*ATTORNEY TO BE NOTICED*

**DAVID E. HAYNES**
THE COCHRAN FIRM
1100 NEW YORK AVE NW SUITE 340
WEST TOWER
WASHINGTON, DC 20005
202–682–5800
Email: dhaynes@cochranfirm.com
*ATTORNEY TO BE NOTICED*

**KAREN E. EVANS**
THE COCHRAN FIRM
1100 NEW YORK AVE NW
SUITE 340 WEST TOWER
WASHINGTON, DC 20005
202–682–5800
Email: kevans@cochranfirm.com
*ATTORNEY TO BE NOTICED*

**PATRICK A. THRONSON**
JANET JANET & SUGGS LLC
4 RESERVOIR CIRCLE SUITE 200
BALTIMORE, MD 21208
410–653–3200
Email: pthronson@jjsjustice.com
*ATTORNEY TO BE NOTICED*

**PAUL M. VETTORI**
LAW OFFICE PETER G ANGELOS PC
ONE CHARLES CENTER
100 N CHARLES ST 20TH FL
BALTIMORE, MD 21201
410–649–2027
Email: pvettori@lawpga.com
*ATTORNEY TO BE NOTICED*

**ROBIN S. WEISS**
CONRAD O'BRIEN PC
1500 MARKET ST SUITE 3900
CENTRE SQUARE WEST TOWER
PHILADELPHIA, PA 19102
215–864–9600
Email: rweiss@conradobrien.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**JASMINE RIGGINS**                          represented by

JA68

**CORY L. ZAJDEL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JONATHAN SCHOCHOR**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**NICHOLAS M. CENTRELLA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PHILIP C. FEDERICO**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BENJAMIN OSCAR PRESENT**
(See above for address)
*TERMINATED: 01/24/2020*

**BRENT P. CERYES**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIELLE S. DINSMORE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DAVID E. HAYNES**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KAREN E. EVANS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**PATRICK A. THRONSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**PAUL M. VETTORI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ROBIN S. WEISS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ELSA M. POWELL**                    represented by   **CORY L. ZAJDEL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JONATHAN SCHOCHOR**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**NICHOLAS M. CENTRELLA**

JA69

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PHILIP C. FEDERICO**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BENJAMIN OSCAR PRESENT**
(See above for address)
*TERMINATED: 01/24/2020*

**BRENT P. CERYES**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIELLE S. DINSMORE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DAVID E. HAYNES**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KAREN E. EVANS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**PATRICK A. THRONSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**PAUL M. VETTORI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ROBIN S. WEISS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DESIRE EVANS**                    represented by   **CORY L. ZAJDEL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JONATHAN SCHOCHOR**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**NICHOLAS M. CENTRELLA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PHILIP C. FEDERICO**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BENJAMIN OSCAR PRESENT**
(See above for address)

JA70

*TERMINATED: 01/24/2020*

**BRENT P. CERYES**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIELLE S. DINSMORE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DAVID E. HAYNES**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KAREN E. EVANS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**PATRICK A. THRONSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**PAUL M. VETTORI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ROBIN S. WEISS**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**EDUCATIONAL COMMISSION**             represented by    **BRIAN W. SHAFFER**
**FOR FOREIGN MEDICAL**                                 MORGAN, LEWIS & BOCKIUS
**GRADUATES**                                           1701 MARKET STREET
                                                        PHILA, PA 19103–2921
                                                        215–963–5000
                                                        Fax: 215–963–5001
                                                        Email: bshaffer@morganlewis.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **ELISA P. MCENROE**
                                                        MORGAN LEWIS BOCKIUS LLP
                                                        1701 MARKET ST
                                                        PHILADELPHIA, PA 19103–2921
                                                        215–963–5917
                                                        Email: emcenroe@morganlewis.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **MATTHEW DANIEL KLAYMAN**
                                                        MORGAN, LEWIS & BOCKIUS LLP
                                                        1701 MARKET STREET
                                                        PHILADELPHIA, PA 19103
                                                        215–963–5000
                                                        Fax: 215–963–5001
                                                        Email: matthew.klayman@morganlewis.com
                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| 12/31/2018 | 1 | NOTICE OF REMOVAL by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES from Common Pleas Philadelphia, case number 181101690. Certificate of Service. (Filing fee $ 400 receipt number 190333)(jwl, ) (Entered: 01/03/2019) |
|---|---|---|
| 12/31/2018 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES.(jwl, ) (Entered: 01/03/2019) |
| 01/07/2019 | 3 | STIPULATION AND ORDER THAT THE DEADLINE FOR EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES TO ANSWER OR RESPOND TO PLAINTIFF'S COMPLAINT IS EXTENDED TO 2/6/2019. SIGNED BY HONORABLE WENDY BEETLESTONE ON 1/7/2019. 1/7/2019 ENTERED AND COPIES E–MAILED.(sg, ) (Entered: 01/07/2019) |
| 01/10/2019 | 4 | NOTICE OF CONFERENCE: PRETRIAL CONFERENCE SET FOR 2/25/2019 05:00 PM IN JUDGE CHAMBERS BEFORE HONORABLE WENDY BEETLESTONE. (Attachments: # 1 Electronic Discovery Order, # 2 Joint Report of Rule 26(f) Meeting and Proposed Discovery Plan)(amw, ) (Entered: 01/10/2019) |
| 01/10/2019 | 5 | NOTICE of Appearance by ELISA P. MCENROE on behalf of EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES with Certificate of Service(MCENROE, ELISA) (Entered: 01/10/2019) |
| 02/04/2019 | 6 | Original Record together with certified copy of docket entries received from Court of Common Pleas of Philadelphia County. (sg, ) (Entered: 02/04/2019) |
| 02/06/2019 | 7 | ANSWER to Complaint *and Affirmative Defenses* by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES.(SHAFFER, BRIAN) (Entered: 02/06/2019) |
| 02/18/2019 | 8 | MOTION for Pro Hac Vice ( Filing fee $ 40 receipt number 0313–13358148.) filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.Certificate of Service.(PRESENT, BENJAMIN) (Entered: 02/18/2019) |
| 02/18/2019 | 9 | MOTION for Pro Hac Vice ( Filing fee $ 40 receipt number 0313–13358167.) filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.Certificate of Service.(PRESENT, BENJAMIN) (Entered: 02/18/2019) |
| 02/18/2019 | 10 | MOTION for Pro Hac Vice , MOTION for Pro Hac Vice ( Filing fee $ 40 receipt number 0313–13358169.) filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.Certificate of Service.(PRESENT, BENJAMIN) (Entered: 02/18/2019) |
| 02/18/2019 | 11 | MOTION for Pro Hac Vice ( Filing fee $ 40 receipt number 0313–13358171.) filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.Certificate of Service.(PRESENT, BENJAMIN) (Entered: 02/18/2019) |
| 02/18/2019 | 12 | MOTION for Pro Hac Vice ( Filing fee $ 40 receipt number 0313–13358172.) filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.Certificate of Service.(PRESENT, BENJAMIN) (Entered: 02/18/2019) |
| 02/18/2019 | 13 | MOTION for Pro Hac Vice ( Filing fee $ 40 receipt number 0313–13358173.) filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.Certificate of Service.(PRESENT, BENJAMIN) (Entered: 02/18/2019) |
| 02/18/2019 | 14 | Report Of *Rule 26(f) Meeting* by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL. (PRESENT, BENJAMIN) (Entered: 02/18/2019) |
| 02/21/2019 | 15 | ORDER THAT THE APPLICATION FOR PRO HAC VICE FOR BRENT P. CERYES, ESQUIRE FOR PLAINTIFFS IS GRANTED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 2/21/2019.2/22/2019 ENTERED AND COPIES MAILED AND E–MAILED.ECF APP MAILED.(sg, ) (Entered: 02/22/2019) |
| 02/21/2019 | 16 | ORDER THAT THE APPLICATION FOR PRO HAC VICE FOR DANIELLE S. DINSMORE, ESQUIRE FOR PLAINTIFFS IS GRANTED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 2/21/2019.2/22/2019 ENTERED AND COPIES MAILED AND E–MAILED. (sg, ) (Entered: 02/22/2019) |

JA72

| 02/21/2019 | 17 | ORDER THAT THE APPLICATION FOR PRO HAC VICE FOR JONATHAN SCHOCHOR, ESQUIRE FOR PLAINTIFFS IS GRANTED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 2/21/2019.2/22/2019 ENTERED AND COPIES MAILED AND E–MAILED.ECF APP MAILED.(sg, ) (Entered: 02/22/2019) |
| 02/21/2019 | 18 | ORDER THAT THE APPLICATION FOR PRO HAC VICE FOR KAREN E. EVANS, ESQUIRE FOR PLAINTIFFS IS GRANTED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 2/21/2019.2/22/2019 ENTERED AND COPIES MAILED AND E–MAILED.ECF APP MAILED.(sg, ) (Entered: 02/22/2019) |
| 02/21/2019 | 19 | ORDER THAT THE APPLICATION FOR PRO HAC VICE FOR PATRICK A. THRONSON, ESQUIRE FOR PLAINTIFFS IS GRANTED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 2/21/2019.2/22/2019 ENTERED AND COPIES MAILED AND E–MAILED.(sg, ) (Entered: 02/22/2019) |
| 02/21/2019 | 20 | ORDER THAT THE APPLICATION FOR PRO HAC VICE FOR PAUL M. VETTORI, ESQUIRE FOR PLAINTIFFS IS GRANTED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 2/21/2019.2/22/2019 ENTERED AND COPIES MAILED AND E–MAILED.ECF APP MAILED.(sg, ) (Entered: 02/22/2019) |
| 02/26/2019 | 21 | SCHEDULING ORDER: DISCOVERY DUE BY 7/10/2019. DAUBERT MOTIONS DUE BY 11/2/2019. MOTION FOR SUMMARY JUDGMENT DUE BY 11/2/2019. ETC.. SIGNED BY HONORABLE WENDY BEETLESTONE ON 2/26/2019. 2/27/2019 ENTERED AND COPIES MAILED AND E–MAILED.(sg, ) *VACATED PER ORDER 26 FILED 7/9/19* Modified on 7/11/2019 (lisad, ). (Entered: 02/27/2019) |
| 03/01/2019 | 22 | NOTICE of Hearing:A settlement conference will be held on July 24, 2019 at 2:00 p.m., before the Honorable Richard A. Lloret, United States Magistrate Judge. Please report to the James A. Byrne U.S. Courthouse, 601 Market Street, Room 4006 (Chambers), Philadelphia, PA 19106 for the assigned courtroom. A status telephone call will be held on July 11, 2019 at 2:00 p.m. Plaintiffs counsel shall initiate the call to chambers (267–299–7410) once all defense counsel are on the line.(smcc) (Entered: 03/01/2019) |
| 06/03/2019 | 23 | STIPULATION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AS OUTLINED HEREIN. SIGNED BY HONORABLE WENDY BEETLESTONE ON 6/3/2019. 6/4/2019 ENTERED AND COPIES E–MAILED.(sg, ) (Entered: 06/04/2019) |
| 06/26/2019 | 24 | ORDER THAT THIS CASE IS REASSIGNED FROM HONORABLE WENDY BEETLESTONE TO HONORABLE JOSHUA D. WOLSON FOR ALL FURTHER PROCEEDINGS. SIGNED BY CLERK OF COURT KATE BARKMAN, CLERK OF COURT ON 6/25/2019. 6/26/2019 ENTERED AND COPIES E–MAILED.(sg, ) (Entered: 06/26/2019) |
| 07/09/2019 | 25 | Minute Entry for proceedings held before HONORABLE JOSHUA D. WOLSON Telephone Status Conference held on 7/8/2019. (sg, ) Modified on 7/10/2019 (lisad, ). (Entered: 07/09/2019) |
| 07/09/2019 | 26 | MODIFIED SCHEDULING ORDER: DISCOVERY DUE BY 9/23/2019. MOTIONS FOR CLASS CERTIFICATION DUE BY 10/7/2019. MOTION FOR SUMMARY JUDGMENT DUE BY 1/13/2020. ETC.. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 7/9/2019. 7/10/2019 ENTERED AND COPIES E–MAILED.(sg, ) (Entered: 07/10/2019) |
| 07/22/2019 | 27 | APPLICATION for Admission Pro Hac Vice of Phillip C. Federico by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.. (PRESENT, BENJAMIN) FILING FEE PAID, RECEIPT No.: 200918. Modified on 7/25/2019 (sg, ). (Entered: 07/22/2019) |
| 07/23/2019 | 28 | ORDER THAT THE APPLICATION FOR PRO HAC VICE OF ATTORNEY PHILIP C. FEDERICO IS GRANTED. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 7/23/2019. 7/23/2019 ENTERED AND COPIES MAILED AND E–MAILED. ECF APP MAILED.(sg, ) (Entered: 07/23/2019) |

JA73

| 08/01/2019 | 29 | APPLICATION for Admission Pro Hac Vice of Cory L. Zajdel by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL... (PRESENT, BENJAMIN) (Filing fee paid on 8/1/19) Modified on 8/2/2019 (kw, ). (Entered: 08/01/2019) |
|---|---|---|
| 08/02/2019 | 30 | ORDER THAT THE APPLICATION OF CORY L. ZAJDEL, ESQUIRE TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 8/2/19. 8/5/19 ENTERED AND COPIES MAILED AND E–MAILED.(mbh, ) (Entered: 08/05/2019) |
| 08/14/2019 | 31 | NOTICE of Hearing:The settlement conference that was scheduled for July 24, 2019 will now be held on October 17, 2019 at 2:00 p.m., before the Honorable Richard A. Lloret, United States Magistrate Judge. Please report to the James A. Byrne U.S. Courthouse, 601 Market Street, Room 4006 (Chambers), Philadelphia, PA 19106 for the assigned courtroom. A status telephone call will be held on October 9, 2019 at 10:30 a.m. Plaintiffs counsel shall initiate the call to chambers (267–299–7410) once all defense counsel are on the line.(smcc) (Entered: 08/14/2019) |
| 10/07/2019 | 32 | MOTION to Certify Class filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.Memorandum, Certificate of Service. (Attachments: # 1 Memorandum of Law in Support of Class Certification, # 2 Certificate of Serivce, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16, # 19 Exhibit 17, # 20 Exhibit 18, # 21 Exhibit 19, # 22 Exhibit 20, # 23 Exhibit 21, # 24 Exhibit 22, # 25 Exhibit 23, # 26 Exhibit 24, # 27 Exhibit 25, # 28 Exhibit 26, # 29 Exhibit 27, # 30 Exhibit 28, # 31 Exhibit 29, # 32 Exhibit 30, # 33 Exhibit 31, # 34 Exhibit 32, # 35 Exhibit 33, # 36 Exhibit 34, # 37 Exhibit 35, # 38 Exhibit 36, # 39 Exhibit 37, # 40 Exhibit 38, # 41 Exhibit 40, # 42 Exhibit 41, # 43 Exhibit 42, # 44 Exhibit 43, # 45 Exhibit 44, # 46 Exhibit 45)(CENTRELLA, NICHOLAS) (Entered: 10/07/2019) |
| 10/08/2019 | 33 | Exhibit 39 to 32 Motion to Certify Class by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL. (CENTRELLA, NICHOLAS) (Entered: 10/08/2019) |
| 10/09/2019 | 34 | Minute Entry for proceedings held before MAGISTRATE JUDGE RICHARD A. LLORET Pretrial Conference held on 10/9/2019. (sg, ) (Entered: 10/09/2019) |
| 10/17/2019 | 35 | Minute Entry for proceedings held before MAGISTRATE JUDGE RICHARD A. LLORET Pretrial Conference held on 10/16/19. (rf, ) (Entered: 10/17/2019) |
| 10/21/2019 | 36 | Minute Entry for proceedings held before MAGISTRATE JUDGE RICHARD A. LLORET Settlement Conference held on 10/17/2019. (sg, ) (Entered: 10/21/2019) |
| 10/23/2019 | 37 | ORDER THAT UPON CONSIDERATION OF THE PARTIES REQUEST FOR EXTENSION OF TIME, THE REMAINING DEADLINES IN THE OPERATIVE SCHEDULING ORDER (ECF NO. 26 ) ARE HEREBY VACATED. IT IS ORDERED AS FOLLOWS: 1. RESPONSES TO CLASS CERTIFICATION ARE DUE BY OCTOBER 28, 2019, AND ANY REPLY IN SUPPORT OF CLASS CERTIFICATION IS DUE BY NOVEMBER 11, 2019; 2. DEPOSITIONS OF EXPERT WITNESSES SHALL BE COMPLETED BY DECEMBER 20, 2019; AND 3. MOTIONS FOR SUMMARY JUDGMENT, IF ANY, SHALL BE FILED BY JANUARY 13, 2020. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 10/22/2019. 10/23/2019 ENTERED AND COPIES MAILED, E–MAILED.(nd, ) Modified on 10/23/2019 (nd, ). (Entered: 10/23/2019) |
| 10/28/2019 | 38 | MOTION to Seal *(Unopposed)* filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES.Certificate of Uncontested Motion and Certificate of Service. (Attachments: # 1 Text of Proposed Order)(SHAFFER, BRIAN) (Entered: 10/28/2019) |
| 10/28/2019 | 39 | RESPONSE in Opposition re 32 MOTION to Certify Class *with Certificate of Service* filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11 (Under Seal), # 12 Exhibit 12 (Under Seal), # 13 Exhibit 13 |

JA74

| | | |
|---|---|---|
| | | (Under Seal), # 14 Exhibit 14 (Under Seal), # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18 (Under Seal), # 19 Exhibit 19 (Under Seal), # 20 Exhibit 20 (Under Seal), # 21 Exhibit 21 (Under Seal), # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25 (Under Seal), # 26 Exhibit 26 (Under Seal), # 27 Exhibit 27 (Under Seal), # 28 Exhibit 28 (Under Seal), # 29 Exhibit 29 (Under Seal), # 30 Exhibit 30 (Under Seal), # 31 Exhibit 31 (Under Seal), # 32 Exhibit 32 (Under Seal), # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36 (Under Seal), # 37 Exhibit 37 (Under Seal), # 38 Exhibit 38, # 39 Text of Proposed Order)(SHAFFER, BRIAN) (Entered: 10/28/2019) |
| 10/28/2019 | 40 | DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PROPOSED ORDER, CERTIFICATE OF SERVICE & SELECT EXHIBITS, filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. (FILED UNDER SEAL.) (sg, ) (Additional attachment(s) added on 10/29/2019: # 1 Sealed Document, # 2 Sealed Document, # 3 Sealed Document, # 4 Sealed Document, # 5 Sealed Document, # 6 Sealed Document, # 7 Sealed Document, # 8 Sealed Document, # 9 Sealed Document, # 10 Sealed Document, # 11 Sealed Document, # 12 Sealed Document, # 13 Sealed Document, # 14 Sealed Document, # 15 Sealed Document, # 16 Sealed Document, # 17 Sealed Document, # 18 Sealed Document, # 19 Sealed Document) (lisad, ). Modified on 10/29/2019 (lisad, ). (Entered: 10/29/2019) |
| 10/29/2019 | 41 | MOTION for Pro Hac Vice ( Filing fee $ 40 receipt number 0313–13891713.) filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL..(PRESENT, BENJAMIN) (Entered: 10/29/2019) |
| 10/29/2019 | 42 | ORDERED THAT THE APPLICATION OF DAVID E. HAYNES, ESQUIRE FOR ADMISSION PRO HAC VICE IS GRANTED. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 10/29/2019.10/30/2019 ENTERED AND COPIES MAILED AND E–MAILED. ECF APP MAILED.(sg, ) (Entered: 10/30/2019) |
| 10/31/2019 | 43 | Minute Entry for proceedings held before MAGISTRATE JUDGE RICHARD A. LLORET Settlement Conference held on 10/30/2019. (sg, ) (Entered: 10/31/2019) |
| 10/31/2019 | 44 | ORDERED THAT, ON OR BEFORE 11/6/2019 DEFENDANT SHALL EITHER (a) FILE ON THE PUBLIC DOCKET REDACTED VERSIONS OF THE EXHIBITS THAT ARE THE SUBJECT OF THE MOTION TO SEAL, REDACTING ONLY THE INFORMATION THAT THE PARTIES CLAIM SHOULD BE PROTECTED, OR (b) FILE A STATEMENT THAT A PARTICULAR EXHIBIT CONTAINS SUCH INFORMATION IN ITS ENTIRETY AND CANNOT BE REDACATED. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 10/30/2019. 11/1/2019 ENTERED AND COPIES MAILED AND E–MAILED.(sg, ) (Entered: 11/01/2019) |
| 11/04/2019 | 45 | ORDERED THAT PLAINTIFF'S REQUEST TO EXCEED THE APPLICABLE PAGE LIMIT IS GRANTED. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 11/4/2019. 11/5/2019 ENTERED AND COPIES MAILED AND E–MAILED.(sg, ) (Entered: 11/05/2019) |
| 11/06/2019 | 46 | Supplement by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES re 38 MOTION to Seal (Unopposed) (Attachments: # 1 Exhibit 11 (Redacted), # 2 Exhibit 12 (Redacted), # 3 Exhibit 13 (Redacted), # 4 Exhibit 14 (Redacted), # 5 Exhibit 18 (Redacted), # 6 Exhibit 19 (Unredacted), # 7 Exhibit 20 (Unredacted), # 8 Exhibit 21 (Redacted), # 9 Exhibit 25 (Redacted), # 10 Exhibit 26 (Redacted), # 11 Exhibit 27 (Redacted), # 12 Exhibit 28 (Redacted), # 13 Exhibit 29 (Redacted), # 14 Exhibit 30 (Redacted), # 15 Exhibit 31 (Redacted), # 16 Exhibit 32 (Redacted))(SHAFFER, BRIAN) Modified on 11/7/2019 (lisad, ). (Entered: 11/06/2019) |
| 11/11/2019 | 47 | REPLY Memorandum of Law in Support re 32 MOTION to Certify Class filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL. Certificate of Service. (Attachments: # 1 Exhibit Exhibits 1–3)(PRESENT, BENJAMIN) Modified on 11/12/2019 (lisad, ). (Entered: 11/11/2019) |
| 11/18/2019 | 48 | SUR–REPLY in Opposition re 32 MOTION to Certify Class Sur–reply in Opposition with Certificate of Service filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. (SHAFFER, BRIAN) Modified on 11/19/2019 (lisad, ). (Entered: 11/18/2019) |

| 11/19/2019 | 49 | ORDERED THAT MOTION TO SEAL DOCUMENTS CONTAINING PRIVATE INFORMATION (DOC. 38 ) IS GRANTED IN PART AND DENIED IN PART. IT IS FURTHERED ORDERED THAT NO LATER THAN 11/26/2019. DEFENDANT SHALL REFILE EXHIBITS 11, 12, 13, 14, 18, 25, 27, AND 30 WITH REDACTIONS THAT CONFORM WITH THE COURT'S FINDINGS AS OUTLINED ABOVE. IT IS FURTHER ORDERED THAT, NO LATER THAN 11/26/2019, DEFENDANT SHALL FILE A NEW, REDACTED VERSION OF EXHIBIT 25, THE PAGES OF WHICH CORRESPOND TO THE VERSION OF EXHIBIT 25 THAT DEFENDANT SUBMITTED UNDER SEAL. IT IS FURTHER ORDERED THAT, NO LATER THAN 11/26/2019, DEFENDANT SHALL FILE ON THE PUBLIC DOCKET REDACTED VERSIONS OF EXHIBITS 36 AND 37, REDACTING ONLY THE PERSONAL, CONFIDENTIAL INFORMATION THAT THE PARTIES PROPOSE TO MAINTAIN UNDER SEAL. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 11/19/2019.11/20/2019 ENTERED AND COPIES MAILED AND E–MAILED.(sg, ) (Entered: 11/20/2019) |
|---|---|---|
| 11/26/2019 | 50 | NOTICE by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES re 49 Order on Motion to Seal,,, *Second Supplement to Defendant's Unopposed Motion to Seal with Certificate of Service* (Attachments: # 1 Exhibit 11 (Redacted), # 2 Exhibit 12 (Redacted), # 3 Exhibit 13 (Redacted), # 4 Exhibit 14 (Redacted), # 5 Exhibit 18 (Redacted), # 6 Exhibit 25 (Redacted), # 7 Exhibit 27 (Redacted), # 8 Exhibit 30 (Redacted), # 9 Exhibit 36 (Redacted), # 10 Exhibit 37 (Redacted))(SHAFFER, BRIAN) (Entered: 11/26/2019) |
| 11/27/2019 | 51 | Minute Entry for proceedings held before MAGISTRATE JUDGE RICHARD A. LLORET Pretrial Conference held on 11/27/2019. (sg, ) (Entered: 11/29/2019) |
| 12/30/2019 | 52 | ORDER THAT COUNSEL FOR THE PARTIES SHALL APPEAR FOR A HEARING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF 32) ON JANUARY 30, 2020 AT 2:00 PM IN COURTROOM 3B, BEFORE HONORABLE JOSHUA D. WOLSON. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 12/30/19. 12/30/19 ENTERED AND E–MAILED.(ja,) (Entered: 12/30/2019) |
| 01/03/2020 | 53 | NOTICE of Appearance by MATTHEW DANIEL KLAYMAN on behalf of EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES with Certificate of Service(KLAYMAN, MATTHEW) (Entered: 01/03/2020) |
| 01/09/2020 | 54 | ORDER THAT ALL MOTIONS FOR SUMMARY JUDGMENT AND/OR DAUBERT MOTIONS SHALL BE FILED NO LATER THAN THIRTY (30) DAYS AFTER THE COURT'S RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION 32 . SIGNED BY HONORABLE JOSHUA D. WOLSON ON 1/9/20. 1/10/20 ENTERED AND COPIES MAILED & E–MAILED. (fdc) (Entered: 01/10/2020) |
| 01/24/2020 | 55 | NOTICE of Withdrawal of Appearance by BENJAMIN OSCAR PRESENT on behalf of DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL(PRESENT, BENJAMIN) (Entered: 01/24/2020) |
| 01/31/2020 | 56 | Minute Entry for proceedings held before HONORABLE JOSHUA D. WOLSON Motion Hearing held on 1/30/2020 re 32 MOTION to Certify Class filed by DESIRE EVANS, MONIQUE RUSSELL, ELSA M. POWELL, JASMINE RIGGINS Court Reporter: ANN MARIE MITCHELL. (sg, ) (Entered: 01/31/2020) |
| 03/23/2020 | 57 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 3/23/2020. 3/23/2020 ENTERED AND COPIES E–MAILED. NOT MAILED TO ATTORNEY.(sg, ) (Entered: 03/23/2020) |
| 03/23/2020 | 58 | ORDER THAT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (DOC. 32 ) IS GRANTED AS OUTLINED HEREIN. A STATUS CONFERENCE SET FOR 3/31/2020 10:00 AM BEFORE HONORABLE JOSHUA D. WOLSON. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 3/23/2020. 3/23/2020 ENTERED AND COPIES E–MAILED. NOT MAILED TO ATTORNEY.(sg, ) (Entered: 03/23/2020) |
| 03/24/2020 | 59 | NOTICE of Appearance by ROBIN SCHLEIFER WEISS on behalf of DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL (WEISS, ROBIN) (Entered: 03/24/2020) |

JA76

| 03/30/2020 | 60 | MOTION to Stay filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES.Memorandum, Certificate of Service. (Attachments: # 1 Memorandum of Law in Support of Limited Motion to Stay, # 2 Text of Proposed Order)(SHAFFER, BRIAN) (Entered: 03/30/2020) |
|---|---|---|
| 03/31/2020 | 61 | Minute Entry for proceedings held before HONORABLE JOSHUA D. WOLSON Status Conference held on 3/31/2020. (sg, ) (Entered: 03/31/2020) |
| 04/01/2020 | 62 | ORDER THAT THE PARTIES ARE TO SUBMIT TO THE COURT A PROPOSAL CONCERNING CASE MANAGEMENT ON OR BEFORE APRIL 14, 2020 AS OUTLINED HEREIN. IT IS FURTHER ORDERED THAT A TELEPHONE STATUS CONFERENCE IS SCHEDULED FOR 4/30/2020 AT 10:00 AM BEFORE HONORABLE JOSHUA D. WOLSON. IT IS FURTHER ORDERED THAT THE DATES SET IN OPERATIVE SCHEDULING ORDER (ECF NO. 54) ARE HEREBY VACATED. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 03/31/2020. 04/01/2020 ENTERED AND E−MAILED.(ja, ) (Entered: 04/01/2020) |
| 04/06/2020 | 63 | TRANSCRIPT of PROCEEDINGS held on 1/30/2020, before Judge JOSHUA D. WOLSON. Court Reporter/Transcriber ANN MARIE MITCHELL, OFFICIAL COURT REPORTER. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 4/27/2020. Redacted Transcript Deadline set for 5/7/2020. Release of Transcript Restriction set for 7/6/2020. (sg, ) (Entered: 04/07/2020) |
| 04/06/2020 | 64 | Notice of Filing of Official Transcript with Certificate of Service re 63 Transcript − PDF,, 4/7/2020 Entered and Copies Emailed. NOTICE NOT MAILED TO ATTORNEY. (sg, ) (Entered: 04/07/2020) |
| 04/08/2020 | 65 | NOTICE of Docketing Record on Appeal from USCA. Appeal filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. USCA Case Number 20−8024.(dmc, ) (Entered: 04/08/2020) |
| 04/14/2020 | 66 | Proposed Case Management Plan by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL. (CENTRELLA, NICHOLAS) (Entered: 04/14/2020) |
| 04/27/2020 | 67 | ORDER THAT 60 DEFENDANT'S MOTION TO STAY IS DENIED AS MOOT. FURTHER INFORMATION AND DEADLINES AS OUTLINED HEREIN. IT IS FURTHER ORDERED THAT THE TELEPHONIC STATUS CONFERENCE SCHEDULED FOR APRIL 30, 2020, IS CANCELLED. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 04/27/2020.04/27/2020 ENTERED AND E−MAILED. (ja, ) (Entered: 04/27/2020) |
| 04/30/2020 | 68 | First MOTION to Amend/Correct Order filed by DESIRE EVANS, ELSA M. POWELL, JASMINE RIGGINS, MONIQUE RUSSELL.Uncontested Motion to Amend Order. (Attachments: # 1 Text of Proposed Order Proposed Order re Motion to Amend)(CENTRELLA, NICHOLAS) (Entered: 04/30/2020) |
| 04/30/2020 | 69 | ORDER THAT PLAINTIFFS MOTION TO AMEND IS GRNATED. IT IS FURTHER ORDERED THAT THE COURT'S ORDER OF 3/23/2020 IS HEREBY AMENDED TO REFLECT THAT Z LAW, LLC IS APPOINTED AS ADDITIONAL CLASS COUNSEL. SIGNED BY HONORABLE JOSHUA D. WOLSON ON 4/30/2020.4/30/2020 ENTERED AND COPIES E−MAILED. NOT MAILED TO ATTORNEY. (sg, ) (Entered: 04/30/2020) |
| 05/11/2020 | 70 | Notice of Appeal by Educational Commission for Foreign Medical Graduates, grant of Petition for permission to appeal. Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk. (sg, ) (Entered: 06/04/2020) |
| 06/05/2020 | 71 | NOTICE of Docketing Record on Appeal from USCA re 70 Notice of Appeal filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. USCA Case Number 20−2128 (dmc, ) (Entered: 06/05/2020) |
| 06/16/2020 | | USCA Appeal Fees received $ 505 receipt number PPE215625 re 70 Notice of Appeal filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES (dmc, ) (Entered: 06/17/2020) |

| 06/22/2020 | 72 | Copy of TPO Form re 70 Notice of Appeal : (sg, ) (Entered: 06/23/2020) |
| 06/23/2020 | | COPY OF ORDER ENTRIES #57, 58 AND 69 MAILED OUT TO COUNSEL ON 6/23/20. (jaa, ) (Entered: 06/23/2020) |