No. 20-2128

# In the

# United States Court of Appeals

# For the Third Circuit

MONIQUE RUSSELL, JASMINE RIGGINS, ELSE M. POWELL, and DESIRE EVANS,

*Appellees,*

v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,

*Appellant.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
The Honorable Joshua D. Wolson, District Judge

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES
OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT**

Steven P. Lehotsky
Jonathan D. Urick
U.S. CHAMBER
   LITIGATION CENTER
1615 H Street, N.W.
Washington, D.C. 20062
T: (202) 463-5337

Matthew A. Fitzgerald
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716

Gilbert C. Dickey
MCGUIREWOODS LLP
2001 K. Street, N.W.
Suite 400
Washington, D.C. 20006
T: (202) 828-2829

*Counsel for* Amicus Curiae *Chamber of Commerce of the United States of America*

September 9, 2020

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1., *amici curiae* the Chamber of Commerce of the United States of America makes the following disclosure:

(1) For nongovernmental corporate parties please list all parent corporations: *The Chamber is a nonprofit corporation and has no parent corporation.*

(2) For nongovernmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: *No publicly held company owns 10% or more of the Chamber's stock.*

(3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interests or interest: *Defendant-Appellant has identified AIG as potentially having an interest in this proceeding. The Chamber is not aware of any other party with a financial interest in this proceeding.*

(4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and 3) any entity not named in the caption which is an active participant in the bankruptcy

proceeding.  If the debtor or trustee is not participating in the appeal, this information

must be provided by the appellant: *Not applicable.*

> */s/ Gilbert C. Dickey*
> Gilbert C. Dickey
>
> *Counsel for* Amicus Curiae
> *Chamber of Commerce*
> *of the United States of America*
>
> Dated: September 9, 2020

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF AUTHORITIES ...................................................iv

INTEREST OF AMICUS CURIAE .......................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................2

ARGUMENT ...........................................................5

    I.    Rule 23(c)(4) Merely Provides a Case-Management Tool, Not a New Type of Class Action Exempt from the General Certification Requirements .......................................5

        A.    All Damages Class Actions Must Satisfy the Same Requirements Established in Rules 23(a) and (b)(3) ................5

        B.    Rule 23(c) Provides Procedures and Case-Management Tools to Aid Class Adjudication, Not an Alternative Path to Certification ..........................7

        C.    Recognizing a Freestanding "Issues" Class Action Would Completely Undermine Rule 23(b)(3)'s Critical Safeguards ..................................10

        D.    This Court's Precedents Do Not Authorize a Rule 23(c)(4) "Issues" Class Action...............................12

    II.    The District Court's Decision Invites a Wave of Class Action Abuse ...................................................16

CONCLUSION ..................................................19

CERTIFICATE OF COMPLIANCE....................................20

CERTIFICATE OF SERVICE .......................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)...................................................................5, 6, 11

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011).......................................................................16, 17

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975)..............................................................................17

*Castano v. American Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996) .............................................................9, 11

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013)........................................................................*passim*

*Coopers & Lybrand v. Livesay,*
   437 U.S. 463 (1978)..............................................................................16

*Gates v. Rohm & Haas Co.,*
   655 F.3d 255 (3d Cir. 2011) ........................................................*passim*

*Gonzalez v. Corning,*
   885 F.3d 186 (3d Cir. 2018) ...........................................................7, 14

*Hohider v. United Parcel Service, Inc.,*
   574 F.3d 169 (3d Cir. 2009) .........................................................12, 14

*INS v. Nat'l Ctr. for Immigrants' Rights, Inc.,*
   502 U.S. 183 (1991)................................................................................9

*Luppino v. Mercedes Benz USA,*
   718 F. App'x 143 (3d Cir. 2017) .........................................................15

*McFadden v. United States,*
   576 U.S. 186 (2015)................................................................................6

*Murphy v. United States,*
   138 S. Ct. 784 (2018).............................................................................8

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014)..................................................................9

*Shady Grove Orthopedic Assocs v. Allstate Ins. Co.*,
559 U.S. 393 (2010) (Ginsburg, J., dissenting) ..................................16

*United States v. Tohono O'Odham Nation*,
563 U.S. 307 (2011)...............................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)......................................................10, 11, 18

## Court Rules

Fed. R. Civ. P. 23 ...........................................................*passim*

Fed. R. Civ. P. 23(a)........................................................*passim*

Fed. R. Civ. P. 23(b)........................................................*passim*

Fed. R. Civ. P. 23(b)(1).........................................................5, 10

Fed. R. Civ. P. 23(b)(2)...........................................................14

Fed. R. Civ. P. 23(b)(3)....................................................*passim*

Fed. R. Civ. P. 23(c)......................................................3, 7, 8, 10

Fed. R. Civ. P. 23(c)(1)..............................................................7

Fed. R. Civ. P. 23(c)(2).........................................................7, 10

Fed. R. Civ. P. 23(c)(3).........................................................7, 10

Fed. R. Civ. P. 23(c)(4)....................................................*passim*

Fed. R. Civ. P. 23(c)(5)..............................................................7

## Other Authorities

Black's Law Dictionary (4th ed. 1968) .....................................6

Black's Law Dictionary (5th ed. 1979) .....................................6

Linda S. Mullenix, *Ending Class Actions As We Know Them:*
    *Rethinking the American Class Action*, 64 Emory L.J. 399 (2014) ...................17

Webster's Third New Int'l Dictionary (2002) ..........................................................6

## INTEREST OF *AMICUS CURIAE*[*]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interest of its members and the business community before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases of concern to the nation's business communities, including cases involving the application of Federal Rule of Civil Procedure 23.

Many of the Chamber's members are defendants in class actions. They therefore have a keen interest in ensuring that courts rigorously analyze, consistent with the text of Rule 23 and the requirements of due process, whether a plaintiff has satisfied the prerequisites for class certification before certifying a class.

This case presents the question whether Rule 23(c)(4) may serve as an end-run around Rule 23(b)(3)'s critical due-process safeguards for defendants and absent class members. The answer is "no." By reaching the opposite conclusion, the decision below invites a flood of time-consuming, expensive, and abusive class

---

[*] No party's counsel authored this brief. No party, party's counsel, or person other than *amicus curiae*, its members, or its counsel provided money for this briefs preparation or submission. All parties consent to the filing of this brief.

1

actions that would benefit only the lawyers in the litigation. The Chamber therefore has a strong interest in this Court's resolution of the question.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case presents a critical question of class-action procedure: whether a district court can certify an issues class under Federal Rule of Civil Procedure 23(c)(4) even though the lawsuit as a whole does not satisfy Rule 23(b)(3)'s predominance and superiority requirements. The district court wrongly held that it could because, in its view, Rule 23(b)(3)'s requirements simply do not apply to so-called "issues" classes certified under Rule 23(c)(4).

This misinterpretation not only conflicts with Rule 23's text, it will also generate massive pressure on class-action defendants to settle meritless claims. To begin, the district court's decision will make it trivially easy to obtain class certification. Under that approach, a court can certify a class for the purpose of adjudicating common issues even if such issues do not predominate over individualized questions for the case as a whole. That reading of Rule 23(c)(4) would greatly expand class-action litigation. A clever lawyer would almost always be able to identify some common factual or legal issue. And once a class has been certified, defendants confronting the prospect of a large loss in class proceedings would face overwhelming pressure to settle even meritless claims.

Rule 23's text and structure contradict the district court's reading.  Like the other provisions of Rule 23(c), Rule 23(c)(4) creates a case-management tool for the adjudication of a class action that otherwise satisfies the requirements for certification.  Rule 23(a) and Rule 23(b) set out those detailed requirements.  To obtain certification, the named plaintiffs must show that their case both satisfies the general requirements of Rule 23(a) and falls within one of the three categories of class action identified in Rule 23(b).  Rule 23(c) then lists a number of tools courts may use to manage class actions.   Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  On its face and read in context, this provision merely creates a discretionary tool that allows a district court to adjudicate only some common issues on a class basis if a case otherwise meets the requirements for class certification.   In other words, it makes explicit that, for properly certified class actions, the court may try individualized issues separately.  If Rule 23(c)(4) instead creates a fourth kind of class action, the rule's drafters would not have included it in a list of procedural rules for the litigation of cases that have already been certified.  And it would have listed the detailed requirements for bringing an "issues" class action instead of simply announcing that one may proceed "[w]hen appropriate."  Fed. R. Civ. P. 23(c)(4).  Instead, this provision should be read as exactly what its text and context suggest.

The district court, however, permitted the certification of issues under Rule 23(c)(4) without assessing whether the case satisfies the requirements of Rule 23(b)(3). The district court found that analysis unnecessary, but it did not reach that conclusion based on Rule 23's text. On the contrary, the court concluded that this Court's decision in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011), precluded it from "requir[ing] Plaintiffs to satisfy Rule 23(b)(3)'s predominance requirement," and mandated that the court look only to a multi-factor test. JA43.

*Gates* does not compel the district court's misreading of Rule 23. In *Gates*, this Court declined to address whether a plaintiff who invokes Rule 23(c)(4) must also show that the case as a whole satisfies the predominance requirement of Rule 23(b)(3). *See* 655 F.3d at 273 (declining to join "either camp" in a circuit split on the question). The Court instead rejected certification because the proposed liability issues class failed to satisfy a multi-factor test that it applied based on Rule 23(c)(4)'s appropriateness requirement. As a result, the Court had no need to decide whether the class could have been certified without an additional Rule 23(b)(3) finding. *Gates* thus does not prevent the application of Rule 23(b)(3) in this case, and the text of Rule 23 confirms that Rule 23(b)(3)'s predominance requirement applies.

# ARGUMENT

**I.      Rule 23(c)(4) Merely Provides a Case-Management Tool, Not a New Type of Class Action Exempt from the General Certification Requirements.**

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."    Fed. R. Civ. P. 23(c)(4).  This provision merely creates a discretionary case-management tool that a district court can employ when a case otherwise satisfies the requirements for class certification but some issues cannot be resolved through class litigation.  Rule 23(c)(4) does not authorize a court to certify a new type of class action—a so-called "issues class"—that does not satisfy the requirements of Rule 23(b).

**A.      All Damages Class Actions Must Satisfy the Same Requirements Established in Rules 23(a) and (b)(3).**

Rule 23 establishes two sets of requirements that a case must satisfy to proceed as a class action.  Rule 23(a) first establishes four "prerequisites"—numerosity, commonality, typicality, and adequacy.  These prerequisites are "threshold requirements applicable to all class actions." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

A party who has satisfied the Rule 23(a) prerequisites "must" then "show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id*. at 614; *accord Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  These provisions identify three "types of class actions" that a party can bring.  Fed. R. Civ. P. 23(b).  A case must

satisfy the requirements for one of these categories "[i]n addition" to the Rule 23(a) prerequisites. *Amchem*, 521 U.S. at 514. "A class action may be maintained if Rule 23(a) is satisfied and if" the plaintiff satisfies the requirements for one of these three types of class action. Fed. R. Civ. P. 23(a). These requirements apply to *all* class actions because the indefinite article "a" in this context means "any." *See McFadden v. United States*, 576 U.S. 186, 191–92 (2015) (concluding that the indefinite article "a" refers to any item included in the described category); Webster's Third New Int'l Dictionary 1 (2002) (explaining that the indefinite article means "any" or "each" when used with a restrictive modifier); Black's Law Dictionary 3 (4th ed. 1968) (explaining that "[t]he article 'a' . . . is often used in the sense of 'any'"); Black's Law Dictionary (5th ed. 1979) ("'A' means 'one' or 'any' . . . [and] is not necessarily a singular term; it is more often used in the sense of 'any' and is then applied to more than one individual object.").

For damages claims, Rule 23(b)(3) only permits a class action to proceed if "the court finds" that the case presents common questions that "predominate over" individualized ones and that "a class action is superior to other available methods" of "adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These additional predominance and superiority requirements help ensure that class litigation is the best route for resolving the case.

### B.     Rule 23(c) Provides Procedures and Case-Management Tools to Aid Class Adjudication, Not an Alternative Path to Certification.

After Rules 23(a) and (b) establish the requirements for all class actions, Rule 23(c) then provides district courts procedures and tools for their management.  Rule 23(c)(1) requires a court to decide whether to certify a class by order "[a]t an early practicable time," and announces that a certification order must "define the class and the class claims, issues or defenses, and must appoint class counsel."  Rule 23(c)(2) establishes notice requirements for class actions, including individual notice to members of a Rule 23(b)(3) class.  Rule 23(c)(3) requires findings about class membership in the judgments in each of the three types of class action permitted by Rule 23(b).  And Rule 23(c)(5) permits the division of a class into subclasses.

Similar in kind to its surrounding provisions, Rule 23(c)(4) provides that, "[w]hen appropriate," a class action may proceed "with respect to particular issues." This language does not create a new category of class action exempt from Rule 23(b).  Instead, it creates a discretionary case-management tool that allows a court to adjudicate a class action that satisfies Rule 23(b)(3)'s predominance and superiority requirements but nevertheless includes some individualized issues that cannot be resolved on a class-wide basis.  As this Court has explained, this approach "might be appropriate because liability is capable of classwide treatment but damages are not."  *Gonzalez v. Corning*, 885 F.3d 186, 202–03 (3d Cir. 2018); *but cf. Comcast*, 569 U.S. at 34 (noting that predominance cannot be satisfied where

individual damages questions "will inevitably overwhelm questions common to the class").

The advisory committee notes to the 1966 Amendments to Rule 23 confirm the case-management reading. The notes explain that Rule 23(c)(4) would allow a district court to issue an order that allows "adjudication of liability to the class" but then requires individual class members to "prove the amounts of their respective claims." In that situation, Rule 23(c)(4) would operate like the other provisions of Rule 23(c) by providing tools to manage an action that has already been certified.

Rule 23(c)(4)'s placement among a series of case-management procedures and tools strongly suggests that it does not establish a freestanding "issues" class action. The rest of Rule 23(c) lists rules that only apply to certified class actions that meet the requirements of Rule 23(a) and one of the categories of Rule 23(b). *See Murphy v. United States*, 138 S. Ct. 784, 789 (2018) (looking to the "surrounding statutory structure" and "other provisions" to interpret statutory text). The Rules Committee would not have included Rule 23(c)(4) in this list of management tools if it had meant to create a whole new type of class action. This placement confirms that "[t]he proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to

sever common issues for a class trial." *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996).

Notably, Rule 23(c)(4) does not include the kind of language that Rule 23 uses for the creation of a type of class action. It does not announce the creation of any new types of class action. Nor does it establish any requirements to bring a class action under Rule 23(c)(4). Instead, it merely announces that "when appropriate" a court may permit class proceedings "with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

By contrast, Rule 23(b) is explicit about creating three different types of class action and establishing the requirements for each of them. Rule 23(b) is titled "types of class actions." *See INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) (explaining that the title of a statute or section can help clarify meaning). And it begins by explaining that a class action can be brought "if Rule 23(a) is satisfied and if" the conditions for one of the three types of class action have been met. Fed. R. Civ. P. 23(b). It then lists detailed requirements for each of the three types of class action. *See id*. This language and structure strongly convey exclusivity—that they establish the *only* paths to class certification. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 114 (2014) (explaining that the provision of rules for some cases implies the exclusion of other cases). The Rules

Committee would have used similar language in Rule 23(c)(4) if it meant for that provision to create a new category of "issues" class action.

What's more, the other provisions of Rule 23(c) presume that Rule 23(b) recognizes the only three types of class action, establishing specific rules for each of them. Rule 23(c)(2), for example, provides notice requirements "[f]or any class certified under Rule 23(b)(1) or (b)(2)" and a separate set of notice requirements "[f]or any class certified under Rule 23(b)(3)." Fed R. Civ. P. 23(c)(2). Rule 23(c)(3) similarly imposes rules for the judgments in "any class action certified under Rule 23(b)(1) or (b)(2)" and different requirements for "any class action certified under Rule 23(b)(3)." Fed. R. Civ. P. 23(c)(3). But there are no similar rules for a Rule 23(c)(4) "issues" class, quite an anomaly if it actually exists as an additional certifiable type. The absence of any corresponding rules for managing such a class action confirms that Rule 23(c)(4) does not establish a separate type.

### C. Recognizing a Freestanding "Issues" Class Action Would Completely Undermine Rule 23(b)(3)'s Critical Safeguards.

Rule 23 establishes exacting procedures for the certification of a damages class action. Among other requirements, such an action must comply with Rule 23(b)(3)'s predominance requirement. The Supreme Court has acknowledged that Rule 23(b)(3) permits class proceedings in "situations in which class-action treatment is not as clearly called for." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). But by requiring that common questions predominate, Rule 23(b)(3)

aims "to assure the class cohesion that legitimizes representative action in the first place." *Amchem*, 521 U.S. at 623.

The district court's reading of Rule 23(c)(4) would completely undermine Rule 23(b)(3)'s critical safeguards and limits for damages class actions. Rule 23(b)(3) is already the "most adventuresome innovation" in Rule 23. *Comcast*, 569 U.S. at 34. The district court's approach goes even further, permitting class adjudication of common issues even when they do not predominate over individualized questions. There will almost always be some common legal or factual issue that could be invoked to obtain class treatment. "[A]ny competently crafted class complaint literally raises common questions." *Wal-Mart*, 564 U.S. at 349 (quotation marks and citation omitted).

The Fifth Circuit has explained that this approach "would eviscerate the predominance requirement of Rule 23(b)(3)." *Castano*, 84 F.3d at 745 n.21. A court would be able to "sever issues until the remaining common issue predominates." *Id*. This "nimble use of subdivision (c)(4)" would allow a class to be certified even though the common issues constitute only a small part of the issues in a case. *Id*.

"[T]he result would be automatic certification in every case where there is a common issue, a result that could not have been intended." *Id*. Rule 23 should not be read to render any provision "nugatory through construction." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011). But permitting certification

any time that an issue can be resolved on a class basis would effectively eliminate Rule 23(b)(3)'s requirement that common questions must predominate.

### D. This Court's Precedents Do Not Authorize a Rule 23(c)(4) "Issues" Class Action.

*Gates* did not hold that Rule 23(c)(4) establishes a new category of "issues" class action. There, this Court noted that its sister circuits have disagreed about whether an issues class must satisfy the predominance requirement of Rule 23(b)(3). *Gates*, 655 F.3d at 272. Some appellate courts treat Rule 23(c)(4) "as a 'housekeeping rule.'" *Id*. These courts permit an issues class to proceed "only when the cause of action, taken as a whole, meets the predominance requirement." *Id*. But other courts allow an issues class to proceed "even if common questions do not predominate for the cause of action as a whole." *Id*.

This Court elected not to "join[] either camp in the circuit disagreement" about whether an issues class must meet the predominance requirement of Rule 23(b)(3). *Id*. at 273. Instead, the Court relied on the factors "set forth in *Hohider* [*v. United Parcel Service, Inc.*, 574 F.3d 169 (3d Cir. 2009)] and more recently in the Final Draft of the ALI's Principles of Aggregate Litigation." *Id*. Applying those factors, this Court affirmed the district court's refusal to certify a common issues class, citing the "inability to separate common issues from issues where individual characteristics may be determinative." *Id*. at 274. In other words, the Court held that class

12

adjudication of particular issues would not be "appropriate," as Rule 23(c)(4) requires.

As a result, nothing in *Gates* forecloses this Court from holding that a party invoking Rule 23(c)(4) must also satisfy Rule 23(b)'s requirements. As explained, *Gates* acknowledged a disagreement about that question, but refused to "join either camp." *Id*. at 273. Instead, the Court looked to a "non-exclusive list of factors" that if found provided "the most sound guidance in resolving this complicated area of class action procedure." *Id*. Since those appropriateness factors supported the denial of class certification, the Court had no need to address whether a party who can satisfy the *Gates* factors must separately show that a cause of action satisfies Rule 23(b)(3). Any statement on that question would thus have been dicta.

By refusing to require Plaintiffs to satisfy Rule 23(b)(3), the district court adopted one of the approaches rejected in *Gates*. The district court rejected an argument that it should "require Plaintiffs to satisfy Rule 23(b)(3)'s predominance requirement," explaining that the argument "parrots one of the camps that the Third Circuit acknowledged but refused to join in *Gates*." JA43. But the district court's approach reads *Gates* to join the other camp that it declined to join by holding that a party invoking 23(c)(4) does not need to satisfy Rule 23(b)(3). *Gates* held no such thing.

In fact, this Court has never held that satisfying the *Gates* factors alone is enough to certify an issues class under Rule 23. *Hohider* decertified a class claim for injunctive relief under Rule 23(b)(2) while severing claims for other kinds of relief. *See* 574 F.3d at 200. After rejecting certification of a class under Rule 23(b)(2), this Court held that it need not address a potential issues class under Rule 23(c)(4) "given the class certification's other defects." *Id*. The Court specifically declined to address "[t]he interaction between the requirements for class certification under Rule 23(a) and (b) and the authorization of issues classes under Rule 23(c)(4)." *Id*. at 200 n.25.

What's more, since *Gates*, this Court affirmed a district court's *refusal* to certify an issues class under Rule 23(c)(4) in *Gonzalez*. Citing *Gates*, the Court said that the Rule 23(c)(4) inquiry is "analytically independent from the predominance inquiry under Rule 23(b)(3)." *Gonzalez*, 885 F.3d at 202. Read in context, that statement is technically correct, since Rule 23(c)(4) adds the independent (though surely overlapping) requirement that class adjudication of particular issues must be "appropriate." *Gonzalez* hardly implies that issues classes are an entirely distinct type of class action exempt from Rule 23(b). Regardless, the case found that the certification of an issues class was inappropriate when plaintiffs "offer no theories of liability for which classwide treatment is apt." *Id*. at 203.

Both the Supreme Court and this Court have issued decisions since *Gates* confirming that Rule 23(c)(4) does not provide an end run around Rule 23(b).  In *Comcast*, the Supreme Court explained that a party seeking class certification "*must . . .* satisfy through evidentiary proof *at least one* of the provisions of Rule 23(b)." 569 U.S. at 33 (emphasis added).  Relying on *Comcast*, this Court has since clarified, in an unpublished decision, that a plaintiff must "satisf[y] Rule 23(a) and 23(b)'s requirements" before "seek[ing] certification under Rule 23(c)(4) as to particular issues." *Luppino v. Mercedes Benz USA*, 718 F. App'x 143, 146 (3d Cir. 2017).

Moreover, even if this Court reads *Gates* to hold that district courts need not consider predominance and superiority *in addition* to the *Gates* factors, such a holding would still not establish that factors relevant to Rule 23(b)(3)'s criteria do not apply to an "issues" class.  Properly applied, several of the *Gates* factors overlap with Rule 23(b)(3)'s predominance and superiority requirements.  For example, *Gates* instructs district courts to consider "the type of claims . . . in question; the overall complexity of the case; the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; [and] the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues."  *Gates*, 655 F.3d at 273.  Each of these appropriateness factors reflects a concern with ensuring the role that common issues play in the larger litigation and ensuring that class litigation is the best method for

resolution of the cause of action—the very same concerns relevant to Rule 23(b)(3). So whether or not Rule 23(b)(3) formally governs class adjudication under Rule 23(c)(4), such adjudication would not be "appropriate," as the latter provision requires, unless the case as a whole satisfies the normal predominance and superiority analysis.

## II.    The District Court's Decision Invites a Wave of Class Action Abuse.

The district court's misreading of Rule 23(c)(4) will permit a flood of abusive class actions, with troubling and far-reaching consequences for businesses, shareholders, employees, customers, and the judicial system.

Certification of a class action massively raises the litigation stakes, creating enormous pressure on defendants to settle.  The Supreme Court has cautioned that a defendant may be "pressured into settling questionable claims" by "even a small chance of a devastating loss."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011); *see also, e.g.*, *Shady Grove Orthopedic Assocs v. Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010) (Ginsburg, J., dissenting) ("A Court's decision to certify a class . . . places pressure on the defendant to settle even unmeritorious claims."); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978) ("Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense.").  As a result, "[e]ven a complaint which by objective standards may have

very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975).

Unsurprisingly then, defendants often cannot withstand this pressure and enter "in terrorem settlements" of meritless class actions. *Concepcion*, 563 U.S. at 350. "In reality, virtually all certified class actions subsequently settle; very few certified class actions proceed to trial." Linda S. Mullenix, *Ending Class Actions As We Know Them: Rethinking the American Class Action*, 64 Emory L.J. 399, 419 (2014).

The unfair settlement pressure will multiply even further if courts misread Rule 23(c)(4) to fall outside the Rule 23(b) requirements. By limiting the types of actions eligible for class treatment, Rule 23(b) attempts to confine the settlement pressure to cases where the benefits of class treatment likely outweigh the costs.

But even Rule 23(b)(3)'s requirements are not a perfect safeguard. Indeed, those criteria already err on the overinclusive side, allowing certification in questionable cases. The Supreme Court has acknowledged that Rule 23(b)(3), which permits damages suits on behalf of a class when common questions predominate, is an "adventuresome innovation" that "is designed for situations in which class-action treatment is not as clearly called for." *Comcast*, 569 U.S. at 34 (quotation marks and citation omitted). As a result, Rule 23 limits the potential for abuse of Rule 23(b)(3) classes by imposing additional "procedural safeguards" not required for other class

actions, and by imposing on courts a "duty to take a close look at whether common questions predominate over individual ones." *Id*.

The categories and numbers of cases eligible for class certification is unlimited, however, if courts misread Rule 23(c)(4) to authorize issues classes even though the case as a whole does not satisfy Rule 23(b)'s requirements. As noted, *see supra* at 11, when a group of individuals suffers an injury, it will almost always be possible to identify *some* common legal or factual question. *See Wal-Mart*, 564 U.S. at 349. The pressure on defendants to settle will accordingly expand in direct proportion to the vast expansion of class actions certified.

The cost of the resulting class-action abuse will reverberate through the economy. Businesses will expend substantial resources defending against this new category of class action. And they will ultimately pass along these increased litigation costs to consumers through higher prices. The courts will also bear the burden of resolving disputes about a new type of class action proceeding with no text governing its contours.

## <u>CONCLUSION</u>

For the foregoing reasons, the decision of the district court should be reversed.

Dated: September 9, 2020

Respectfully submitted,

*/s/ Gilbert C. Dickey*
Gilbert C. Dickey
McGuireWoods LLP
2001 K. Street, N.W.
Suite 400
Washington, D.C. 20006
T: (202) 828-2829
F: (202) 828-3329
gdickey@mcguirewoods.com

Matthew A. Fitzgerald
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
F: (804) 698-2251
mfitzgerald@mcguirewoods.com

Steven P. Lehotsky
Jonathan D. Urick
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, D.C. 20062
T: (202) 463-5337

*Counsel for* Amicus Curiae
*Chamber of Commerce*
*of the United States of America*

## **CERTIFICATE OF COMPLIANCE AND BAR MEMBERSHIP**

1.     Pursuant to Local Rule 28.3(d), I, Gilbert C. Dickey, certify that I am a member in good standing of the bar of this Court.

2.     This brief complies with the type-volume requirements of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 4,264 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

3.     The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) and 3d Cir. L.A.R. 32.1(c) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

4.     Pursuant to Local Rule 31.1(c), I hereby certify that the text of the electronic brief is identical to the text of the paper copies, and that the brief has been scanned for viruses using FireEye Endpoint Protection, Version 38.28.8, and no virus was detected.

Dated: September 9, 2020          */s/ Gilbert C. Dickey*
                                  Gilbert C. Dickey

                                  *Counsel for* Amicus Curiae
                                  *Chamber of Commerce*
                                  *of the United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2020, the foregoing was filed with the

Clerk of the United States Court of Appeals for the Third Circuit using the appellate

CM/ECF system, which will also serve counsel of record.

*/s/ Gilbert C. Dickey*
Gilbert C. Dickey

*Counsel for* Amicus Curiae
*Chamber of Commerce*
*of the United States of America*