No. 20-2128

In the United States Court of Appeals for
the Third Circuit

MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL,
and DESIRE EVANS, on behalf of themselves and all others
similarly situated,
                                                      *Appellees*,

v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,
                                        *Appellant.*

On Petition for Permission to Appeal from the United States
District Court for the Eastern District of Pennsylvania,
No. 2:18-cv-05629-JDW (Wolson, J.)

## BRIEF OF APPELLEES

JANET, JANET & SUGGS, LLC
  Patrick A. Thronson
  Brenda A. Harkavy
  4 Reservoir Circle, Suite 200
  Baltimore, MD 21208
  (410) 653-3200

PUBLIC CITIZEN LITIGATION
GROUP
  Scott L. Nelson
  1600 20th St. NW
  Washington, D.C. 20009
  (202) 588-1000

LAW OFFICES OF PETER G.
ANGELOS, P.C.
  Paul M. Vettori
  One Charles Center
  100 N. Charles Street, 20th Floor
  Baltimore, Maryland 21201
  (410) 649-2000

SCHOCHOR, FEDERICO AND
STATON
  Brent Ceryes
  The Paulton
  1211 St. Paul Street
  Baltimore, Maryland 21202
  (410) 234-1000

CONRAD O'BRIEN P.C.
  Nicholas M. Centrella
  Robin S. Weiss
  1500 Market Street, Suite 3900
  Philadelphia, PA 19102-2100
  (215) 864-9600

Z LAW, LLC
  Cory L. Zajdel
  2345 York Rd. Suite B-13
  Timonium, MD 21093
   (443) 213-1977

*Counsel for Appellees*

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ v

STATEMENT OF THE ISSUES .................................................................. 1

STATEMENT OF RELATED PROCEEDINGS ........................................ 1

STATEMENT OF THE CASE .................................................................... 1

SUMMARY OF ARGUMENT ................................................................. 16

STANDARD OF REVIEW ....................................................................... 20

ARGUMENT ............................................................................................. 22

I.   The district court did not abuse its discretion in finding that
Plaintiffs satisfy the elements of typicality and adequacy. ................. 22

   A.  The Plaintiffs' claims are typical. ................................................ 22

   B.  ECFMG's claim that Plaintiffs will "inflict emotional distress"
   on the class is false and speculative. ................................................ 27

   C.  The district court correctly concluded that certification will
   not create claim-splitting problems for class members ..................... 30

II.  Certification of a Rule 23(c)(4) issue class does not require a finding that a claim as a whole satisfies Rule 23(b). ...........................33

   A.  The district court's application of *Gates* satisfied Rule 23(b)(3). 33

   B.  Rule 23(c)(4) certification does not require that a class's cause of action as a whole satisfy Rule 23(b)(3)..........................................39

III.  The district court did not abuse its discretion under Gates........51

   A.  The district court thoroughly considered the *Gates* factors. .......51

   B.  Plaintiffs addressed choice of law..................................................52

   C.  The district court did not abuse its discretion in determining that Pennsylvania law applies. ........................................................55

   D.  There is no per se bar on issue certification of claims involving emotional harm. ...............................................................................57

   E.  Considerations of efficiency favor issue certification. .................63

   F.  ECFMG's alarmism concerning issue-class certification is unfounded..........................................................................................66

CONCLUSION ......................................................................................67

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aiello v. Providian Financial Corp.*,
   239 F.3d 876 (7th Cir. 2001)...........................................................60, 61

*Bohus v. Beloff*,
   950 F.2d 919 (3d Cir. 1991) ............................................................32, 33

*Bolin v. Sears, Roebuck & Co.*,
   231 F.3d 970 (5th Cir. 2000)...................................................................46

*Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012).................................................................38

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013)...........................................................38, 47

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996).......................................................20, 39, 45

*Charron v. Pinnacle Grp. N.Y. LLC*,
   269 F.R.D. 221 (S.D.N.Y. 2010)............................................................33

*Chiang v. Veneman*,
   385 F.3d 256 (3d Cir. 2004) ..................................................................34

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)..................................................................................38

*Corley v. United States,*
556 U.S. 303 (2009) ................................................................ 44

*Dewey v. Volkswagen Aktiengesellschaft,*
681 F.3d 170 (3d Cir. 2012) ................................................. 28

*Gasoline Products Co. v. Champlin Refining Co.,*
283 U.S. 494 (1931) ............................................................... 58

*Gates v. Rohm & Haas Co.,*
655 F.3d 255 (3d Cir. 2011) ......................................... passim

*General Telephone Company of Southwest v. Falcon,*
457 U.S. 147 (1982) ............................................................... 25

*Gorman v. Costello,*
929 A.2d 1208 (Pa. 2007) ...................................................... 65

*Grainy v. Campbell,*
425 A.2d 379 (Pa. 1981) ........................................................ 65

*Griffith v. United Air Lines, Inc.,*
203 A.2d 796 (Pa. 1964) ........................................................ 53

*Gunnells v. Healthplan Servs., Inc.,*
348 F.3d 417 (4th Cir. 2003) ........................................ passim

*Hamilton v. Ford Motor Credit Co.,*
502 A.2d 1057 (Md. Ct. Spec. App. 1986) ....................... 53, 55

*Healy v. Beer Inst., Inc.,*
491 U.S. 324 (1989) ............................................................... 56

*Hohider v. United Parcel Serv., Inc.*,
  574 F.3d 169 (3d Cir. 2009) ................................................................ 34

*In re A.H. Robins*,
  880 F.2d 709 (4th Cir. 1989) .............................................................. 43

*In re Constar Int'l Inc. Sec. Litig.*,
  585 F.3d 774 (3d Cir. 2009) ............................................................... 21

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) .......................................................... 46, 47

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ................................................................. 22

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008), *as amended* ........................................... 34

*In re Linerboard Antitrust Litig.*,
  305 F.3d 145 (3d Cir. 2002) ............................................................... 66

*In re Nassau Cnty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) ............................................. 42, 43, 44, 45

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ..................................................... 22, 23, 24

*In re Paoli R.R. Yard PCB Litig.*,
  113 F.3d 444 (3d Cir. 1997) ............................................................... 64

*In re Prudential*,
  148 F.3d 283 (3d Cir. 1998) ............................................................... 25

*In re Rodriguez,*
 695 F.3d 360 (5th Cir. 2012) ................................................................ 46

*In re St. Jude Med., Inc.,*
 522 F.3d 836 (8th Cir. 2008) ................................................................ 45

*In re Suboxone Antitrust Litig.,*
 967 F.3d 264 (3d Cir. 2020) ............................................. 21, 30, 31, 62

*In re Warfarin Sodium Antitrust Litig.,*
 391 F.3d 516 (3d Cir. 2004) ................................................................ 23

*Johnson v. SmithKline Beecham Corp.,*
 724 F.3d 337 (3d Cir. 2013) ................................................................ 21

*Kleinknecht v. Gettysburg Coll.,*
 989 F.2d 1360 (3d Cir. 1993) .............................................................. 63

*Lacey v. Cessna Aircraft Co.,*
 932 F.2d 170 (3d Cir. 1991) ................................................... 54, 55, 56

*Marcus v. BMW of N. Am., LLC,*
 687 F.3d 583 (3d Cir. 2012) ................................................................ 23

*Martell v. Boardwalk Enters., Inc.,*
 748 F.2d 740 (2d Cir. 1984) ................................................................ 60

*Martin v. Behr Dayton Thermal Prods. LLC,*
 896 F.3d 405 (6th Cir. 2018) ....................................................... passim

*McQuilken v. A & R Dev. Corp.,*
 576 F. Supp. 1023 (E.D. Pa. 1983) ..................................................... 33

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   672 F.3d 482 (7th Cir. 2012) .................................................. 45

*Murray v. Bledsoe,*
   650 F.3d 246 (3d Cir. 2011) .................................................. 27

*New Directions Treatment Svcs. v. City of Reading,*
   390 F.3d  (3d Cir. 2007) ........................................................ 28

*Oshana v. Coca-Cola Co.,*
   472 F.3d 506 (7th Cir. 2006) ........................................... 25, 26

*Parsky v. First Union Corp.,*
   51 Pa. D. & C.4th 468 & n.28 (Com. Pl. 2001) ............... 52, 53

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ................................................ 25

*Pryer v. C.O. 3 Slavic,*
   251 F.3d 448 (3d Cir. 2001) .................................................. 59

*R.W. v. Manzek,*
   888 A.2d 740 (Pa. 2005) ...................................................... 63

*Reinig v. RBS Citizens, N.A.,*
   912 F.3d 115 (3d Cir. 2018) .................................................. 22

*Rosa v. City of Chester,*
   278 F.2d 876 (3d Cir. 1960) .................................................. 60

*Rutstein v. Avis Rent-A-Car Sys., Inc.,*
   211 F.3d 1228 (11th Cir. 2000).............................................. 60

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010) ................................................................. 58

*Slade v. Progressive Security Insurance Co.,*
  856 F.3d 408 (5th Cir. 2017) ............................................. 31, 32

*Spence v. Board of Education of Christina School District,*
  806 F.2d 1198 (3d Cir. 1986) ............................................. 58, 59

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) .................................................. 45

*Walters v. Mintec/Int'l,*
  783 F.2d 73 (3d Cir. 1985) ...................................................... 60

## **Statutes**

40 Pa. Stat. Ann. § 1303.503 (West 2020) ................................. 32

## **Rules**

Fed. R. Civ. P. 23 .......................................................... passim

Fed R. Civ. P. 42(b) ................................................................ 59

Fed R. Civ. P. 49 .................................................................... 64

## **Regulations**

231 Pa. Code Rule 1042.1 (West 2020) ..................................... 32

# Other Authorities

## Treatises:

Newberg on Class Actions (5th ed., June 2020 update) ............. 24, 30, 48

Pennsylvania Suggested Standard Civil Jury Instructions
  (5th ed. 2020) ......................................................... 65

Principles of the Law of Aggregate Litigation
  (Oct. 2020 update) ................................................ 34, 37, 52

Restatement (Second) of Conflicts of Law § 148 ............................... 54, 56

Restatement (Second) of Judgments § 24 (1982) .................................... 30

Restatement (Second) of Torts § 324A..................................................... 17

## Law Review Articles:

Stephen B. Burbank, The *Rules Enabling Act of 1934*, 130 U.
  Pa. L. Rev. 1015 (1982)................................................................. 57, 58

Elizabeth Chamblee Burch, *Constructing Issue Classes*, 101
  Va. L. Rev. 1855 (2015) ........................................................ 47

Elizabeth J. Cabraser & Samuel Issacharoff*, The Participatory Class
  Action*, 92 N.Y.U. L. Rev. 846 (2017) ..................................................... 48

Patrick Wooley, *Choice of Law and the Protection of Class Members in
  Class Suits Certified Under Federal Rule of Civil Procedure 23(b)(3)*,
  2004 Mich. St. L. Rev. 799 (2004) ....................................................... 52

## STATEMENT OF THE ISSUES

Did the district court abuse its discretion in certifying the issues of duty and breach under Federal Rule of Civil Procedure 23(c)(4), where one negligent course of conduct by one defendant caused one type of injury to Plaintiffs and the class, who share the same legal relationship with the defendant?

## STATEMENT OF RELATED PROCEEDINGS

This case has not previously been before this Court. The matters listed in Appellant's Addendum containing its Statement of Related Cases are not pertinent to this appeal or the underlying litigation.

## STATEMENT OF THE CASE

This action arises from allegations that Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") negligently investigated and certified Oluwafemi Charles Igberase, a/k/a John Nosa Akoda (among other aliases), as eligible to enter a residency program, notwithstanding compelling evidence that Igberase/"Akoda" had committed extensive fraud as to his identity and credentials. As Plaintiffs allege, ECFMG knew of Igberase's fraud, but failed to appropriately investigate and respond to it. ECFMG failed to inform state medical

1

boards, residency programs, and hospitals of Igberase's fraud, even as it attested that Igberase held a valid ECFMG certification.

ECFMG acknowledged that "patients have the right not to be treated by physicians who have obtained ECFMG certification based on false pretenses." JA644. Yet ECFMG failed to respect this right and protect the public. As a result, Igberase had the opportunity to examine, touch, harass, and sexually abuse hundreds of women under the guise of providing OB/GYN care. These patients would never have consented to examination and treatment by Igberase had they known—as ECFMG did—that Igberase had obtained his credentials through repeated acts of fraud, later found to constitute a "crime of moral turpitude." JA322, 1363.

### ECFMG's Role in the American Healthcare System

According to Appellant, "[p]art of ECFMG's mission is to promote public health and to protect the public." JA643. ECFMG certifies international medical graduates ("IMGs," defined as those who attend medical school outside the U.S. and Canada) as eligible to enter US graduate medical education programs, and verifies an IMGs credentials for hospitals and state medical licensing boards. JA201, 642–44, 689.

2

To practice medicine in the U.S., an IMG must first apply to ECFMG, which verifies from primary sources that the IMG has obtained a valid diploma from a medical school recognized by the school's home country. *See* JA205–06. An IMG must also pass portions of the United States Medical Licensing Examination (USMLE) and a clinical skills assessment. *Id.* When these steps are satisfactorily completed, ECFMG issues a certificate to the IMG. *Id.* ECFMG also acts as a dean's office for IMG's applying to residency programs. JA367.

### *Igberase obtains initial ECFMG certification after failing medical examination twice.*

In 1992, Igberase applied to ECFMG to take the Foreign Medical Graduate Examination in Medical Sciences ("FMGEMS")—the initial phase of the USMLE examination—and the ECFMG English Test. JA211. Igberase provided ECFMG with a purported 1987 diploma from the University of Ibadan in Nigeria. *See* JA216.

Igberase twice failed both the basic medical science and clinical science components of the FMGEMS. JA219. He passed the exam on the third try. *Id.* ECFMG issued him a certificate in 1993 after he passed steps 1 and 2 of the USMLE. JA239–40.

3

***Igberase obtains second certification under the "Charles" identity. ECFMG investigates and revokes Igberase's certification.***

In 1994, ECFMG received a second application from Igberase, using the name "Igberase Oluwafemi Charles," to take steps 1 and 2 of the USMLE examination (again). JA242–44. His application falsely represented he had never taken the USMLE examination before. *Id.* After "Charles" successfully completed the USMLE examinations, ECFMG issued him a certificate under the Charles identity. JA239.

Shortly thereafter, ECFMG investigated whether Igberase and Charles were the same person. JA239–40. Igberase admitted he had lied about his identity and examination history because residency programs had rejected him for repeatedly failing the USMLE examinations. JA246–50.

ECFMG referred the matter to its Committee on Medical Education Credentials. The Committee found Igberase had engaged in "irregular behavior," invalidated the certificate issued to "Charles" and revoked Igberase's original certificate. JA252. In 1996, after Igberase appealed,

4

ECFMG's Review Committee for Appeals limited the period of revocation
to five years. JA260–61.

### *Igberase applies and is certified under the "Akoda" identity.*

While appealing this revocation, Igberase submitted a third
application to ECFMG to take Steps 1 and 2 of the USMLE examination
under the name "John Nosa Akoda." JA263, JA268. This time, he
provided ECFMG a purported 1988 diploma issued to "Johnbull
Enosakhare Akoda" from the University of Benin. JA753.  ECFMG takes
no position on where or whether Igberase/"Akoda" actually went to
medical school. JA653. It merely claims that it verified both diplomas
from primary sources. *Id.* It did not, however, verify Akoda's purported
certificate of registration as a physician in Nigeria. *Id.*

After he passed the required examinations, ECFMG issued "Akoda"
a certificate in 1998. *See* JA275. Akoda then entered a residency program
at Jersey Shore Medical Center (JSMC). JA276. ECFMG sent a
permanently validated ECFMG certificate for Akoda to JSMC. *See id.*

### *ECFMG learns Akoda and Igberase are the same person.*

In August 2000, JSMC notified ECFMG it was investigating
whether Akoda had used a Social Security number issued to Igberase. *See*

JA279. ECFMG sent Akoda a "charge letter" advising it had received information alleging he may have engaged in irregular behavior and demanded a written explanation within fifteen days. *See* JA284–85. Akoda admitted he used the Social Security number of his "cousin" Igberase Oluwafemi Charles. *See* JA287.

Akoda met with William Kelly, Manager of ECFMG's Medical Education Credentials Department. This was not the first time Kelly had met Igberase/Akoda: Kelly attended a hearing on the revocation of Igberase's certificate, where Igberase testified. JA365. Igberase again admitted he had used his cousin's Social Security number, and presented a purported Nigerian passport and "international driving permit." JA289, 358. ECFMG did not verify the documents. JA671.

In December 2000, ECFMG learned that JSMC dismissed Akoda from its residency program, because he had used a false Social Security number and provided JSMC with two inconsistent green cards. JA291.

In a December 22, 2000 memorandum that Kelly intentionally left out of "Akoda's" official file, Kelly stated he and the director of JSMC's residency program believed that Igberase and Akoda were the same person. JA293. Somehow, Kelly did not think there was enough

information to refer the matter to the ECFMG's Credentials Committee for investigation. *Id.* Had the Committee known, Kelly acknowledges, it would have investigated and charged Akoda with "providing false information to ECFMG on an application, among other things," JA366, as it did after Igberase's initial fraudulent application in his own name.

### ECFMG nonetheless represents to Howard University's residency program, the State of Maryland, and Prince George's Hospital Center that "Akoda" has a valid ECFMG certificate.

In October 2006, Akoda used ECFMG's Electronic Residency Application System (ERAS) to apply for residency at Howard University Medical Center. The application included three purported letters of reference. JA295. Although not part of the ERAS process (JA367), Kelly undertook to verify the letters' authenticity (JA297), because he doubted Akoda's credibility (JA367). He never received responses from the supposed authors. JA675. Kelly never notified anyone outside the organization of his concerns (JA676–77), and ECFMG did not investigate the matter further (JA675).

Later, ECFMG verified Akoda had a valid ECFMG certificate to the Maryland Board of Physicians and Prince George's Hospital Center (PGHC). In 2011, Akoda obtained privileges and became a member of the

medical staff at PGHC. JA312. He began seeing patients there in 2011. JA100 at ¶ 30.

ECFMG never notified any residency program, hospital, or other entity of the concerning information it had obtained regarding Igberase/Akoda's character and fitness—and the conclusions it drew from that information—until law enforcement became involved. JA676–77.

### *Igberase faces six felony charges and pleads guilty to one.*

Law enforcement contacted ECFMG regarding Akoda in approximately 2015. JA676 at 18. ECFMG had not investigated the matter further since his residency application. JA675. In 2016, officers executed search warrants at Igberase's residence, medical office and vehicle. JA100. They found fraudulent or altered immigration documents, medical diplomas, medical transcripts, letters of recommendation and birth certificates. *Id.*

Igberase was charged with six felony counts. JA319. On November 15, 2016, Igberase signed a plea agreement admitting to felony misuse of a Social Security number to obtain a medical license. JA313.

In 2017, the United States District Court for the District of Maryland sentenced Igberase to six months incarceration, followed by

probation. JA101 at ¶ 37. PGHC terminated his privileges and the Maryland Board of Physicians revoked "Akoda's" medical license. *Id.* at ¶¶ 38–39.

ECFMG's brief misleadingly implies that ECFMG was not aware until the guilty plea that "Akoda"—who is not a licensed physician—had twice before applied to ECFMG under two different names. Br. 6. The evidence indicates ECFMG knew of Igberase's fraudulent behavior for many years before Igberase was charged.

### *Plaintiffs suffer emotional harm.*

Plaintiffs claim a common injury: wrongful touching of their bodies based on the false pretense that Igberase was a properly credentialed physician. This injury occurred as a result of ECFMG's negligence in certifying Igberase/Akoda and in failing to notify hospitals and medical boards when it knew Igberase had obtained the Akoda certification through fraud.

The named Plaintiffs suffered injuries representative of those suffered by numerous class members:

- Desire Evans: Igberase touched Ms. Evans's clitoris during her labor, claiming he needed to do so to help her push. JA1270. She is afraid to seek medical care for her and her child, and has lost trust in the medical system. JA1278.

- Elsa M. Powell: Igberase provided prenatal care to Ms. Powell. Igberase repeatedly made inappropriate advances and comments, including stating her breasts were "nice." JA1174. Igberase delivered Ms. Powell's baby. JA1174. The delivery was complicated by significant bleeding requiring additional medical care. JA1306. She trusted that Igberase was a duly licensed and credentialed physician and suffered emotional harm upon learning that the individual she trusted to touch the most intimate parts of her body and deliver her baby had lied about his identity and background. *Id.*

- Jasmine Riggins: Igberase provided Ms. Riggins prenatal care and delivered her baby. JA1143. She suffered severe abdominal pain and could not have her tubes tied because of scarring. JA429. After learning the truth about Igberase from a Facebook group, "Embracing Mommies," Ms. Riggins felt angry, sad, embarrassed, and ashamed about receiving treatment from Igberase. JA436, JA443. She was deeply affected by what Igberase did, and felt outraged because his dishonesty enabled him to perform C-sections, examine women's genitals, touch and violate them. JA456.

- Monique Russell: Igberase delivered Ms. Russell's baby by emergency C-section. JA394. She learned of Igberase's guilty plea from a Department of Justice press release. Ms. Russell read the federal sentencing transcript. JA359–96. She feels Igberase violated her and has difficulty going to the gynecologist, distrusts the medical community, and distrusts institutions that credential doctors. JA403. Ms. Russell also suffers from intimacy issues and anxiety, and feels like a victim of sexual assault because Igberase examined her vagina under false pretenses. JA415, JA417.

A report provided by psychiatrist Annie Steinberg, M.D., Clinical

Professor at the Perelman School of Medicine, incorporating information

10

from responses to a questionnaire completed by 306 of approximately 500

former patients of Igberase whom Class Counsel represent, revealed that

nearly half of participants felt uncomfortable during Akoda's exams and

over 89 percent suffered emotional distress from Akoda's conduct and/or

from learning that he practiced medicine under false pretenses. JA182,

580, 585, 587.

Because none of Igberase's patients knew his true identity or of his

fraudulent background and conduct (JA102 at ¶¶ 44–45), they could not

give informed consent to be touched by him (*id.* at ¶ 46). On many

occasions, Igberase committed battery by touching and digitally

penetrating patients without consent and on false pretenses, and by

examinations of a sexual nature. *Id.* at ¶ 47. He also used inappropriate

language. *Id.*

### *Procedural History*

In December 2018, named Plaintiffs Russell, Riggins, Powell, and

Evans sued ECFMG in the Court of Common Pleas of Philadelphia,

asserting claims of negligence and negligent infliction of emotional

distress on behalf of a putative class. JA102; JA91–125. ECFMG removed

the case to the United States District Court for the Eastern District of Pennsylvania. JA83–88.

After substantial discovery, Plaintiffs filed a Motion for Class Certification in the district court. JA167–198. The Motion sought certification under Federal Rule of Civil Procedure 23(c)(4) of a class of "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." JA182–83. Specifically, the motion sought certification of "liability for the causes of action of the class members: negligence ... and negligent infliction of emotional distress," or, in the alternative, certification of nine class issues, including the four ultimately certified by the district court. JA182–83.

Following extensive briefing and oral arguments, the district court analyzed each of Rule 23's relevant requirements in depth. The court found Plaintiffs had properly defined an ascertainable class. JA46–48. It found the class sufficiently numerous to satisfy Rule 23(a)(1) because, as ECFMG did not dispute, the number of potential class members—"at least 712 people"—precluded joinder. JA48–49. And it found Rule 23(a)(2)'s commonality requirement satisfied—a finding ECFMG does not challenge on appeal. *Id.*

12

The court likewise found Rule 23(a)(3)'s typicality requirement satisfied. JA51–53. As it explained, "Plaintiffs' claims are typical of class members to the extent that the class members consist of Igbarese's patients during and after his residency" because all the claims "arise from the same legal theory: negligence" and from "a single course of conduct by ECFMG: the certification and subsequent (allegedly inadequate) investigation of his identity." JA52. The court, however, excluded JSMC patients from the class because their claims differ from those of the named Plaintiffs. JA53.

The court rejected ECFMG's argument that the Plaintiffs are not typical because their claims involve emotional damages and Igberase might have physically harmed other class members. *Id.* The court ruled that such distinctions did not "overcome the fact that Plaintiffs' claims arise from the same facts and legal theories as members of the class," and that any member of the class who wanted to assert claims against ECFMG for additional injuries "will have the opportunity to opt out of the class and assert those claims individually." *Id.* Further, certification would not prevent class members from asserting claims for other injuries against Igberase. *Id.*

13

The district court also found the class representatives satisfy Rule 23(a)(4)'s adequacy requirement. JA54. As the court noted, adequacy is only impaired by a "fundamental" conflict, which occurs when "some class members benefitted from conduct that harmed other class members." *Id.* (citation omitted). No class member benefited here. *Id.*

The court then considered whether to certify an issue class under Rule 23(c)(4), applying the factors set forth in this Court's opinion in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011). The court rejected Plaintiffs' request for certification on liability for the class members' causes of action, because such certification would encompass elements of causation and harm that the court considered too individualized. JA56–57.

Addressing Plaintiffs' alternate request for certification of nine specific issues, the court first stated that it would not certify damages issues or whether ECFMG was liable for assisting Igberase in committing fraud. JA59. But the court did find that issues concerning "whether ECFMG had a relevant legal duty and whether it breached that duty" were appropriate for certification. *Id.*

14

Applying *Gates*, the court concluded that the four "questions of duty and breach favor issue certification because they are questions of law and/or fact common to all class members and subject to common proof." JA59–60. The court found that all class members are "identical in terms of their legal relationship to ECFMG," such that "ECFMG owes the same duty (if any)" to all. JA60. Likewise, whether ECFMG breached its duty "is a common question of fact for each prospective class member," because it turns on ECFMG's conduct, not that of individual class members. JA60.

The court found that certifying a class on duty and breach would permit "a single, preclusive determination about ECFMG's conduct" and avoid repetitive presentation of the same extensive evidence to one jury after another. *Id.* Moreover, no other similarly efficient "procedural alternatives" were available. *Id.* For example, the court observed that there is no guarantee that collateral estopped would enable a single, controlling resolution, because ECFMG would not be able to use a possible favorable decision against a different plaintiff in a later case. *Id.*

Finally, the court concluded that certifying an issue class would not "trigger any of the problems about which courts must be mindful under *Gates*." JA61. Partial certification will not impair a class member's

15

statutory or constitutional rights or affect any indivisible remedies, and the individual proceedings on causation and damages will not impact one another. And issue certification will not implicate Seventh Amendment problems, because juries in subsequent individual proceedings will not reconsider the class jury's factual determinations. *Id.*

The district court accordingly certified an issue class under Rule 23(c)(4), comprising all patients treated by Igberase since he entered Howard in 2007. JA63–64. The certification identified four issues for classwide resolution: (1) whether ECFMG undertook or otherwise owed a duty to class members; (2) whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable to class members pursuant to Restatement (Second) of Torts § 324A; (3) whether ECFMG breached any duty that it owed to class members; and (4) whether ECFMG breached any duty that it owed to hospitals and state medical boards. *Id.* at 2.

## SUMMARY OF ARGUMENT

The elements of duty and breach central to Plaintiffs' negligence claims are tailor-made for issue class certification. These claims concern a single course of conduct (negligent certification and investigation of

16

Igberase), in one state (Pennsylvania), by a single defendant (ECFMG),

that gave rise to claims based on a single legal theory (negligence)

common to all class members, and that resulted in the same type of injury

(emotional harm). ECFMG's duties, or breaches of those duties, do not

differ as to any class members. No class members are subject to unique

defenses or have fundamental conflicts of interest with the class. Far from

constituting an abuse of discretion, certifying the elements of duty and

breach for classwide treatment carries out the text and spirit of Rule 23.

ECFMG's brief never confronts the core realities of the litigation or

the district court's appropriate use of Rule 23(c)(4) as a case management

tool. It proceeds largely through misdirection, seeking to shift the focus

from evidence to speculation, from the record that exists to the record-as-

wished-for, from settled precedent to novel or discredited theories.

ECFMG begins its attack with the Rule 23(a) elements of typicality

and adequacy, which it treats synonymously. ECFMG does not address

the well-grounded reasoning and precedent supporting the district court's

finding that the named Plaintiffs' claims are typical because they arise

from exactly the same circumstances as those of the class. ECFMG would

have plaintiffs "prove," and district courts "find," what constitutes a

17

typical harm among hundreds of class members before a class is even certified. No case ECFMG cites even recommends such unworkable certification procedures, let alone requires them.

ECFMG's attack on the district court's finding of adequacy is equally flawed. ECFMG challenges Plaintiffs' adequacy because they supposedly seek to "inflict emotional distress" on class members (Br. 22) by informing them they were treated by Igberase. ECFMG's judgment that it is better for class members to be kept in ignorance is not grounded in precedent. Moreover, class counsel already represent several hundred likely class members, and the record shows the vast majority learned of Igberase's conduct through news coverage, which was extensive. ECFMG's claim that notice of the class action will harm class members, or even surprise them, is speculative.

ECFMG's alternative argument that Plaintiffs are inadequate because they "abandoned" class members' hypothetical claims for physical injury is also unsupported by the record. ECFMG identifies no class members with such claims. As the district court correctly observed, certification will not bar class members from suing Igberase and entities that provided medical care to them, and members who wish to pursue

non-emotional harm claims against ECFMG can opt out. Suing ECFMG, a non-healthcare provider, for medical malpractice does not appear possible under Pennsylvania law, and is likely also barred by the statute of limitations.

ECFMG's contention that the district court erred by certifying an issue class without separately analyzing Rule 23(b)(3) is misguided. The district court applied the *Gates* factors, which incorporate the necessary analysis under Rule 23(b)(3) and (c)(4). The American Law Institute developed those factors to address the interplay between those two sections of Rule 23. The Court should not accept ECFMG's invitation to rewrite *Gates* by adopting a footnote from *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), which *Gates* expressly declined to adopt, and which conflicts with the consensus of courts and the Advisory Committee on Civil Rules. The *Gates* factors provide a roadmap to determine whether aggregate treatment of common issues is warranted, and ensure that issue classes are certified only when classwide resolution of common issues meaningfully advances fair and efficient disposition of cases.

Finally, the district court's findings as to the *Gates* factors were well within its discretion. The district court correctly ruled Pennsylvania law

19

applies to claims based on a Pennsylvania corporation's conduct in Pennsylvania. ECFMG attempts to circumvent that ruling by invoking a section of the Restatement (Second) of Conflicts of Law different from the one both ECFMG and the district court relied on below. The cited provision, however, applies to claims for pecuniary loss resulting from fraud, not negligence claims for emotional harm damages.

ECFMG also seeks to erect a per se bar against class treatment of any issue in a claim seeking damages for emotional harm. No precedent suggests this result, which violates the fundamental principle that the Federal Rules of Civil Procedure apply trans-substantively, i.e., in the same manner to all claims. District courts managing cases including claims for emotional-harm damages should not be deprived of the efficiencies Rule 23(c)(4) can achieve when, as here, the alternative is to litigate identical questions hundreds of times, with potentially varying results.

## STANDARD OF REVIEW

District courts have "broad discretion" to certify classes, *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009). This court reviews certification for abuse of discretion, "which occurs if the district

20

court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 269 (3d Cir. 2020) (citation and quotes omitted). A factual finding is clearly erroneous only if the appellate court is "'left with the definite and firm conviction that a mistake has been committed.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 345 (3d Cir. 2013) (citation omitted).

The abuse of discretion standard applies both to the ultimate certification decision and to rulings on individual prerequisites to certification. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 34 (2d Cir. 2009). Review is "particularly deferential" on interlocutory appeal of class certification. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003). If this Court finds a district court's certification analysis insufficiently rigorous, the appropriate remedy is remand, not reversal. *Reinig v. RBS Citizens, N.A.,* 912 F.3d 115, 130 (3d Cir. 2018).

# ARGUMENT

## I.  The district court did not abuse its discretion in finding that Plaintiffs satisfy the elements of typicality and adequacy.

### A.  The Plaintiffs' claims are typical.

#### 1.  Precedent contradicts ECFMG's assertion that harm must be typical.

Federal Rule of Civil Procedure 23(a)(3) requires that class representatives' claims be "typical of the claims ... of the class." This Circuit has "set a 'low threshold' for typicality." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016), *as amended* (May 2, 2016) (citation omitted). The typicality prong is normally met where "claims of representative Plaintiffs arise from the same alleged wrongful conduct." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).

Courts consider three factors in evaluating typicality: (1) the class representatives' claims should mirror the class's claims relative to "(a) the legal theory advanced and (b) the factual circumstances underlying that theory"; (2) the class representatives' claims should not be subject to defenses that are "inapplicable to many members of the class and likely to become a major focus of the litigation"; and (3) the class representatives'

interests and incentives should align with those of the class. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012). Even "relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re NFL Players*, 821 F.3d at 428 (quotes omitted).

The district court appropriately applied these criteria. JA51–52. It found Plaintiffs' claims were typical of those of class members Igberase treated at Howard and in Maryland because "[a]ll of the claims arise from the same legal theory: negligence" and "a single course of conduct by ECFMG: the certification and subsequent (allegedly inadequate) investigation of his identity." JA52. There was no evidence Plaintiffs were subject to unique defenses or had interests opposed to the class. *Id.*

ECFMG does not contest these findings. Instead, it attempts to shift the conversation by urging the Court to adopt an extra-textual requirement that the representatives' "injury" be typical. It concedes, however, that "[t]ypicality may also be satisfied where class members suffered a different injury than the proposed class representatives, so long as all the injuries are shown to result from a single challenged practice,"

23

and that not all members of the class need to have suffered an injury. Br. 20. Paradoxically, ECFMG insists the district court was required to find that "emotional distress was a typical reaction of class members"; if so, "then the possibility of uninjured (atypical) class members would be no bar to certification." *Id.*

ECFMG adduces no precedent showing that Rule 23(a)(3) requires that the injury or harm class representatives have suffered be typical of those of the class. This Court has expressly disagreed with any such requirement (*see In re NFL Players*, 821 F.3d at 428), consistent with the consensus view (*see* 1 Newberg on Class Actions § 3:43 (5th ed., June 2020 update)).

ECFMG misreads *In re Prudential*, 148 F.3d 283 (3d Cir. 1998) as indicating that "typicality is satisfied where class members 'all have claims.'" Br. 20. There, this Court observed that class members all had claims—but never held that was required for typicality or certification.

ECFMG also misreads *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147 (1982) as stating harm must be typical. But *Falcon* instructs that a district court may find typicality without concluding class

24

members suffered harm, as long as the conduct complained of is common. *Id.* at 159.

ECFMG cites *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)—a civil rights action for negligent prison medical care—but it, too, supports Plaintiffs. *Parsons* held differences in past injuries or current healthcare needs of the named plaintiffs and class members did not preclude a finding of typicality. *Id.* at 686. *Parsons* held the class representatives typical for the same reason the district court did here. *Id.*

ECFMG also wrongly invokes *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006). There, typicality was not satisfied because the class included people who knew fountain Diet Coke contained saccharine but bought it anyway, whereas the named Plaintiff complained she was deceived. *Id.* The court also held Oshana's claim was subject to a range of unique defenses. Here, by contrast, no patient knew about Igberase's fraud, much less ECFMG's role in enabling it, before his 2016 conviction. ECFMG has asserted no unique defenses against Plaintiffs.

Finally, ECFMG misreads the record. It claims Plaintiffs "acknowledged that the proposed class includes members who did not experience similar emotional distress." Br. 19. In fact, Plaintiffs' counsel

25

said it is *possible* the class would include individuals who did not suffer harm, but that does not defeat *ascertainability*—the subject under discussion at that point. *See* JA1392 at 12:17–25. And ECFMG acknowledges that the presence of uninjured class members does not defeat certification. Br. 20.

>    **2.    The Court should reject ECFMG's novel typicality criterion.**

ECFMG's proposed alteration of this Court's typicality jurisprudence would eviscerate the class device. It is unclear how Plaintiffs would "show" and a district court "find" before certification, that emotional distress was a typical reaction among class members without conducting hundreds of depositions of class members—an entirely unworkable process.

Requiring typicality of harm is particularly inappropriate in the context of the district court's issue-class certification, which includes no questions regarding injury. Possible variations in the emotional harm suffered by class members have no bearing on the alignment of interests between the named Plaintiffs and the class on the certified issues of duty and breach.

### 3. The record indicates that the vast majority of known class members suffered emotional harm.

This Court "may affirm the District Court's judgment on any basis supported by the record." *Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (citation omitted). Plaintiff's certification motion cited Dr. Steinberg's expert report, *see* JA182, which found that an overwhelming majority (89%) of hundreds of class members surveyed experienced emotional harm as a result of Igberase's conduct, and 84% still do. JA587. Record evidence thus confirms emotional harm was a typical result of ECFMG's negligence.

### B. ECFMG's claim that Plaintiffs will "inflict emotional distress" on the class is false and speculative.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Although adequacy can overlap with typicality, it addresses a distinct concern: whether the class representatives have conflicts of interest with the class. *See New Directions Treatment Svcs. v. City of Reading*, 390 F.3d 313 (3d Cir. 2007). Only a "fundamental" conflict of interest can defeat adequacy. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012).

27

ECFMG identifies no such conflict, but instead contends that certification will necessarily "inflict emotional distress" on class members—even while it faults the district court for not finding this reaction typical. According to ECFMG, class members are better off not receiving court-approved notice of the allegations against ECFMG or their potential right of redress.

The district court performed a focused analysis of possible conflicts between named Plaintiffs and the class. JA54–55. It correctly found that there is no "'fundamental' conflict of interest," because no class members benefited from conduct that harmed other class members—Igberase's deception and ECFMG's negligence. JA55. The district court further found that "[n]othing before the Court demonstrates that the Plaintiffs have incentives that are at odds with the class they seek to represent." JA52.

ECFMG's only response is that class members will be upset upon receiving class notice and learning of the allegations against ECFMG. It cites no authority suggesting that this possibility affects Plaintiffs' adequacy, let alone amounts to a fundamental conflict. And it cites no record evidence supporting the argument. The majority of the 712 class

28

members known to exist (*see* JA616) are already aware of Igberase's misconduct and ECFMG's role in facilitating it. ECFMG's own opposition to certification included names of over 500 clients Class Counsel represent individually for claims arising from ECFMG's and Igberase's misconduct. *See* JA858–62, 880–86.[1] Igberase's fraud and ECFMG's role also received widespread media coverage, long before class certification.[2] Class notice will not add to the emotional impact ECFMG's conduct has already had on the class.

This Court rejects speculative arguments against certification. *In re Suboxone*, 967 F.3d at 273. The Court should be still more reluctant to give credence to a defendant's speculation that prospective plaintiffs are better off not knowing about its conduct. The Court could just as easily conclude that notice will make class members feel empowered, because their entitlement to justice is being taken seriously.

---

[1] Even if the Court otherwise credited ECFMG's argument, it would still not justify decertification with respect to these class members.

[2] *See, e.g.*, Kelsey McKinney, "A Shattering Breach of Trust: What Happens to Patients When Their Doctor Is Not Who He Claimed to Be?" *StatNews* (Jan. 3, 2019), https://tinyurl.com/y4vpqfpa; Whitney Wild, "Md. Doctor Who Obtained Medical License Illegally Prompts Lawsuits," WUSA9 (Dec. 1, 2017), https://tinyurl.com/yykc43o8.

29

### C. The district court correctly concluded that certification will not create claim-splitting problems for class members.

Claim-splitting concerns arise when "a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar," such that "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24 (1982). A class judgment "does not bar class members from pursuing individual lawsuits that are not transactionally related to the class's claims," such as individual medical malpractice claims. 6 Newberg on Class Actions § 18:16. "Class members in class actions are not expected to join such individualized claims to the class suit because to do so would undermine the efficiency of the aggregate resolution of the common claims." *Id.* at § 18:17.

ECFMG falsely asserts that "the district court failed to consider 'whether any potential future claims by class members with personal injury would be at risk of being barred by *res judicata*.'" Br. 26. The district court expressly addressed this precise concern. JA53. It found

30

that class members who wished to assert additional claims against

ECFMG could opt out and assert them individually, and certification

would not prevent class members from asserting claims against Igberase.

*Id.*

ECFMG selectively quotes *Slade v. Progressive Security Insurance

Co.*, 856 F.3d 408 (5th Cir. 2017) to argue that opting out is "not a

panacea" and cannot cure the alleged inadequacy of class representatives

who "abandoned" the class's potential medical malpractice claims. *Slade*,

however, also recognizes that "[r]efusing to certify a class because the

plaintiff decides not to make the sort of person-specific arguments that

render class treatment infeasible would throw away the benefits of

consolidated treatment." *Slade*, 856 F.3d at 415. "Only when all or almost

all of the claims are likely to be large enough to justify individual

litigation is it wise to reject class treatment altogether." *Id.* Here, there is

no indication that "all or almost all" of the individual claims are likely to

be large enough to be litigated entirely individually.

Moreover, ECFMG's claim-splitting argument founders on the

unavoidable reality that it is not a health-care provider under

Pennsylvania law. *See* 40 Pa. Stat. Ann. § 1303.503 (West 2020). And

ECFMG never employed Igberase. Thus, it cannot be sued for medical malpractice based on his conduct. *See* 231 Pa. Code Rule 1042.1 (West 2020). The proper defendants for a medical malpractice claim are Igberase and his employers.

In addition, Pennsylvania provides for a two-year statute of limitations for medical malpractice claims that begins to run when the plaintiff, exercising reasonable diligence, learns of her or his injury and the defendant's role in causing it. *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). Here, that time has likely elapsed. The Department of Justice announced Igberase's guilty plea on November 15, 2016.[3] The announcement described ECFMG's role in credentialing "Akoda." *Id.* The district court's order cannot deprive the class members of a right they do not have.

Finally, ECFMG's suggestion that providing notice and opt-out rights in an issue class may be improper (Br. 23 n.4, 27) contradicts its own concession below (JA1441 at 61:8–9). And several courts have

---

[3] Bowie Man Pleads Guilty to Misusing a Social Security Number to Fraudulently Obtain a Medical License" (Nov. 16, 2016), U.S. Dep't of Justice, https://www.justice.gov/usao-md/pr/bowie-man-pleads-guilty-misusing-social-security-number-fraudulently-obtain-medical.

directed notice to the class after certifying issue classes under Rule

23(c)(4). *See, e.g.*, *McQuilken v. A & R Dev. Corp.*, 576 F. Supp. 1023, 1032

(E.D. Pa. 1983)*; Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 239,

244 (S.D.N.Y. 2010). The district court was well within its discretion in

rejecting challenges to Plaintiffs' adequacy based on claim-splitting

concerns.

## II.   Certification of a Rule 23(c)(4) issue class does not require a finding that a claim as a whole satisfies Rule 23(b).

### A.   The district court's application of *Gates* satisfied Rule 23(b)(3).

Federal Rule of Civil Procedure 23(c)(4) provides that, "[w]hen

appropriate, an action may be brought or maintained as a class action

with respect to particular issues." Rule 23(c)(4) "both imposes a duty on

the court to insure that only those questions which are appropriate for

class adjudication be certified, and gives it ample power to 'treat common

things in common and to distinguish the distinguishable.'" *Chiang v.

Veneman*, 385 F.3d 256, 267 (3d Cir. 2004) (citation omitted), *abrog. on

other grounds*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318

(3d Cir. 2008), *as amended* (Jan. 16, 2009).

33

In certifying the issue class here, the district court applied the standards articulated in *Gates*, 655 F.3d at 272–74. Building on *Chiang* and *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200–01 (3d Cir. 2009), *Gates* held that certification of an issue class requires identifying a common issue that is "divisible from the individual issues" and "a rigorous analysis on the effect 'partial certification would have on the class action going forward.'" 655 F.3d at 273 (quoting *Hohider*, 574 F.3d at 202).

To structure consideration of whether issue certification will advance a case's resolution, *Gates* looked to the ALI's Proposed Final Draft of the Principles of the Law of Aggregate Litigation, §§ 2.02–05, 2.07–08 (2010) ("ALI Principles"), which the Court concluded "provide[s] the most sound guidance in resolving this complicated area of class action procedure." 655 F.3d at 273. Based on the ALI Principles, *Gates* set forth a "non-exclusive list of factors," *id.*, to guide courts in applying Rule 23(c)(4):

> [W]hen deciding whether or not to certify an issue class, the trial court should consider: the type of claim(s) and issue(s) in question; the overall complexity of the case; the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability

34

or remedy; the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*Id.*

*Gates* further instructed that, when certifying an issue class, a district court should "explain how class resolution of the issue(s) will fairly and efficiently advance the resolution of class members' claims, including resolution of remaining issues." *Id. Gates* thus sets forth a "functional" approach to determining whether an issue class will be superior to individual adjudication of common issues. *See, e.g., Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 412–13 (6th Cir. 2018).

*Gates*'s functional approach comports with Rule 23(b). The *Gates* considerations ensure a finding that an issue class is "appropriate" under Rule 23(c)(4) also encompasses a determination that a class action limited

35

to the specified issues meets Rule 23(b)(3)'s demands that common issues "predominate" and that class resolution be "superior to other available methods for fairly and efficiently adjudicating" the certified issues. Indeed, the U.S. Chamber of Commerce's amicus brief recognizes *Gates's* overlap with Rule 23(b)(3). *See* Chamber Commerce Br. 15 ("Properly applied, several of the *Gates* factors overlap with Rule 23(b)(3)'s predominance and superiority requirements.").

As to predominance, *Gates* requires that the district court examine the types of claims and issues in question, including the law applicable to each, *see Gates*, 655 F.3d at 273, so that certification is limited to issues turning on questions of law and fact that are common to the class as a whole, are "separate[ ]" and "divisible" from other issues in the case, and will advance fair and efficient resolution of the remaining issues. *Id.* These requirements ensure common issues predominate the class action as certified. *See Martin*, 896 F.3d at 413. Indeed, the approach of the ALI Principles adopted in *Gates* was specifically designed to "identify[] with greater precision the considerations reflected in the interplay between Subsections (b)(3) and (c)(4) of Rule 23, as set forth in existing case law"

36

and "delineate[ ] the multifaceted inquiries presently encapsulated under the predominance concept." ALI, Principles, § 2.02 cmt. a.

In this case, the district court found that the issues of duty and breach presented questions "common to all members of the class." JA49. The court further found that neither applicable law nor factual circumstances that determine the answer to those questions vary among class members. JA50–51. Accordingly, "the questions of duty and breach favor issue certification because they are questions of law and/or fact common to all class members and subject to common proof." JA56–59. By limiting certification to those issues, the court necessarily ensured that common questions predominated the class action. As Judge Posner has explained, "[i]f there are … only common questions, the issue of predominance is automatically resolved." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 361 (7th Cir. 2012).[4]

With respect to superiority, *Gates* provides a focused framework for considering whether issue certification is the best means of "fairly and

---

[4] The Supreme Court vacated and remanded *Butler* in light of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *See* 569 U.S. 1015 (2013). On remand, the Seventh Circuit reaffirmed its predominance analysis and reinstated its judgment. *See* 727 F.3d 796 (2013).

efficiently advanc[ing] the resolution of class members' claims." *Gates*, 655 F.3d at 273. The *Gates* considerations elaborate on Rule 23(b)(3)'s non-exclusive list of "matters pertinent" to whether a class action is the superior means of adjudication. *Compare* Fed. R. Civ. P. 23(b)(3)(A)–(D) with *Gates*, 655 F.3d at 273. *Gates*'s functional approach does the same work as Rule 23(b)(3)'s superiority requirement: It "ensures that courts will not rely on issue certification where there exist only minor or insignificant common questions, but instead where the common questions render issue certification the superior method of resolution." *Martin*, 896 F.3d at 413.

In this case, the district court determined that issue certification would result in "efficiencies" in resolving critical issues that could not be achieved through "any realistic procedural alternatives." JA60. The court further found no offsetting drawbacks to issue certification. JA60–61. These findings provide a textbook illustration of how applying *Gates* results in issue class certification only when a district court concludes, based on considerations tailored to the issue-class context, that class resolution is superior to individual adjudication of the certified issues.

38

### B. Rule 23(c)(4) certification does not require that a class's cause of action as a whole satisfy Rule 23(b)(3).

Because the district court necessarily determined that the issue class meets the requirements of predominance and superiority as to the certified issues, ECFMG's claim that the certification violates Rule 23(b) depends on its argument that a court may not certify an issue class without first determining whether the class's cause of action, *as a whole*, satisfies Rule 23(b)(3). ECFMG relies on a footnote in the Fifth Circuit's 1996 *Castano* decision stating that an entire "cause of action must satisfy the requirements of Rule 23(b)(3) before individual issues can be certified under Rule 23(c)(4)." 84 F.3d at 745, n.21. ECFMG asks this Court to "read" *Gates* as if it adopted *Castano*'s footnote. ECFMG Br. 35–36. But *Gates*, the text of Rule 23, precedents from other circuits, and the rulemakers' deliberations all contradict ECFMG's argument. A court need not determine that a class's cause of action as a *whole* satisfies Rule 23(b)(3) before certifying only *part* of it.

### 1. *Gates* rejected ECFMG's argument.

In *Gates*, this Court declined to adopt the *Castano* footnote's statement that an issue class may "be certified only when the cause of

action, taken as a whole, meets the predominance requirement." 655 F.3d at 273. The court also declined to endorse specific opinions of other circuits that had rejected *Castano* and instead adopted a multifactor approach drawn from the ALI Principles. *See id.* The considerations *Gates* derived from the Principles require attention to the relationship between the certified issues and other issues in the case to determine whether they can be "separate[d]" and to assess issue certification's impact on the ultimate resolution of the remaining issues. *Id.* Notably, those considerations do *not* include whether the certified issues would predominate if the class's claims were viewed as a whole.

*Gates*'s discussion of issue certification takes as its starting point that the class's claims, viewed as a whole, do *not* satisfy Rule 23(b)(3)'s predominance requirement. *Gates* considered issue certification only after determining the district court had correctly found that the plaintiffs' claims in their entirety did not satisfy predominance. *See id.* at 270–72. *Gates* then addressed whether an issue class may be certified "even if common issues do not predominate" when claims are viewed as a whole. *Id.* at 272. Had the Court intended to adopt a standard precluding certification in those circumstances, that discussion would have been a

40

very short one. Instead, *Gates* addressed at length the considerations that would *permit* issue class certification if it would "fairly and efficiently advance the resolution of class members' claims." *Id.* at 273. *Gates cannot* be "read" to impose a requirement that would have made it unnecessary to elaborate on those considerations.

### 2.    ECFMG's position contradicts Rule 23's text.

ECFMG's argument that Rule 23(b)(3)'s requirements must be satisfied by a class's cause of action as a whole even when only specific issues are certified contradicts the plain terms of the Rule. Rule 23(b) sets forth requirements for a "class action" to be "maintained." Rule 23(c)(4), in turn, allows "an *action*" to be "maintained as a *class action* with respect to particular issues" (emphasis added). In other words, the action is a "class action" *only* as to those issues. A court cannot meaningfully consider whether maintenance of that "class action" satisfies Rule 23(b)(3)'s requirements without taking into account the bounds Rule 23(c)(4) places on the "class action." That is, the court must determine whether a "class action" limited to the certified issues satisfies Rule 23(b), not whether the rest of the action—which is *not* a class action—does so. Accordingly, in applying Rule 23(b)(3) in the context of a Rule 23(c)(4) issues class, a

court must consider whether common questions of law or fact predominate with respect to the issues that fall within the class action, and whether a class action limited to those issues is the superior means of adjudicating them.

As originally adopted, Rule 23(c)(4) made this point explicitly. It stated: "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." Fed. R. Civ. P. 23(c)(4) (1966). As the Second and Fourth Circuits explained, that language means that other provisions of Rule 23 must be applied after taking into account the class action's limitation to particular issues. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006); *Gunnells*, 348 F.3d at 439. This "sequencing directive" was eliminated in 2007 revisions of the Rules, but "the Advisory Committee made clear that the changes to the Rule's language were 'stylistic only.' Fed. R. Civ. P. 23(c)(4) adv. comm. n. to 2007 amend." *Martin*, 896 F.3d at 413.

42

The Rule's structure and context, and the purposes evident from its text, confirm that it cannot be read to allow certification of an issue class only when Rule 23(b)(3) would permit certification of a class's entire cause of action. Rule 23(c)(4)'s broad grant of authority to certify issues "when appropriate" incorporates the "flexibility in application" generally appropriate under Rule 23. *Gunnells*, 348 F.3d at 424 (quoting *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989)). The Rule permits courts to give common treatment to common issues to advance fair and efficient resolution of a case even when a broader certification would be impermissible. *Gates*, 655 F.3d at 273.

Permitting issue certification only when the class's entire cause of action could be certified under Rule 23(b)(3) would undermine that objective and "render[ ] subsection (c)(4) virtually null." *Nassau*, 461 F.3d at 226; *accord Martin*, 896 F.3d at 413. If an entire cause of action satisfied Rule 23(b)(3)'s requirements of predominance and superiority, a district court would not need to certify a narrower issue class. Moreover, under the *Castano* footnote's approach, "a court considering the manageability of a class action—a requirement for predominance under Rule 23(b)(3)(D)—[would have] to pretend that subsection (c)(4)—a

43

provision specifically included to make a class action more manageable—does not exist until after the manageability determination [has been] made." *Nassau*, 461 F.3d at 227 (quoting *Gunnells*, 348 F.3d at 439). Thus, "a court could only use subsection (c)(4) to manage cases that the court had already determined would be manageable *without* consideration of subsection (c)(4)." *Id.* (emphasis added by *Nassau*). Such a reading would leave Rule 23(c)(4) "without any practical application, thereby rendering it superfluous." *Gunnells*, 348 F.3d at 439. Accepting ECFMG's reading would thus violate one of the most basic interpretive canons: that a rule or statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citations and quotation marks omitted).

### 3.   The circuits have rejected ECFMG's rule.

The disconnect between the *Castano* footnote and Rule 23's text and purposes has led all circuits that have addressed the question to reject the view that Rule 23(c)(4) certification is available only when a cause of action, viewed as a whole, satisfies Rule 23(b)(3)'s requirements. *See Martin*, 896 F.3d at 413; *Nassau*, 461 F.3d at 227; *Valentino v. Carter-*

44

*Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *see also Gunnells*, 348 F.3d at 443 (rejecting view that an issue class can be certified only if the entire action meets Rule 23(b)(3)'s requirements).

The Seventh and Eighth Circuits, while not specifically discussing the *Castano* footnote, have—like this Court in *Gates*—adopted a functional approach to issue certification that is irreconcilable with a rigid requirement that Rule 23(b)(3)'s criteria must be assessed with respect to a cause of action as a whole. See *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012); *In re St. Jude Med., Inc.*, 522 F.3d 836, 841 (8th Cir. 2008).

Not even the Fifth Circuit adheres to the *Castano* footnote. In *Castano* itself, the footnote was dicta: the holding was the district court had not properly found predominance or superiority even as to the matters it certified. *See* 84 F.3d at 740–51. More recent Fifth Circuit decisions—especially *In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012), and *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014)—reflect a practical approach to Rule 23(c)(4) in line with that of other circuits.

In *Rodriguez*, the Fifth Circuit affirmed the "narrow class certification" of a Rule 23(b)(2) class on the issue of injunctive relief even

though damages claims arising from the same causes of action did not satisfy Rule 23(b)(3)'s predominance requirement. 695 F.3d at 363. The court stated that "Rule 23(c)(4) explicitly recognizes the flexibility that courts need in class certification by allowing certification 'with respect to particular issues' and division of the class into subclasses." *Id.* at 369 n.13 (quoting *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000)). The court's focus on whether the certified *issue* satisfied Rule 23(b), as opposed to the cause of action as a whole, is incompatible with the *Castano* footnote's dicta.

*Deepwater Horizon* also shows that the Fifth Circuit does not adhere to the *Castano* footnote. Over objections that certification of a class did not comport with Rule 23(b)(3) because common issues did not predominate, *Deepwater Horizon* held that certification was "in accordance with … Rule 23(c)(4)." 739 F.3d at 806; *see also id.* at 815–16. The Fifth Circuit stated that "'determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed.'" *Id.* at 806 n.66 (quoting *Butler v. Sears, Roebuck & Co.*, 727

46

F.3d 796, 800 (7th Cir. 2013) (Posner, J.), *cert. denied*, 571 U.S. 1196 (2014)). *Deepwater Horizon* approvingly cited decisions of "many circuits" that had "divided and tried" "common and individual issues" "by means of … Rule 23(c)(4), which permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination." *Id.* at 816. The decision never once cited *Castano*.

Academic authorities have noted the circuits' "emerging consensus" on a practical approach to Rule 23(c)(4) issue certification that does not depend on whether a cause of action as a whole meets the Rule 23(b)(3) criteria.[5] As Professor Samuel Issacharoff (Reporter of the ALI Principles of the Law of Aggregate Litigation relied on by this Court in *Gates*) and Elizabeth Cabraser have put it, "The world has moved since *Castano*."[6] The view of the circuits aligns with that of major treatises on civil procedure and class actions, which agree that Rule 23(c)(4) certification

---

[5] *See, e.g.*, Elizabeth Chamblee Burch, *Constructing Issue Classes*, 101 Va. L. Rev. 1855, 1892 (2015).

[6] Elizabeth J. Cabraser & Samuel Issacharoff, *The Participatory Class Action*, 92 N.Y.U. L. Rev. 846, 871 (2017).

should depend on the practical benefits of class resolution of a common

issue.[7]

### 4.    The rulemakers rejected ECFMG's proposed approach.

The recent rejection of possible amendments to Rule 23(c)(4) by the

Advisory Committee on Civil Rules reflects the rulemakers' satisfaction

with the circuits' agreement on a flexible approach to issue certification.

The Advisory Committee's Rule 23 Subcommittee began considering

whether to amend Rule 23(c)(4) in August 2014, when a group of

corporate counsel and defense bar practitioners proposed amending the

Rule to incorporate the *Castano* footnote's approach.[8] After considering

the issue, the Subcommittee reported in 2015 that "recent reports suggest

that all the circuits are coming into relative agreement that in

appropriate cases Rule 23(c)(4) can be used even though full Rule 23(b)(3)

---

[7] *See, e.g.* 2 Newberg on Class Actions § 4:91; 5 James Wm. Moore, Moore's Federal Practice § 23.86 (3d ed. 2011); Jay Tidmarsh & Roger H. Trangsrud, *Modern Complex Litigation* 490 (2d ed. 2010).

[8] Lawyers for Civil Justice, Repairing the Disconnect Between Class Actions and Class Members: Why Rules Governing "No-Injury" Cases, Certification Standards for Issue Classes, and Notice Need Reform (Aug. 13, 2014), http://www.uscourts.gov/file/17648/download.

certification is not possible due to the predominance requirement."[9] The
Advisory Committee concurred that the courts are "converging on the
view that predominance is required only as to the issues."[10]

Thereafter, the Subcommittee took amending Rule 23 to embody the
*Castano* footnote off the table but continued to consider amending Rule 23
to confirm that predominance as to an entire claim is *not* a prerequisite to
Rule 23(c)(4) certification.[11] It concluded such an amendment was
unnecessary, because "[t]he various circuits seem to be in accord about
the propriety of [issue class] treatment '[w]hen appropriate,' as Rule
23(c)(4) now says."[12] The Advisory Committee accordingly advised the
Standing Committee on Rules of Practice and Procedure that there was

---

[9] Rule 23 Subcomm. Report 39, in Advisory Comm. on Civ. Rules, Agenda
Book, April 9–10, 2015, at 281 (emphasis added),
https://www.uscourts.gov/sites/default/files/fr_import/CV2015-04.pdf.

[10] *Id.* at 41.

[11] Rule 23 Subcomm., Introductory Memorandum for Mini-Conference on
Rule 23 Issues, Sept. 11, 2015, at 40, in Advisory Comm. on Civ. Rules,
Agenda Book, Nov. 5–6, 2015, at 226, https://www.uscourts.gov/
sites/default/files/2015-11-civil-agenda_book.pdf.

[12] Rule 23 Subcomm. Report 4, in Advisory Comm. on Civ. Rules, Agenda
Book, Nov. 5–6, 2015, at 5, https://www.uscourts.gov/
sites/default/files/2015-11-civil-agenda_book.pdf.

no need to amend Rule 23(c)(4).[13] The Rule 23 amendments the Standing Committee sent the Supreme Court in 2017 therefore did not change Rule 23(c)(4).[14] ECFMG's request that this Court adopt the *Castano* footnote would undo the results of the Advisory Committee's careful deliberations.

### 5.    ECFMG's argument would entitle it at most to remand.

ECFMG concedes that common liability issues may predominate over individual issues of causation and damages when a cause of action is viewed as a whole. Br. 34. Thus, even under ECFMG's approach, the Rule 23(c)(4) certification here would be permissible on such a finding. The district court's enumeration of the benefits of issue certification leaves little doubt that it would make such a finding, but if there were any doubt, the district court should have the opportunity to consider the issue if this Court reversed the course set in *Gates* and adopted the *Castano* footnote.

---

[13] *See* Comm. on Rules of Practice and Procedure, Minutes, Jan 7, 2016, at 11–12, https://www.uscourts.gov/file/20044/download; Advisory Comm. on Civ. Rules, Report to the Standing Committee, Dec. 11, 2015, at 27 (emphasis added), https://www.uscourts.gov/sites/default/files/2015-12-11-cv_rules_committee_report_0.pdf.;

[14] *See* Comm. on Rules of Practice and Procedure, Minutes, June 12–13, 2017, at 27–28, https://www.uscourts.gov/file/24103/download.

## III. The district court did not abuse its discretion under Gates.

### A. The district court thoroughly considered the *Gates* factors.

ECFMG contends the district court's analysis was insufficiently rigorous, because "only four paragraphs of the opinion discuss whether Rule 23(c)(4) and *Gates* permit the certification ordered by the district court." Br. 40. ECFMG paints the district court's detailed certification decision in a false light. The court cited or discussed *Gates* throughout its opinion. *See* JA41–43, JA56, JA57, JA59–62. It addressed several *Gates* factors before the lengthy paragraphs (spanning four full pages) that ECFMG identifies. For example, the substantive law underlying the claim (including choice of law) is thoroughly addressed earlier in the opinion, at JA43–46.

No precedent sets a threshold on the number of pages a rigorous analysis requires. *Gates* itself spent four paragraphs applying the factors it adopted. *Gates*, 655 F.3d at 273–74. The district court's comprehensive discussion of the *Gates* factors reflects no abuse of discretion.

## B.    Plaintiffs addressed choice of law.

ECFMG confuses the burden of showing certification is warranted with the burden of addressing conflicts of law. Plaintiffs bear the latter burden *only when* the defendant first demonstrates that multiple bodies of law apply. *See, e.g.*, Principles of the Law of Aggregate Litigation § 2.05 cmt. f (2020); Patrick Woolley, *Choice of Law and the Protection of Class Members in Class Suits Certified Under Federal Rule of Civil Procedure 23(b)(3)*, 2004 Mich. St. L. Rev. 799, 811 (2004). Under Pennsylvania law, a class-action defendant has the burden of showing that the law of another state applies or, if it does, that a true conflict exists. *See, e.g.*, *Parsky v. First Union Corp.*, 51 Pa. D. & C.4th 468, at 12 & n.28 (Com. Pl. 2001).

Though it was not their burden to do so, Plaintiffs demonstrated that choice-of-law considerations support certification. ECFMG claims Plaintiffs did nothing more than state they were unaware of meaningful conflicts. Br. 42. That is false. In their certification motion, Plaintiffs showed that Pennsylvania choice-of-law rules would resolve any conflict in favor of Pennsylvania law. JA194–95. As Plaintiffs explained, Pennsylvania abandoned the *lex loci delicti* rule in favor of a more flexible

interest- and policy-based analysis, under which "'the state in which injury occurred, as such, has relatively little interest in the measure of damages to be recovered unless it can be said with reasonable certainty that defendant acted in reliance on that state's rule.'" JA195 (quoting *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964)). Plaintiffs argued that there is no evidence ECFMG relied on the law of any other state in certifying Igberase, and that "'the reliance argument is almost totally untenable'" in negligence cases. *Id.* (quoting *Griffith*).

ECFMG's response ignored this language in *Griffith*. ECFMG pointed to one alleged difference between Pennsylvania and Maryland law—that Maryland doesn't recognize the tort of negligent infliction of emotional distress. ECFMG ignored that Maryland allows emotional distress damages in negligence actions without bodily injury. *See Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1066 (Md. Ct. Spec. App. 1986). ECFMG did not establish that this difference was a true conflict requiring application of interest analysis; rather, as the district court recognized (Tran. 43:24–25), it simply asserted that Maryland's interest was greater, without enumerating and weighing Pennsylvania's.

JA732. ECFMG never argued that section 148 of Restatement (Second) of Conflicts of Law was implicated, as it does here.

Plaintiffs replied that ECFMG's claimed conflict was a *false* one "because Pennsylvania has a strong interest in regulating the conduct of its domiciliary corporations by applying its substantive tort law, and other jurisdictions have no interest in applying their own law when doing so would limit their citizen's right to recover, to the benefit of a foreign corporation. JA1357–1358 (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187–88 (3d Cir. 1991)). Subclassing under Rule 23(c)(5) can resolve true conflicts that might arise. JA1358. ECFMG's sur-reply did not respond to the latter point or weigh Pennsylvania's interest, but instead speculated about Maryland's interest in protecting its physicians from claims for negligent infliction of emotional distress, which is irrelevant here. JA1378.

At the certification hearing, Plaintiffs again explained the absence of a true conflict. JA1386 at 6:21–7:10. ECFMG acknowledged that even under its theory, only a few states' laws could be applied, because class members were treated by Igberase only in Maryland and the District of Columbia. JA1422 at 42:9–18. The district court thus had the benefit of

considerable argument on choice of law in Plaintiff's brief and the

hearing.

### C.    The district court did not abuse its discretion in determining that Pennsylvania law applies.

The district court's analysis was not "cursory" (Br. 42), nor did it

merely "rely[] on the representation" (*id.*) that Plaintiffs were unaware of

relevant conflicts. The court did not require ECFMG to demonstrate how

meaningful variations in state law precluded certification (although it

could properly have done so). Rather, it inquired into choice of law

extensively at the hearing. JA1386 at 6:21–7:18, JA1420 at 40:8–47:19. It

then independently and carefully analyzed the applicable law. JA43–46.

The court found no real differences in the elements of

negligence/negligent inflection of emotional distress in the laws of

Pennsylvania and DC. It added, for the sake of completeness—not as an

allocation of burden—that the parties had identified no such differences.

JA45. Although Maryland does not recognize negligent infliction of

emotional distress as a distinct claim, the court correctly recognized

Maryland permits recovery for emotional distress arising out of

negligence. JA45 (citing *Hamilton v. Ford Motor Credit Co.*, 502 A.2d

1057, 1066 (Md. Ct. Spec. App. 1986)). Thus, the court concluded, there

were no true conflicts of law. *Id.* Even if there were, the court explained, Pennsylvania has a more significant relationship to the case, which concerns ECFMG's conduct, not Igberase's. JA45–46.

ECFMG never addresses these findings directly. Instead, it argues for the first time that Section 148 of the Restatement (Second) of Conflict of Laws applies here. Section 148 only applies where "the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations." Restatement (Second) Conflicts of Law § 148(a) & cmt.a, c. Plaintiffs do not assert claims of fraud or misrepresentation against ECFMG, nor do they seek recovery for pecuniary harm. *See, e.g.*, JA391 at 26:13–25. It was hardly an abuse of discretion for the district court not to consider a plainly inapplicable section of the Restatement that was never presented to it.

Finally, ECFMG suggests that applying Pennsylvania law will give rise to "difficult constitutional questions under the Commerce Clause." Br. 45. The sole case it cites concerns whether a Connecticut beer-pricing statute unconstitutionally discriminated against interstate commerce. *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 335 (1989). *Healy* nowhere discusses choice of law. ECFMG never shows how applying Pennsylvania

56

law to a Pennsylvania corporation's conduct in Pennsylvania would discriminate against interstate commerce.

## D. There is no per se bar on issue certification of claims involving emotional harm.

ECFMG falsely claims the district court did not consider "the type of claim(s) and issues in question." The district court recognized this factor as part of the *Gates* analysis. JA42. It considered the elements of negligence and negligent infliction of emotional distress, JA45, addressed commonality, adequacy and typicality in light of those elements, JA50–55, and considered the nature of the claims in refusing to certify the issue of liability for classwide treatment. JA58. The court likewise considered the nature of the claims in certifying issues of duty and breach, which, it explained, were common to all class members. JA60.

ECFMG, however, asserts that Rule 23(c)(4) categorically excludes certification of any issue arising from a claim for emotional distress damages. Br. 15 ("Plaintiffs' request for damages for emotional distress should have foreclosed class certification.") This assertion is contrary to first principles. The Federal Rules of Civil Procedure are trans-substantive. *See, e.g.*, Stephen B. Burbank, *The Rules Enabling Act of 1934*, 130 U. Pa. L. Rev. 1015, 1108 (1982). Rule 23 does not apply to

some kinds of actions but not others. *Id.* Instead, Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

The authorities ECFMG cites do not support its argument. *Spence v. Board of Education of Christina School District*, 806 F.2d 1198 (3d Cir. 1986), was not a class action, but an individual claim for retaliatory transfer. The issue on appeal concerned the application of *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494 (1931), to determine whether damages could be *re-tried* on a limited factual presentation, in the context of "a tangled and complex fact situation." *Id.* at 1202. Unlike this case, the plaintiff sought punitive damages, which would require presenting evidence of the entirety of defendant's conduct in a damages retrial. *Id.*

*Spence* did not hold that emotional distress liability and damages are *always* "'too interwoven to allow a fair determination of damages apart from liability.'" Br. 47 (quoting *id.* at 1202). *Spence* held only that the district court had not abused its discretion in not allowing a damages-only retrial on that record, 806 F.2d at 1202—not that a district court

cannot try issues of liability and emotional distress damages separately in a class action. And it did not hold that issues of duty and breach within liability could not be tried separately from causation and damages where, as here, the facts bearing on the defendant's breach of duty have little bearing on whether particular individuals suffered compensable harm.

No reported decision has applied *Spence* to bar certification and trial of liability (much less issues within liability) separately from damages. Although "[t]he universal requirement of a causal link between liability and damages means that the issues can never be completely unlinked ... it is clear that in many cases damages may justly be tried apart from liability." *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 461 (3d Cir. 2001). The Federal Rules of Civil Procedure "expressly authorize such separate trials." *Id.* at 461 n.9 (citing Fed R. Civ. P. 42(b)).

Courts in this and other circuits often try or re-try liability and emotional harm damages separately. In *Gunnells*, the Fourth Circuit affirmed an order granting issue-class certification, where mini-trials on proximate cause and damages, including emotional distress damages, would have followed the class trial on the certified issues. *See Gunnells*, 348 F.3d at 426–30, 454–56; *see also Walters v. Mintec/Int'l*, 783 F.2d 73,

59

82 (3d Cir. 1985) (ordering new trial on emotional and pecuniary damages only in wrongful death claim); *Martell v. Boardwalk Enters., Inc.*, 748 F.2d 740, 755 (2d Cir. 1984) (permitting retrial on damages including psychological injury where first jury answered special interrogatories on liability); *see also Rosa v. City of Chester*, 278 F.2d 876, 882 (3d Cir. 1960) ("Federal appellate and district courts have time and again ordered new trials as to damages only.").

*Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228 (11th Cir. 2000) is wholly distinguishable. It concerned a putative class action under 42 U.S.C. § 1981 that the district court certified under Rule 23(b)(3), not (c)(4). Classwide determination of whether a hypothesized policy of racial discrimination existed would not have resolved *any* elements of the § 1981 action, because individual proof of intentional racial discrimination would still have been required. By contrast, all class members stand on the same legal footing vis-à-vis ECFMG, allowing classwide resolution of issues of duty and breach that will materially advance the litigation.

Similarly, the Seventh Circuit's decision in *Aiello v. Providian Financial Corp.*, 239 F.3d 876 (7th Cir. 2001) does not hold categorically "that a case seeking recovery for emotional distress 'is not suitable for

class action treatment.'" Br. 49. There, a debtor sought emotional harm damages under 11 U.S.C. § 362(h) after a creditor sent her a letter requesting reaffirmation of a debt after a bankruptcy stay. *Aiello* affirmed dismissal of her individual claim because, it held, financial loss is a prerequisite to any recovery under that statute. *Aiello*, 239 F.3d at 881. The court then briefly affirmed denial of class certification on the grounds that class counsel were inadequate and that, in light of the insubstantiality of the claimed injuries and the variances among class members, certification would be inefficient and excessively costly. *Id.* Those circumstances are not present here, and *Aiello* says nothing about issue certification.

ECFMG wrongly claims the ALI Principles "recognize that aggregate treatment of narrow issues in personal injury claims is rarely appropriate." Br. 48. On the contrary, section 2.01 of the Principles, on which ECFMG relies, says "[c]ommon issues are those legal or factual issues that are the same in functional content across multiple civil claims, regardless of whether their disposition would resolve all contested issues in the litigation." Here, duty and breach are the same in functional content across all claims. Indeed, ECFMG has not challenged the district

court's findings that these are common issues. Moreover, the district court expressly found that these issues are not intertwined with issues that are not common, such as individualized defenses.

This Court has consistently held that individualized damages determinations "do not ordinarily preclude the use of the class action device." *See, e.g.*, *In re Suboxone*, 967 F.3d at 272. Such determinations presuppose classwide resolution of issues of duty and breach favorable to the plaintiffs. In this case, if the class prevails on these issues, factfinders in subsequent damages proceedings will consider evidence concerning Igberase's treatment of individual class members and the emotional harm his conduct and revelations that he was an impostor caused, while giving findings as to ECFMG's breach of duty preclusive effect. Because ECFMG's conduct determines its responsibility but not whether Plaintiffs' interactions with Igberase resulted in compensable emotional harm, juries will not need to reexamine ECFMG's conduct in damages proceedings. Thus, an issues trial centered on ECFMG's negligent conduct, followed by proceedings focused on individual injury and damages, appropriately "carve[s] at the joint" in this action. *Gates*, 655 F.3d at 273.

## E.    Considerations of efficiency favor issue certification.

The district court correctly found that issue certification of duty and breach would be efficient. In Pennsylvania, "[t]he existence of a duty is a question of law for the court to decide." *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005). And the answer to that question is common to all class members because they stand in the same legal relationship to ECFMG. A single determination of that legal question is obviously more efficient than repeated proceedings.

The amicus brief of the medical societies erroneously argues that duty must be determined on a plaintiff-by-plaintiff basis. AMA, et al. Br. 9–13. Relying on Circuit case law, the district court correctly found that the existence of a duty does not turn on the foreseeability of a particular plaintiff's damages. *See* JA49–50. Rather, duty is predicated on the parties' relationship, which does not vary among class members. *Id.*[15]

A class jury's determination on all issues of breach will likewise spare the court and the parties from the need for repetitive presentation

---

[15] The medical societies then essentially argue there should be no negligence cause of action against ECFMG. (AMA Br. 14–18.) This question is not before the Court. Again, Rule 23 must be applied trans-substantively.

of voluminous documentary evidence and witness testimony. Class resolution also avoids potentially inconsistent determinations on breach of duty.

ECFMG incorrectly argues that "every jury in every individual proceeding would need to hear essentially all of the evidence that Named Plaintiffs propose to present at the class proceeding" to "understand who Dr. Akoda [*sic*] was," comprehend "the theory of liability," and "determine causation." Br. 50. The limited role of juries in individual damages proceedings does not require they understand the full story of Igberase's deception and ECFMG's liability. Basic facts concerning what ECFMG is and its connection to Igberase can be provided to the jury by stipulation or a class jury's answers to special interrogatories. *See* Fed R. Civ. P. 49. Providing such summary information will unquestionably be more efficient than repeated full-blown trials.

Such proceedings will not implicate the Seventh Amendment's Reexamination Clause: "the Seventh Amendment prohibition is not against having two juries review the same evidence, but rather against having two juries decide the same essential issues." *In re Paoli R.R. Yard*

*PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (citation and quotes omitted).

ECFMG also misunderstands the causation inquiry. The question for juries in individual causation/damages proceedings will be whether ECFMG's negligence was *a* factual cause of Plaintiffs' injuries, not whether it was *the* proximate cause among other supposed causes (e.g., decisions of medical boards or hospital credentialing committees that relied in part on information supplied by ECFMG). *See Grainy v. Campbell*, 425 A.2d 379, 383 (Pa. 1981) (Nix, J., concurring).[16] ECFMG presented no evidence below that another person's *negligence* allowed Igberase to treat patients.

ECFMG incorrectly analogizes the issue certification in this case to that proposed in *Gates*. There the class alternatively proposed issue certification on liability with respect to medical monitoring and property

---

[16] Pennsylvania courts use the term "factual cause," not proximate cause. Negligence "is a factual cause of harm when the harm would not have occurred absent the conduct. … To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected. … *The fact that some other causes concur with [name of defendant]'s negligence in producing an injury does not relieve [name of defendant] from liability as long as [his] [her] own negligence is a factual cause of the injury.*" Pa. SSJI (CIV), 13.20 (emphasis added); *see also Gorman v. Costello*, 929 A.2d 1208, 1212 (Pa. 2007).

damage claims, solely with regard to vinyl chloride exposure through a single pathway. This Court concluded that "a trial on whether the defendants discharged vinylidene chloride into the lagoon that seeped in the shallow aquifer and whether the vinyl chloride evaporated from the air from the shallow aquifer is unlikely to substantially aid resolution of the substantial issues on liability and causation." 655 F.3d at 274. The issue class certification here, by contrast, will meaningfully advance ultimate termination of the litigation by resolving the central issues of duty and breach of duty for all class members on all theories. The benefits of class resolution of these key issues are not negated by ECFMG's speculative references to possible "affirmative defenses" (Br. 50) to individual claims. *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002).

### F.    ECFMG's alarmism concerning issue-class certification is unfounded.

ECFMG concludes its brief by asserting that "under the district court's approach to Rule 23(c)(4), the entire certification inquiry effectively reduces to commonality." Br. 53. This "error" is allegedly "confirmed" by the court's statement that *one reason* for certifying duty and breach is that they are common to all class members and subject to

common proof. But the district court did not merely analyze commonality. It also analyzed all of the Rule 23(a) requirements, JA48–56, and it reviewed all of the *Gates* factors in determining that class resolution of the common issues was the most efficient means of resolving the case. *See* JA41–43, JA56, JA57, JA59–62. Moreover, the district court rejected certification of the issue of liability under Rule 23(c)(4), despite strong commonality of issues. The district court's scrupulous application of *Gates* clearly does not prefigure class certification in any case presenting a common issue.

## CONCLUSION

This Court should affirm the district court's order.

Respectfully submitted,

Dated: November 2, 2020

JANET, JANET & SUGGS, LLC

/s/ Patrick Thronson
  Patrick A. Thronson
  Brenda A. Harkavy
  4 Reservoir Circle, Suite 200
  Baltimore, MD 21208
  (410) 653-3200

PUBLIC CITIZEN LITIGATION GROUP
  Scott L. Nelson
  1600 20th St. NW
  Washington, D.C. 20009
  (202) 588-1000

67

LAW OFFICES OF PETER G.
ANGELOS, P.C.
  Paul M. Vettori
  One Charles Center
  100 N. Charles Street, 20th
  Floor Baltimore, Maryland
  21201
  (410) 649-2000

SCHOCHOR, FEDERICO
AND STATON
  Brent Ceryes
  The Paulton
  1211 St. Paul Street
  Baltimore, Maryland 21202
  (410) 234-1000

CONRAD O'BRIEN PC
  Nicholas M. Centrella
  Robin S. Weiss
  1500 Market Street, Suite 3900
  Philadelphia, PA 19102-2100
  (215) 864-9600

Z LAW, LLC
  Cory L. Zajdel
  2345 York Rd. Suite B-13
  Timonium, MD 21093
  (443) 213-1977

*Attorneys for Appellees*

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, Patrick A. Thronson, counsel for Appellees, certify, pursuant to Local Appellate Rule 28.3(d), that I am a member in good standing of the Bar of this Court.

I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)–(7), and Local Appellate Rule 31.1(c) and 32.1(c), that the foregoing Brief of Appellees Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans, on behalf of themselves and all others similarly situated, is proportionately spaced and has a typeface of 14-point Century Schoolbook, contains 12,998 words, and that the text of the electronic brief is identical to the text of the paper copies.

I further certify, pursuant to Local Appellate Rule 31.1(c), that Bitdefender Endpoint Security did not detect a virus in this filing.

Dated: <u>November 2, 2020   </u>          <u>/s/ Patrick Thronson   </u>
                                          Patrick A. Thronson

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, the foregoing Brief of Appellees Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans, on behalf of themselves and all others similarly situated, was filed with the Clerk of Court for the U.S. Court of Appeals for the Third Circuit through the Court's CM/ECF system. All counsel of record are registered CM/ECF users

William R. Peterson
Morgan, Lewis & Bockius, LLP
1000 Louisiana St., Suite 400
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Dated: <u>November 2, 2020</u>

<u>/s/ Patrick Thronson</u>
Patrick A. Thronson