# No. 20-2128

## In the United States Court of Appeals
## For the Third Circuit

MONIQUE RUSSELL; JASMINE RIGGINS;
ELSA M. POWELL; DESIRE EVANS

v.

EDUCATIONAL COMMISSION FOR FOREIGN
MEDICAL GRADUATES,

*Appellant*

On Appeal from the United States District Court for the
Eastern District of Pennsylvania, No. 2:18-cv-05629-JDW (Wolson, J.)

## REPLY BRIEF

MORGAN, LEWIS & BOCKIUS LLP
    Brian W. Shaffer
    Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103
(215) 963-5000

MORGAN, LEWIS & BOCKIUS LLP
    William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

***Counsel for Appellant***

# TABLE OF CONTENTS

**Page**

Table of Citations ................................................................................. iii

Argument in Reply ................................................................................1

I.  The District Court Erred in Analyzing Rule 23(a). ........................2

    A.  The district court did not find—and Named Plaintiffs did not show—that their alleged emotional distress is typical of the class. .............................................................................2

    B.  Named Plaintiffs propose to inflict emotional distress on class members ..................................................................6

    C.  Named Plaintiffs seek to certify only claims for emotional distress. .............................................................................8

II. The District Court Erred by Certifying a Class Without Finding Rule 23(b) Satisfied ..............................................................................9

    A.  Named Plaintiffs do not dispute that class certification requires satisfaction of at least one prong of Rule 23(b). ..................10

    B.  Named Plaintiffs' theory—that the district court made implicit findings under Rule 23(b)(3)—is meritless. ..........11

    C.  In determining whether Rule 23(b)(3) has been satisfied, a court cannot look only at the issue(s) to be certified. ..........13

III. The District Court Erred in Analyzing the *Gates* Factors. ...........16

    A.  The district court erred in analyzing choice of law and conflict of laws. ..............................................................16

    B.  The district court failed to consider the type of claim at issue and the fact that emotional distress claims introduce numerous individualized questions that make the claims here particularly ill-suited for class treatment....................19

# TABLE OF CONTENTS
(continued)

**Page**

C. Named Plaintiffs' analysis of efficiencies is incorrect.........................23

D. The district court reduced issue certification to commonality. ........................................................................27

Conclusion & Prayer for Relief ..............................................................28

Certificate of Bar Membership, Compliance with Type-Volume Limitation and Typeface Requirements, and Virus Check.........................................29

Certificate of Service ...............................................................................30

# TABLE OF CITATIONS

**Page(s)**

## CASES

*Aiello v. Providian Fin. Corp.*,
   239 F.3d 876 (7th Cir. 2001) ...............................................................22

*Betz v. Pneumo Abex, LLC*,
   44 A.3d 27 (Pa. 2012)..........................................................................25

*Carey v. Piphus*,
   435 U.S. 247 (1978)..............................................................................20

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ...............................................................17

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)........................................................................10, 15

*Ferreras v. Am. Airlines, Inc.*,
   946 F.3d 178 (3d Cir. 2019) ................................................................10

*Gasoline Prods. Co. v. Champlin Ref. Co.*,
   283 U.S. 494 (1931)..............................................................................21

*Gates v. Rohm & Haas Co.*,
   655 F.3d 255 (3d Cir. 2011) .......................................................*passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)................................................................................3

*Gonzalez v. Corning*,
   885 F.3d 186 (3d Cir. 2018) .............................................................2, 12

*Grandalski v. Quest Diagnostics Inc.*,
   767 F.3d 175 (3d Cir. 2014) ................................................................18

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ........................................................22, 23

# TABLE OF CITATIONS
(continued)

**Page(s)**

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989)....................................................................17

*Hohider v. United Parcel Serv., Inc.*,
    574 F.3d 169 (3d Cir. 2009) ............................................................12

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) .......................................................18

*Kornfeind v. New Werner Holding Co.*,
    2020 PA Super 266, 2020 WL 6555158 (Nov. 9, 2020)...................16

*In re Lamictal Direct Purchaser Antitrust Litig.*,
    957 F.3d 184 (3d Cir. 2020) ............................................................24

*Luppino v. Mercedes Benz USA*,
    718 F. App'x 143 (3d Cir. 2017) .....................................................15

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ............................................................15

*In re Modafinil Antitrust Litig.*,
    837 F.3d 238 (3d Cir. 2016) ..............................................................2

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ..............................................................4

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) .............................................................3

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) .............................................................3

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ..............................................................3

*Pryer v. C.O. 3 Slavic*,
    251 F.3d 448 (3d Cir. 2001) ............................................................21

## TABLE OF CITATIONS
(continued)

**Page(s)**

*Pullman-Standard v. Swint,*
    456 U.S. 273 (1982)...................................................................5, 19

*In re Sch. Asbestos Litig.,*
    789 F.2d 996 (3d Cir. 1986) ..............................................17

*Spence v. Bd. of Educ. of Christina Sch. Dist.,*
    806 F.2d 1198 (3d Cir. 1986) .............................................20

*Sprint/United Mgmt. Co. v. Mendelsohn,*
    552 U.S. 379 (2008).........................................................19

*Taylor v. Johnston,*
    985 P.2d 460 (Alaska 1999) .............................................1

*Vattimo v. Lower Bucks Hosp., Inc.,*
    465 A.2d 1231 (Pa. 1983)................................................25

## RULES

Fed. R. Civ. P. 23 ...........................................................*passim*

## OTHER AUTHORITIES

1 Newberg on Class Action § 3:43 (5th ed., June 2020 Update) ............................5

Restatement (Second) of Conflict of Laws (1971)
    § 146.............................................................................16
    § 148.............................................................................16

Restatement (Second) of Torts § 433 (1965).........................................25

# ARGUMENT IN REPLY

To decide this appeal, it is critical that this Court understand the precise claims at issue. To proceed as a class, Named Plaintiff have limited themselves to a single theory: After consenting to[1] and receiving (for some, life-saving) medical treatment from a fully licensed, board-certified physician, Named Plaintiffs allege class members suffered emotional distress when they learned (primarily from plaintiffs' counsel and years after their treatments) that their doctor pleaded guilty to misuse of a Social Security number.

Named Plaintiffs limited themselves to this theory because any claim for an injury sustained at the time of treatment by Dr. Akoda would, undeniably, be barred by limitations. The disturbing allegations recited in Named Plaintiffs' brief— "touch, harass, and sexually abuse," "examinations of a sexual nature," "wrongful touching," "violate [women]," Appellees' Br. 2, 9, 10, 11—are not the basis for their claims against ECFMG.

The class's claims must stand or fall with their emotional-distress-from-information theory of liability, and the district court's decision to certify the class under Rule 23(c)(4) must similarly be reviewed in light of this theory.

---

[1] Named Plaintiffs' theory that there has been no consent is meritless. Appellees' Br. 11. It is well established that an argument that a licensed physician should not have been licensed does not vitiate consent to treatment. *See* ECFMG Br. 28 n.8 (citing *Taylor v. Johnston*, 985 P.2d 460, 465–66 (Alaska 1999), which involves indistinguishable facts).

When read closely, Named Plaintiffs' brief has no answer to ECFMG's arguments. Key cases cited by ECFMG in its opening brief—such as *Gonzalez v. Corning*, 885 F.3d 186 (3d Cir. 2018)—are undiscussed and uncited by Named Plaintiffs. ECFMG's arguments go unanswered because they are unanswerable. Certification should be reversed.

## I. The District Court Erred in Analyzing Rule 23(a).

### A. The district court did not find—and Named Plaintiffs did not show—that their alleged emotional distress is typical of the class.

The district court did not find (and Named Plaintiffs failed to establish) that their alleged injury—emotional distress upon learning of Dr. Akoda's guilty plea—is typical of class members. ECFMG Br. 18–22. If Named Plaintiffs' purported emotional distress is atypical and unusual, then Rule 23(a) was not satisfied.

Named Plaintiffs' first argue that it is irrelevant whether their injuries are typical. Appellees' Br. 22–26. Under their theory, even if Named Plaintiffs had unusual reactions and were the only class members who suffered emotional distress upon learning of the guilty plea, a class of (almost entirely) uninjured plaintiffs could still have been certified. Such a result is facially absurd.

Rule 23(a)(3) makes clear that plaintiffs must show their claims "are typical of the claims . . . of the class." Fed R. Civ. P. 23(a)(3); *In re Modafinil Antitrust*

*Litig.*, 837 F.3d 238, 248 (3d Cir. 2016) (requiring proof by a preponderance).[2] There is no basis to exempt the fact of injury from this requirement.

Named Plaintiffs complain that satisfying typicality would require "an entirely unworkable process," including "hundreds of depositions of class members." Appellees' Br. 26. But such a burden presumably could be addressed via appropriate expert testimony or other statistical evidence. And the rule has not proven unworkable in the numerous cases applying it.[3]

If it is "unworkable" for Named Plaintiffs to satisfy typicality here, then the answer is to deny certification, not abandon the requirement of typicality.

---

[2] The requirement of proof by a preponderance refutes Named Plaintiffs' argument that it is sufficient that "the Plaintiffs' claims arise from the same facts and legal theories as members of the class." JA53. Rule 23 is not about a plaintiff's legal theory—it is not a pleading standard; it requires proof by evidence.

[3] *See, e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982) (finding typicality lacking for failure to prove, *inter alia*, "the existence of a class of persons who have suffered the same injury" as the named plaintiff); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (finding typicality satisfied because class members "suffered the same injury" and "suffered the same generic type of harm" as the class representatives); *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (finding typicality satisfied because each class member faced substantial risk of serious harm from the challenged policies); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (finding typicality lacking where many class members suffered no injury from alleged deception). Each decision considered the existence of the alleged harm as part of analyzing typicality. Named Plaintiffs' efforts to distinguish them fail.

Named Plaintiffs also argue that Rule 23(c)(4) exempts them from satisfying typicality because injury was not a certified issue. Appellees' Br. 26. But Rule 23(a) is not limited to the certified issues—it requires typicality in the "claims."

Named Plaintiffs contend it is "paradoxical[]" to suggest that there may be "uninjured (atypical) class members" if emotional distress must be "a typical reaction." Appellees' Br. 24. This is a non-sequitur. "Typical" does not mean "uniform." Just as it may be that Named Plaintiffs' alleged emotional distress is an atypical reaction and the class is largely uninjured, it also may be that emotional distress is a typical reaction but some class members were (atypically) uninjured.

Named Plaintiffs misread *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410 (3d Cir. 2016). Appellees' Br. 24. That case involved a class action settlement in which the typicality of injury—head injuries and related cognitive disorders associated with playing football—was supported by ample scientific evidence. 821 F.3d at 421–22. Indeed, plaintiffs' whole case was premised on their showing that playing football predictably leads to head injuries and related cognitive disorders. *Id.* at 420–21. The decision offers no support for Named Plaintiffs.

Their reliance on *Newberg on Class Actions* is similarly misplaced. The cited section explains that "the amount of damages" may vary between class members without defeating typicality, but it emphasizes that the "critical inquiry" on typicality

is "whether the proposed representative's claims are qualitatively similar to those of the class." 1 Newberg on Class Action § 3:43 (5th ed., June 2020 Update). If injury is atypical, then Named Plaintiffs' claims are not "qualitatively similar" to those of the class.

In the alternative, Named Plaintiffs contend that even if the district court failed to find typicality, this Court can affirm because they presented evidence from which the district court **could have** made this finding. *See* Appellees' Br. 27 (discussing a purported expert report by Dr. Annie Steinberg).[4]

The argument fails legally and factually. Plaintiffs never argued (and the district court did not find) that this report had any bearing on the class certification analysis generally or the typicality inquiry specifically. Legally, it is "elementary" that this Court cannot affirm based on a finding that the district court did not make— when findings are infirm, "a remand is the proper course unless the record permits only one resolution of the factual issue." *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982).

Factually, Dr. Steinberg's report is worthless. ECFMG's rebuttal expert, Dr. Susan McDonald, explained that Dr. Steinberg's survey "is not simply amateurish"

---

[4] Note the incongruity of Named Plaintiffs simultaneously arguing (1) that the typicality standard as argued by ECFMG is unworkable and impossible to satisfy; and (2) that they satisfied it.

but "so methodologically deficient and so biasing as to lack validity as a survey measurement tool." JA1186. And to the extent the survey is credited, it hardly supports Named Plaintiffs—most respondents indicated that they either experienced no emotional distress or experienced emotional distress **before** learning of Dr. Akoda's guilty plea, JA587, which does not support Named Plaintiffs' claims for emotional distress from learning of the guilty plea. Named Plaintiffs' failure to prove that their alleged injury is typical requires reversal of class certification.

**B.    Named Plaintiffs propose to inflict emotional distress on class members.**

As ECFMG explained in its opening brief, if Named Plaintiffs' theory were correct—and learning of Dr. Akoda's guilty plea causes emotional distress—then sending notice of the class would inflict injury on class members. ECFMG Br. 22–24. Because Named Plaintiffs seek to inflict emotional distress on unnamed class members, this conflict of interest bars class certification.

Named Plaintiffs acknowledge the possibility that "class members will be upset" upon receiving the class notice. Appellees' Br. 28. But emotional distress from "be[ing] upset" at learning this information is the very injury for which Named Plaintiffs seek class recovery. If "being upset" at learning of Dr. Akoda's guilty plea is as trivial as Named Plaintiffs suggest, then Named Plaintiffs should dismiss their claims.

It is true, as Named Plaintiffs point out, that many class members have already been informed of the guilty plea (largely due to the efforts of Named Plaintiffs and their counsel). Appellees' Br. 29.[5] This does not eliminate the conflict—it illustrates it.

This conflict is heightened by the nature of the claims, which are based on emotional distress at learning information. If class members were informed of the simple truth—"You once received medical treatment from a fully licensed and board-certified physician who had misused a Social Security number."—it seems inconceivable that anyone would suffer emotional distress. To the extent that any emotional distress has occurred, it is likely due to plaintiffs' counsel communicating the allegations in their brief, that class members were "sexually abuse[d] . . . under the guise of providing OB/GYN care." Appellees' Br. 2. Class counsel stand to benefit by increasing the injury to their clients (and the putative class) by dramatizing the allegations about Dr. Akoda to be as inflammatory as possible.[6]

---

[5] Indeed, the "widespread media coverage" cited by Named Plaintiffs as evidence that class members probably know of Dr. Akoda's guilty plea feature quotations from Named Plaintiffs or their counsel. Appellees' Br. 29 & n.2.

[6] The cause of an individual class members' emotional distress—what information the person was told that caused distress, when, by whom, and why—is highly relevant to whether ECFMG had a duty to protect against it. AMA Br. 9–13.

There are class members who, at present, have suffered no injury. If Named Plaintiffs' theory is correct, then certifying a class would cause these uninjured class members to suffer emotional distress.

The district court never grappled with this fundamental conflict of interest. Named Plaintiffs fault ECFMG for not citing cases presenting similar conflicts of interest, but ECFMG cites no case because, to our knowledge, no case has ever previously involved class counsel proposing to injure class members and then seeking recovery for that injury. It is self-evident (and flows from the adequacy and typicality standards) that this conflict bars class certification. ECFMG Br. 22–24.

## C.    Named Plaintiffs seek to certify only claims for emotional distress.

Named Plaintiffs accuse ECFMG of "falsely assert[ing]" that the district court failed to consider *res judicata*, Appellees' Br. 30 (citing JA53), but the phrase *res judicata* appears nowhere in the district court's opinion. The page of the district court's opinion cited by Named Plaintiffs addresses typicality, JA53, but as ECFMG explained in its brief, claim-splitting (and the risk of *res judicata*) primarily concerns adequacy. *See* ECFMG Br. 25 (describing claim-splitting as important "in assessing the adequacy of representation requirement"). The district court did not consider claim-splitting as part of adequacy.

Named Plaintiffs incorrectly state that ECFMG has identified no class members with alleged physical injuries. Appellees' Br. 18. But the report of Named

Plaintiffs' expert, Dr. Steinberg, noted testimonials from absent class members describing supposed "Adverse Clinical Outcomes."  JA589; JA592.  Any damages from an "adverse clinical outcome" would likely far exceed any damages from emotional distress.[7]  But Named Plaintiffs seek recovery only for the latter.

With respect to the right of unnamed class members to opt out, Named Plaintiffs cite several cases that were certified under Rule 23(b)(3) for the proposition that class members will have an opportunity to opt out.  *See* Appellees' Br. 32–33 (citing cases).  But this class was not certified under Rule 23(b)(3)—it was certified under Rule 23(c)(4), without any finding that any prong of Rule 23(b) was satisfied.  Nothing in the text of Rule 23 suggests that a "Rule 23(c)(4) class"— to the extent that such a thing exists—can be opted out of.

Because the district court erred in analyzing Rule 23(a), the class certification must be reversed.

## II.    The District Court Erred by Certifying a Class Without Finding Rule 23(b) Satisfied.

Named Plaintiffs' brief confirms that class certification must be reversed because the district court did not find any provision of Rule 23(b) to be satisfied.

---

[7] Named Plaintiffs argue that "there is no indication that 'all or almost all' of the individual claims are likely to be large enough to be litigated entirely individually." Appellees' Br. 31.  But the burden rests with Named Plaintiffs, not with ECFMG.

The parties appear to largely agree about the governing law.  Named Plaintiffs do not dispute that (1) a class cannot be certified unless one prong of Rule 23(b) is satisfied, ECFMG Br. 30–32; and (2) in determining whether Rule 23(b) has been satisfied in a case involving Rule 23(c)(4), a court cannot consider only the issues to be certified but must consider other issues as well, ECFMG Br. 32–33; Appellees' Br. 35–36 (suggesting that the *Gates* factors—which involve non-certified issues— reflect the requirements of Rule 23(b)(3)).  Because the district court did not apply these principles, certification must be reversed.

### A.    Named Plaintiffs do not dispute that class certification requires satisfaction of at least one prong of Rule 23(b).

The key premise of ECFMG's argument goes undisputed by Named Plaintiffs: "Class certification requires the party seeking certification to satisfy one of the three subsections of Rule 23(b)."  ECFMG Br. 30–32.  This requirement follows from the plain text of Rule 23 and is acknowledged by cases discussing it. *See* ECFMG Br. 31 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013*)*; *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019)).

Named Plaintiffs do not dispute this proposition.  Their brief does not defend the idea that Rule 23 (or precedent) permits a class to be satisfied without a finding that at least one prong of Rule 23(b) has been satisfied.

Here, the district court did not find that Named Plaintiffs satisfied any prong of Rule 23(b).  The district court expressly declined to consider any portion of Rule

23(b), holding instead that it would "consider Rule 23(a) and then turn to the *Gates* factors in conducting its analysis." JA43. As a result, there is no finding by the district court regarding either predominance or superiority. Under the plain language of Rule 23, certification cannot stand.

### B. Named Plaintiffs' theory—that the district court made implicit findings under Rule 23(b)(3)—is meritless.

Named Plaintiffs argue (in effect) that the district court implicitly found that Rule 23(b)(3) was satisfied because the district court considered the *Gates* factors. Appellees' Br. 35–36 ("The *Gates* considerations ensure a finding that an issue class is 'appropriate' under Rule 23(c)(4) also encompasses a determination that a class action limited to the specified issues meets Rule 23(b)(3)'s demands [of predominance and superiority].").

There are at least three problems with Named Plaintiffs' suggestion. First, as ECFMG addressed in its opening brief, although the *Gates* factors might be relevant in making findings regarding predominance and superiority in a proposed class involving Rule 23(b)(3) and Rule 23(c)(4), there is a material difference between considering these factors in isolation (as the district court did here) and considering them as part of determining whether the requirements of Rule 23(b)(3) have been satisfied. ECFMG Br. 35 & n.10. A court would similarly err by considering only the four "matters pertinent to [the Rule 23(b)(3)] findings" in Rule 23(b)(3)(A)–(D),

without relying on those "matters" to make predominance and superiority findings. ECFMG Br. 35 n.10.

Indeed, Named Plaintiffs' suggestion that considering the *Gates* factors is inherently synonymous with the Rule 23(b)(3) inquiry is inconsistent with *Gates* itself, which drew the factors from *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169 (3d Cir. 2009), a case involving a proposed class under Rule 23(b)(2).  Because the *Gates* factors apply in both Rule 23(b)(2) and Rule 23(b)(3) class actions, they plainly are not simply the equivalent of the requirements of Rule 23(b)(3).

Similarly, as ECFMG noted and the Chamber highlights in its amicus brief, this Court distinguished between the *Gates* factors and the Rule 23(b)(3) inquiry in *Gonzalez v. Corning*, 885 F.3d 186 (3d Cir. 2018).  This Court held that "the appropriateness of certifying a Rule 23(c)(4) class," which must be evaluated under *Gates*, is "analytically independent from the predominance inquiry under Rule 23(b)(3)."  *Id.* at 202.

Named Plaintiffs have no answer to *Gonzalez v. Corning*, which refutes their position that the *Gates* factors and Rule 23(b)(3) are analytically identical.  Although the case is this Court's only published post-*Gates* discussion of Rule 23(c)(4) and was relied on heavily by ECFMG and amici, it goes undiscussed—indeed, uncited— in Named Plaintiffs' brief.

Reviewing the *Gates* factors was not a substitute for the predominance and superiority findings required by Rule 23(b)(3).  The district court erred by certifying a class without these findings.

### C.  In determining whether Rule 23(b)(3) has been satisfied, a court cannot look only at the issue(s) to be certified.

Named Plaintiffs' arguments regarding how Rule 23(b)(3) must be considered are equally meritless.  At a high level, there are only two possible ways in which Rule 23(b)(3) and Rule 23(c)(4) could interact.  Predominance and superiority must be satisfied either: (1) considering only the issues certified for class treatment; or (2) considering both the issues certified for class treatment and the issues left for individual adjudication, *i.e.*, considering the claim as a whole.

Named Plaintiffs' arguments on this point are inconsistent.  Although a portion of their brief argues strenuously that after Rule 23(c)(4) is invoked, Rule 23(b)(3) considers only the certified issues, Appellees Br. 39–50, they argue several pages earlier that Rule 23(b)(3) is satisfied by considering the *Gates* factors, many of which expressly require considering the non-certified issues, *e.g.*, *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011) (requiring consideration whether "class resolution of the issue(s) will fairly and efficiently advance the resolution of class members' claims, **including resolution of remaining issues**" (emphasis added)).  If the *Gates* factors require considering the non-certified issues and (according to Named Plaintiffs) the *Gates* factors are synonymous with "Rule

23(b)(3)'s demands," Appellees Br. 36, then Rule 23(b)(3) necessarily requires considering the non-certified issues.

The alternative—considering only the certified issues—renders Rule 23(b)(3) a nullity. As Named Plaintiffs acknowledge, if only the issues certified for class treatment matter, then Rule 23(b)(3) will always be satisfied. Appellees' Br. 37. Under Named Plaintiffs' own arguments, their position cannot be correct because it renders Rule 23(b)(3) "inoperative or superfluous." Appellees' Br. 44.[8]

Named Plaintiffs attack a straw man when they accuse ECFMG of arguing that Rule 23(c)(4) should be ignored when analyzing Rule 23(b)(3). Appellees' Br. 43–44. That is incorrect—the ability of a court to certify only individual issues under Rule 23(c)(4) is surely relevant when analyzing superiority, which concerns how a case will actually be adjudicated. ECFMG does not suggest that Rule 23(c)(4) is meaningless, only (1) that a class cannot be certified without satisfying Rule 23(b); and (2) that Rule 23(c)(4) cannot be used to evade or substitute for the requirements of Rule 23(b).

---

[8] As ECFMG detailed in its opening brief (at 37 & n.13), *Gates* can be read as addressing whether issue certification is "appropriate" under Rule 23(c)(4) without adopting a holding about the interaction of Rule 23(b) and Rule 23(c)(4). Under this reading, there is nothing incongruous about *Gates* discussing certification involving Rule 23(c)(4) after rejecting certification under Rule 23(b)(3). Appellees' Br. 40. And if *Gates* is read as adopting a holding on this point, it rejected the only-certified-issues approach urged by Named Plaintiffs. 655 F.3d at 272–73.

To the extent that Named Plaintiffs contend that Rule 23(b)(3) cannot be considered until after determining whether Rule 23(c)(4) is "appropriate," their dispute is with this Court, not ECFMG.  In *Luppino v. Mercedes Benz USA*—another case cited by ECFMG that is notably missing from Named Plaintiffs' brief—this Court held that a plaintiff "may seek certification under Rule 23(c)(4) as to particular issues" only after "having satisfied Rule 23(a) and (b)'s requirements" and that it would not consider (c)(4) in light of "class certification's (b)(3) defects."  718 F. App'x 143, 146 (3d Cir. 2017) (citing *Comcast*, 569 U.S. at 33).

Named Plaintiffs suggest that the remedy for this error is a remand, Appellees' Br. 50, but their brief fails to develop any argument that certification could be proper.[9]  As ECFMG explained in its opening brief, in light of the overwhelming number of individual issues and the limited issues that could be resolved through class treatment, there is no argument that certification could be proper if Rule 23(b)(3) were considered.  Named Plaintiffs' prediction (at 50) regarding how the

---

[9] Named Plaintiffs incorrectly state that "ECFMG concedes that common liability issues may predominate over individual issues of causation and damages." Appellees' Br. 50 (citing ECFMG Br. 34).  This is false—ECFMG merely stated the general proposition that "the mere existence of individual issues does not mean that common issues do not predominate."  ECFMG Br. 34.  But as this Court has recognized, "individual issues of causation create irremediable predominance problems."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 604 (3d Cir. 2012).

district court would rule on remand is no substitute for a reasoned argument in their brief.  This Court should render judgment that no class be certified.

## III.   The District Court Erred in Analyzing the *Gates* Factors.

Finally, as ECFMG detailed in its opening brief, the district court failed to engage in the requisite "rigorous analysis" of the *Gates* factors and abused its discretion in the four paragraphs of analysis that led it to conclude that certification was "appropriate" under Rule 23(c)(4).

### A.   The district court erred in analyzing choice of law and conflict of laws.

Named Plaintiffs' brief essentially repeats their entire choice-of-law argument to the district court, which consists of pointing out that Pennsylvania abandoned the *lex loci delicti* rule.  *Compare* Appellees' Br. 52–53, *with* JA194–95.  This is true, but Named Plaintiffs misstate Pennsylvania's actual choice-of-law test, which relies on the Restatement (Second) of the Conflict of Laws, particularly including the "presumption in personal injury cases that favors the application of the law of the state where the injury occurred."  *Kornfeind v. New Werner Holding Co.,* 2020 PA Super 266, 2020 WL 6555158, at *10–11 (Nov. 9, 2020) (discussing Restatement (Second) of Conflict of Laws § 146).[10]  Pennsylvania has no interest in applying its

---

[10] Because Plaintiffs' claims are based on alleged misrepresentations made by ECFMG to its clients, ECFMG believes that Section 148(2) supplies the appropriate standard.  In any event, both lead to the same conclusion: application of the law of the state where a class member was treated by Dr. Akoda.

laws to claims arising from out-of-state treatment by an out-of-state doctor of an out-of-state patient or arising from communications received by out-of-state entities deciding which individuals will be licensed to practice medicine in other states.

Indeed, as ECFMG noted in its opening brief, difficult constitutional issues would arise if Pennsylvania attempted to apply its law to these claims. Fundamentally, Named Plaintiffs' theory is that Dr. Akoda should not have been licensed to practice medicine. But Pennsylvania cannot say which doctors should be licensed to treat patients in Virginia or Maryland, whether it attempts to do so directly or indirectly through the imposition of liability in tort. Under our federal structure, a State cannot "control conduct beyond the boundaries of the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). It is no answer for Named Plaintiffs to distinguish the facts of *Healy* (at 56–57)—the legal principle would squarely apply if Pennsylvania attempted to apply its tort laws to the conduct of out-of-state physicians treating out-of-state patients. Constitutional avoidance suggests applying the law of the state of treatment.

A party seeking certification must "provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles[,] [a]nd the district court must then consider how variations in state law affect predominance." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (internal quotation marks and citation omitted); *see also In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir.

1986) (plaintiff presented an "extensive analysis"); *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 184 (3d Cir. 2014) (involving plaintiffs' failure to provide sufficient analysis of state law); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) (noting that the burden "rests squarely with the plaintiffs").

Named Plaintiffs do not contend that they satisfied this burden. Instead, they argue that it never arose, citing a comment to the Principles of the Law of Aggregate Litigation and a law review article. Appellees' Br. 52. Such authority cannot overcome the black-letter law of the federal courts. Named Plaintiffs failed to carry their burden to provide an analysis of the law of the different states, proving that it was no barrier to certification.

Named Plaintiffs also cannot shift the burden to ECFMG, *see* Appellee's Br. 53 (arguing that ECFMG was required to prove the existence of a "true conflict"), and the district court abused its discretion in relying on Plaintiffs' representation that they were "unaware" of any relevant conflicts, JA194, particularly when ECFMG pointed out that such conflicts existed.

Here again, Named Plaintiffs simply ignore the cases cited on page 43 of ECFMG's opening brief that illustrate the conflict between the laws of Maryland, Virginia, and the District of Columbia. As with other authority that is unfavorable to them, Named Plaintiffs neither discuss the cases nor cite them in their brief.

**B. The district court failed to consider the type of claim at issue and the fact that emotional distress claims introduce numerous individualized questions that make the claims here particularly ill-suited for class treatment.**

As ECFMG explained in its opening brief, the district court did not address two of the *Gates* factors: "the type of claim(s) and issue(s) in question" and "whether the substantive law separates the issue(s) from other issues concerning liability or remedy." 655 F.3d at 273.

This should not be open to dispute. The district court's analysis of the *Gates* factors is found on JA59 through JA62. These factors are not discussed.

Named Plaintiffs misstate the record when they assert the contrary. Appellees' Br. 57. Although the district court discussed various aspects of Named Plaintiffs' claims, the district court never addressed these *Gates* factors.

Standing alone, this requires a reversal. It is not enough for Named Plaintiffs to argue that if the district court had considered the factors, it might still have certified the class action. *Cf. Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("When a district court 'fail[s] to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings.'" (quoting *Pullman-Standard*, 456 U.S. at 291)).

Indeed, Plaintiffs' lead argument appears to be that this Court should overrule this portion of *Gates* and hold that the type of claim and the substantive law is

19

irrelevant to class certification. *See* Appellees' Br. 57–58 (arguing that these factors should be ignored because the Federal Rules "are trans-substantive"). There is no reason to depart from *Gates* for these two factors, and considering the nature of the claim in the context of Rule 23(c)(4) is both rational and appropriate.

This Court should hold that in this case, the type of claim at issue—and the failure of the substantive law to separate the existence and amount of emotional distress from other issues—renders certification inappropriate under Rule 23(c)(4).

In *Spence v. Board of Education of Christina School District*, 806 F.2d 1198 (3d Cir. 1986), this Court applied "the rule that emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct." *Id.* at 1202 (citing *Carey v. Piphus*, 435 U.S. 247, 263 (1978)). Here, to recover against ECFMG for any alleged emotional distress, any trier of fact must evaluate "all of the circumstances surrounding the alleged misconduct," *i.e.*, all of ECFMG's alleged wrongdoing. As a result, the nature of the claim strongly weighs against bifurcating it into separate proceedings. Named Plaintiffs cannot deny *Spence*'s holding or the rule it applied.

Named Plaintiffs' response is puzzling. They apparently attempt to recast their claims as some type of vicarious liability, implying that they intend to hold ECFMG vicariously liable for Dr. Akoda's torts. *See* Appellees' Br. 62 ("ECFMG's conduct determines its responsibility but not whether Plaintiffs' interactions with

[Dr. Akoda] resulted in compensable emotional harm[.]").[11]  But—as ECFMG noted above—this is not the claim they have asserted, and there is no basis to impose vicarious liability on ECFMG for any of Dr. Akoda's alleged wrongs.  To the extent that Named Plaintiffs can recover from ECFMG, it must be because of emotional distress allegedly caused by ECFMG's alleged negligence, which necessarily requires any jury considering the existence and amount of emotional distress to rehear all of the evidence regarding ECFMG's conduct.

In some cases, of course, a new trial can be held only on damages, but the individual issues here go far beyond damages and include causation and injury.  A partial new trial is allowed only when "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."  *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 454–55 (3d Cir. 2001) (quoting *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)).  Damages cannot be tried separately where, as here, they are "so interwoven with . . . liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial."  *Id.* at 455 (quoting *Gasoline Prods.*, 283 U.S. at 500).

---

[11] And, of course, it is not the "interactions with Dr. Akoda" that allegedly caused emotional distress—it is learning of his guilty plea.

Indeed, *Aiello v. Providian Financial Corp.*, 239 F.3d 876 (7th Cir. 2001), speaks directly to this situation, noting that "claims of emotional distress . . . are so easy to manufacture" and the "potential for abuse" in awarding "damages for a purely emotional injury." *Id.* at 880–81. Allowing class plaintiffs to aggregate claims for emotional damages and trying them individually has the plain purpose of "forc[ing] settlement by confronting the defendant with an avalanche of litigation and an unquantifiable potential liability." *Id.* at 881. Named Plaintiffs' conclusory response—"Those circumstances are not present here," Appellees' Br. 61—is no answer.

Named Plaintiffs identify only a single case involving certification of a class seeking damages for emotional distress: *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003). But damages for emotional distress were only a small component of the claims, which largely involved economic injury:

> [T]he damage calculations in this case do not appear to be particularly complex, unlike the calculations in those cases in which courts have found that numerous complicated individual damage inquiries predominated over common issues. . . . [I]t appears that a court-appointed fiduciary has already calculated most of the Plaintiffs' claims for medical bills using [a] computer program[.] Thus, in many cases there is likely to be little or no dispute over the amount to which an individual class member is entitled for unpaid medical claims. Similarly, if the court determines that Plaintiffs are entitled to a refund of premiums paid, these amounts could be quickly and easily determined.

*Id.* at 429.[12]   The case provides no support for class certification here, where Named Plaintiffs pursue certification of a class seeking only unverifiable emotional distress at learning information, as opposed to a small component of damages for a class primarily seeking economic recovery.   Certification here is unprecedented and erroneous.

### C.    Named Plaintiffs' analysis of efficiencies is incorrect.

The parties' dispute concerning efficiencies confirms the error in the district court's analysis.  On appeal, the parties disagree regarding what will be decided in class proceedings and what issues remain to be tried in individual proceedings.  This uncertainty exists because neither Named Plaintiffs nor the district court seriously grappled with how the case would actually be tried if these issues were certified.  One is left with the impression that class certification was valued more for the purposes of pressuring settlement than as a realistic means of trying claims.

As an initial matter, Named Plaintiffs discuss only Pennsylvania law in this portion of their brief.  Appellees' Br. 63–66.  They make no attempt to show that the law of the other states is identical on these complex issues of state law.  *See, e.g.*,

---

[12] Indeed, certification was only conditional, and the district court "was fully aware of the possibility that individual issues, although currently subordinate to the common liability and damage issues, might in time predominate and the case prove unmanageable." *Gunnells*, 348 F.3d at 430.

Appellees' Br. 65 n.16 (arguing that "factual cause" is different from "proximate cause" under Pennsylvania law).

There is no question that lengthy individual proceedings would be required. Each plaintiff would need to prove individually, the existence of emotional distress and the amount of any recovery. That is, neither injury nor damages can be proven on a classwide basis. This Court has "consistently distinguished injury from damages." *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 194 (3d Cir. 2020). The difference "is significant" because this Court applies a stricter predominance standard for injury than for damages. *Id.* at 195.

And Named Plaintiffs do not deny that all of ECFMG's affirmative defenses—including each plaintiff's consent to treatment by Dr. Akoda—will be tried individually.

Causation, as well, is left for individual proceedings. Named Plaintiffs suggest that the other causes of an individual plaintiffs' alleged injury—such as residency programs that admitted Dr. Akoda, medical boards that licensed him, hospitals that gave him privileges, the specialty board that certified him, law enforcement officers who investigated him, and the role of plaintiffs' counsel and Named Plaintiffs in informing class members of Dr. Akoda's alleged wrongdoing—are wholly irrelevant to their claims against ECFMG.

This is incorrect. Not only does proximate causation involve questions of remoteness,[13] but the Supreme Court of Pennsylvania has held that when multiple causes are involved, evaluating substantial-factor causation may require "a proportionate evaluation" of the contributions of different causes. *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 56 n.36 (Pa. 2012) (citing Restatement (Second) of Torts § 433, cmt. d); *see also id.* ("This Court has cited Section 433 [of the Restatement (Second) of Torts] as consistent with Pennsylvania law."). Indeed, as the Restatement emphasizes, the first consideration in evaluating whether an act is a substantial factor is "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." Restatement (Second) of Torts § 433(a).

In this case, to evaluate causation with respect to any individual plaintiff, every jury would need to rehear all of the evidence of all of the numerous causes that led to an individual being treated by Dr. Akoda in order to determine whether

---

[13] Legal liability does not extend all the way down the causal chain. *See Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1233 (Pa. 1983) (explaining that "the concept of legal cause (the traditional 'proximate cause') is an articulation of policy related to social and economic considerations," whether "the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred"). As Amici American Medical Association, Pennsylvania Medical Society, and Association of American Medical Colleges discuss, ECFMG's role in the certification process is far too remote and limited for any duty or proximate causation to exist. AMA Amicus Br. 14–18.

ECFMG's relatively minimal role in Dr. Akoda's credentialing was a substantial factor in causing a particular plaintiff's injury.

And even apart from substantial-factor causation, evaluating but-for causation would require a lengthy presentation of evidence regarding other actors. As best ECFMG understands Named Plaintiffs' theory, it is that ECFMG was negligent because it should have (1) performed more investigation than it did; and (2) based on the result of that investigation, sent a letter to third parties. *See* Appellees' Br. 1–2 (asserting that ECFMG "failed to inform state medical boards, residency programs, and hospitals"); Appellees' Br. 8 ("never notified" and "had not investigated the matter further"). To prove but-for causation, Named Plaintiffs must prove both (1) what the results of that additional investigation might have been; and (2) that if ECFMG had sent the letter that Named Plaintiffs contend should have been sent, third parties would have acted to prevent Dr. Akoda from treating patients.

As ECFMG explained, this class certification is indistinguishable from the certification rejected in *Gates*: "[I]n light of the 'numerous individual issues that would remain,' resolution of the common issues was 'unlikely to substantially aid resolution of the substantial issues on liability and causation.'" ECFMG Br. 51 (quoting *Gates*, 655 F.3d at 272, 274).

Named Plaintiffs' only response is that in this case, issue certification "will meaningfully advance ultimate termination of the litigation by resolving the central

issues of duty and breach of duty." Appellees' Br. 66. This is no answer. In *Gates*, the plaintiffs sought certification of whether defendants breached their duty by "discharg[ing] vinylidene chloride into the lagoon that seeped in the shallow aquifer." 655 F.3d at 274. But in *Gates*, like here, these narrow, abstract questions are "inseverable from other issues that would be left for follow-up proceedings" and "unlikely to substantially aid resolution of the substantial issues on liability and causation." *Id.* at 273–74.

*Gates* is indistinguishable and confirms that the issue certification ordered in this case is not appropriate under Rule 23(c)(4).

### D.    The district court reduced issue certification to commonality.

Finally, as ECFMG and the Chamber established, under the district court's analysis, virtually any common issue would be appropriate for certification under Rule 23(c)(4). ECFMG Br. 53–54 (discussing JA59–61). Named Plaintiffs have no response. They cannot deny what ECFMG demonstrated: the district court's justifications for issue certification would apply equally to any common issue. Such a result cannot be correct and confirms the error in certification.

## CONCLUSION & PRAYER FOR RELIEF

ECFMG respectfully renews its prayer that this Court reverse the order granting certification and render judgment that no class be certified.

Dated: November 23, 2020                    Respectfully submitted,

                                            MORGAN, LEWIS & BOCKIUS LLP

                                            By:    */s/ William R. Peterson*
                                                   William R. Peterson
                                            1000 Louisiana St., Ste. 4000
                                            Houston, TX 77002

                                                   Brian W. Shaffer
                                                   Matthew D. Klayman
                                            1701 Market St.
                                            Philadelphia, PA 19103

***Counsel for Appellant, Educational Commission for Foreign Medical Graduates***

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, William R. Peterson, counsel for Appellant Educational Commission for Foreign Medical Graduates, certify, pursuant to Local Appellate Rule 28.3(d), that I am a member in good standing of the Bar of this Court.  I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)–(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Reply Brief is proportionately spaced and has a typeface of 14-point Times New Roman, contains 6,482 words, and that the text of the electronic brief is identical to the text of the paper copies.  I further certify, pursuant to Local Appellate Rule 31.1(c), that McAfee Endpoint Security did not detect a virus.

*/s/ William R. Peterson*
William R. Peterson

## CERTIFICATE OF SERVICE

I, William R. Peterson, counsel for Appellant Educational Commission for Foreign Medical Graduates, certify that, on November 23, 2020, a copy of the foregoing Reply Brief was filed electronically through the appellate CM/ECF system with the Clerk of the Court.  All counsel of record in this case are registered CM/ECF users.  Pursuant to Local Appellate Rule 31.1, as amended by the April 29, 2013 order, seven copies of this brief were sent to the Clerk of the Court for delivery.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Appellant,*
*Educational Commission for*
*Foreign Medical Graduates*

Dated: November 23, 2020