UNITED STATES COURT OF APPEALS
THIRD CIRCUIT

MONIQUE RUSSELL, JASMINE      . Case No. 20-2128
RIGGINS, ELSA POWELL, DESIRE  .
EVANS,                        .
                             .
          Appellees,          .
     vs.                      .
                             .
EDUCATIONAL COMMISSION FOR    . U.S. Courthouse
FOREIGN MEDICAL GRADUATES,    . 601 Market Street
                             . Philadelphia, Pennsylvania
          Appellant.          .
. . . . . . . . . . . . . . . . . Thursday, February 11, 2021

TRANSCRIPT OF ORAL ARGUMENT
BEFORE THE HONORABLE LUIS FELIPE RESTREPO
THE HONORABLE STEPHANOS BIBAS
THE HONORABLE DAVID JAMES PORTER
UNITED STATES CIRCUIT COURT JUDGES


APPEARANCES VIA VIDEO CONFERENCE:

For the Appellant:        William R. Peterson, Esq.
                          MORGAN, LEWIS & BOCKIUS
                          1000 Louisiana Street
                          Houston, Texas 77002

For the Appellees:        Patrick A. Thronson, Esq.
                          JANET, JANET & SUGGS
                          4 Reservoir Circle
                          Suite 200
                          Baltimore, Maryland 21208


Audio Operator:           Electronically Recorded

Transcription Company:    AdvancedONE Legal
                          1600 Market Street, Suite 1700
                          Philadelphia, Pennsylvania 19103
                          (855)204-8184


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


(866) 715-7770
advancedONE.com

1 |                          INDEX

2 |                                                          Page

3 | ARGUMENT BY MR. PETERSON                                    3

4 | ARGUMENT BY MR. THRONSON                                   16

5 | FURTHER ARGUMENT BY MR. PETERSON                           34

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

```
 1              (Proceedings commence)

 2          THE COURT:  So I'll call the case of Monique

 3   Russell, et al v. The Educational Commission for Foreign

 4   Medical Graduates, Docket Number 20-2128.

 5          Mr. Peterson.

 6          MR. PETERSON:  Thank you, Your Honor.  Good

 7   morning.  William Peterson on behalf of The Educational

 8   Commission for Foreign Medical Graduates.

 9          I'd like to request three minutes for rebuttal.

10          THE COURT:  Sure.

11          MR. PETERSON:  Thank you.

12          There are three independent grounds to reverse the

13   class certification order, each corresponding to a different

14   section of Rule 23:

15          First, under Rule 23(a), there are the errors with

16   respect to typicality and adequacy.

17          Second, there is the failure to make any finding

18   with respect to Rule 23(b).

19          And third is the abuse of discretion in applying

20   the Gates factors to conclude that class certification is

21   appropriate under Rule 23(c)(4).

22          We start first with typicality and adequacy.  There

23   is no finding by the district court that the alleged injuries

24   suffered by the named plaintiffs -- that is, emotional

25   distress upon learning that the licensed and board-certified
```

 1  | doctor who treated them pleaded guilty to misuse of a Social
 2  | Security number -- are typical injuries of the class.  And
 3  | recall that this class includes all patients who were treated
 4  | or even examined by Dr. Akoda in any way.
 5  |          THE COURT:  No, but if we're talking though about a
 6  | class that's just for duty and breach, why does the injury
 7  | have to be typical?  Wouldn't it just be the duty that was
 8  | breached that would have to be typical?  Because we're not
 9  | talking about causation and damages here.
10  |          MR. PETERSON:  Well, Your Honor, Rule 23(a) doesn't
11  | refer to the issues that are certified for class treatment.
12  | Rule 23(a) requires that the claims or defenses of the
13  | representative parties are typical of the claims and defenses
14  | of the class.  So, if there's no typicality of the injury,
15  | there is no typical claim whatsoever among the unnamed class
16  | members.
17  |          THE COURT:  So was the district court wrong when it
18  | concluded that the claims arise from the same legal theory,
19  | that's insufficient?
20  |          MR. PETERSON:  He was correct to say that the
21  | claims arise from the same legal theory, wrong to conclude --
22  |          THE COURT:  And from the --
23  |          MR. PETERSON:  -- that is --
24  |          THE COURT:  -- same course of conduct.  He also
25  | concluded that it came from the same course of conduct,

 1 | right?

 2 |          MR. PETERSON:  Yes, Your Honor.

 3 |          THE COURT:  So that was --

 4 |          MR. PETERSON:  That's correct.

 5 |          THE COURT:  That was correct.

 6 |          MR. PETERSON:  Yes.  But injury, as well, is a

 7 | requirement for typicality.

 8 |          THE COURT:  Why?

 9 |          MR. PETERSON:  And even (indiscernible)

10 |          THE COURT:  Why, though?  Why, at least when -- it

11 | says claims or defenses.  And ordinarily, injury would be in

12 | there, when we're talking about a class as to the entire

13 | claim.  But when we're talking about issue classes, why

14 | shouldn't it just be the portion of the claim, the relevant

15 | portion of the claim that has to be typical?

16 |          MR. PETERSON:  Well, Rule 23(a) goes to whether a

17 | class, at a high level, is appropriate at all, whether the

18 | class certification device should be used.  And the problem

19 | is, if the other unnamed class members don't have any

20 | interest in these proceedings -- I mean, assume the extreme

21 | hypothetical in which the four named plaintiffs were the only

22 | individuals who suffered any emotional distress, and none of

23 | the other class members suffered any emotional distress on

24 | learning this information at all -- there would be absolutely

25 | no need to use the class action device --

1      THE COURT:  Okay.  But that's not --

2      MR. PETERSON:  -- (indiscernible)

3      THE COURT:  -- what we're talking about here.

4      MR. PETERSON:  Well, there's no proof.  I mean, at

5   the end of the day, Rule 23(a) has to be satisfied by a

6   preponderance of the evidence.  And if you look at where the

7   plaintiffs attempted to show typicality, you'll see -- Joint

8   Appendix 188, Joint Appendix 1315 -- they do not cite to any

9   evidence in the record in their typicality analysis and there

10  are no findings by the district court related to typicality.

11      But let me turn to adequacy because, even if you

12  accept the theory that emotional distress is a typical

13  reaction to learning this information, it creates the issue

14  that we highlighted, which is that, if, under their theory,

15  certifying the class and providing this information to class

16  members would, in fact, cause currently uninjured class

17  members to suffer an injury as a result of the class

18  certification, individuals who do not currently suffer from

19  emotional distress would, at that point in time, be suffering

20  from emotional distress going forward.  We see that as a

21  fundamental conflict between the named plaintiffs and the

22  unnamed class members.

23      THE COURT:  How is that a --

24      MR. PETERSON:  It's (indiscernible)

25      THE COURT:  How is that a conflict?  How are the --

1  how are the interests of the four named plaintiffs different

2  or in conflict with any potential claim members?

3           MR. PETERSON:  Because what the named plaintiffs

4  are asking the Court to do is inflict an injury.

5           THE COURT:  No.

6           MR. PETERSON:  They --

7           THE COURT:  No.  The injury comes -- the injury

8  could well come from the actual misconduct.  You can't then

9  blame it on the revelation of the misconduct.  You're

10  shooting the messenger.

11           MR. PETERSON:  Well, you could be.  But the

12  question is -- you have someone who, right now, is happily

13  living their life, they are suffering from no --

14           THE COURT:  Okay.

15           MR. PETERSON:  -- emotional distress or --

16           THE COURT:  So the argument is we should let you

17  run out the statute of limitations and then say it's too

18  late, by the time they discovery it.

19           MR. PETERSON:  Well, actually, the statute of

20  limitations is a fascinating point here because, under

21  plaintiffs' theory, the way they are getting around the

22  statute of limitations is to say that limitations begins when

23  you learn the information.  So, under their theory of the

24  case, you don't look at the limitations from the time of

25  treatment.  They say there is no injury, they say there is no

1   limitations accrual until you actually learn this information

2   and begin to suffer the emotion distress.

3            THE COURT:  You have --

4            THE COURT:  Would you stipulate to that?

5            MR. PETERSON:  I would not stipulate to that --

6            THE COURT:  Ah.  Then they --

7            MR. PETERSON:  -- because that is --

8            THE COURT:  -- can't rely --

9            MR. PETERSON:  -- that is --

10           THE COURT:  -- on that.

11           MR. PETERSON:  But that is my friend's theory,

12  that's the theory that the plaintiffs are proceeding on, and

13  that's the theory that it's appropriate to hold them to, to

14  the adequacy determinations.

15           And right or wrong, this is an argument that we

16  made to the district court below and it's an analysis that

17  wasn't performed in the class certification order.

18           THE COURT:  Come back to this -- to the conflict

19  issue.  How are they adverse to one another?  How are the

20  interests of the named plaintiffs adverse or in conflict with

21  the interests of yet-to-be-named plaintiffs?

22           MR. PETERSON:  The conflict, as we see it, is that

23  the named plaintiffs have said, "In our view, sharing this

24  information with the class will cause the class members

25  emotional distress."  That is their theory.  Learn the

1 | information, you go from not being injured to being injured.
2 | You move from not suffering any emotional distress to
3 | suffering emotional distress.  And the named plaintiffs are
4 | saying we would like the district court to send notification
5 | to the class to provide this -- them this information and for
6 | them to have -- suffer an injury.
7 |         Now, look, to be clear, it's not perfectly clear to
8 | me whether this fits into the adequacy or typicality bar.
9 | It appears to be a novel circumstance.  We have not
10 | identified any case previously in which class counsel was
11 | saying, "We would like to represent a group of uninjured
12 | plaintiffs, and we think you should then inflict emotional
13 | distress on them, so that we can then recover" --
14 |         THE COURT:  Well, you don't have --
15 |         MR. PETERSON:  -- allow (indiscernible)
16 |         THE COURT:  -- any authority for your proposition.
17 | You don't have any authority that says that keeping people in
18 | the dark prevents them from being injured.
19 |         MR. PETERSON:  No, Your Honor, I don't.  And I'll
20 | admit, though, that I think it's a difficult question, but I
21 | think it's a question that needed to be wrestled with and
22 | addressed as part of the class certification analysis.
23 |         THE COURT:  Okay.  Well, then --
24 |         THE COURT:  But --
25 |         THE COURT:  -- shouldn't the scales be tipped by

1 | the fact that you won't stipulate that this -- that there's
2 | no statute of limitations problem here, and so we should err
3 | on the side of at least giving them the choice and empowering
4 | them because Rule 23 favors letting the party decide to opt
5 | in or opt out?
6 |       MR. PETERSON:  And the problem, as I see it, is
7 | that the uninjured party, it's not a question of opting in or
8 | opting out; it's a question of suffering the injury or not
9 | suffering the injury.
10 |       THE COURT:  So you want to say --
11 |       MR. PETERSON:  Again --
12 |       THE COURT:  -- that the injury is really being
13 | caused by the attorneys and distract from the fact that your
14 | own client had a role in playing these injuries, and a lot of
15 | people, they may be injured out there and just not know how
16 | to sue about it.
17 |       MR. PETERSON:  Well, that's the -- if -- under
18 | plaintiffs' theory, they have not been injured until they
19 | learn the information.
20 |       THE COURT:  Okay.  They could amend that.  I mean,
21 | fine, we can agree to disagree on that.
22 |       Before we leave Rule 23, I forgot to ask on
23 | typicality.  Didn't you forfeit the typicality issue below?
24 | You didn't preserve this.
25 |       MR. PETERSON:  No, Your Honor.  We certainly --

```
 1          THE COURT:  Okay.  Give me a citation as to where
 2   you preserve this issue.  Where did you raise it below?
 3          MR. PETERSON:  Joint Appendix Page 734.
 4          THE COURT:  Okay.  I looked.  Joint Appendix 732 to
 5   33 don't really seem to discuss this.  I ought to look at 734.
 6          THE COURT:  Does the record show -- does the record
 7   show how many putative class members have not yet learned
 8   about this conduct, so we can better --
 9          MR. PETERSON:  It's not --
10          THE COURT:  -- assess --
11          MR. PETERSON:  It's not --
12          THE COURT:  -- we can better assess your argument?
13          MR. PETERSON:  It's not perfectly clear, Your
14   Honor.  It's not perfectly clear how many putative class
15   members there are.  You know, recall, of course, it's not
16   examined in any way and it's difficult to know exactly how
17   many class members there will be.  There appears to be some
18   indication that hundreds of class members have been informed
19   of this.
20          But with the Court's permission, let me turn to
21   Rule 23(b).
22          THE COURT:  Please.
23          MR. PETERSON:  Thank you.
24          As Rule 23's text requires and as the cases
25   interpreting it make plain, class certification requires
```

 1 | satisfication [sic] -- satisfaction of one of the prongs of
 2 | Rule 23(b), in addition to satisfaction of Rule 23(a).  Here,
 3 | the district court did not make any findings on any of the
 4 | prongs of Rule 23(b).  Instead, it looked at 23(a) and then
 5 | to the Gates factors.
 6 |             THE COURT:  Is that required?  Is twenty -- is
 7 | analysis of 23(b) required under Gates and under the majority
 8 | view these days?
 9 |             MR. PETERSON:  Yes, Your Honor.  And to be clear --
10 |             THE COURT:  And what case supports that?  Other
11 | than the Fifth Circuit footnote from '96, what do you have?
12 |             MR. PETERSON:  Well, I would point you, for
13 | example, to Martin v. Behr Dayton Thermal Products --
14 |             THE COURT:  And that's --
15 |             MR. PETERSON:  -- a Sixth Circuit case --
16 |             THE COURT:  -- a case where the Supreme Court
17 | denied cert on this issue, right?
18 |             MR. PETERSON:  It is a case -- and I think it's a
19 | case that my friend champions.  And that's a case where it
20 | does accept the idea that you can certify under 23(c)(4)
21 | without proceeding to look at predominance and superiority --
22 | or I'm sorry -- without looking at predominance with respect
23 | to the non-certified issues.  However, it nonetheless applies
24 | a robust test for predominance, looking at whether these are
25 | truly separate issues or not.  And it actually says you do

1  need to look at superiority with respect to the claims as a

2  whole, explaining that superiority functions as a backdrop

3  against inefficient certification.  There is no court that I

4  am aware of that says you can disregard Rule 23(b) as a part

5  of certification.

6          Now Gates is a difficult case and it's difficult to

7  understand.  I'll certainly admit that.  I think there are

8  several ways of reading it and we've tried to set out a

9  couple of them in the brief.  I think the most that you can

10  read Gates for is the proposition that those factors are a

11  way of determining the predominance requirements of Rule

12  23(b).  But I don't think you can read the text of Gates and

13  say those factors are also as substitute for the superiority

14  requirements of Rule 23(b).

15          Now, in our view, we think that's wrong.  We do

16  think you need to take those Gates factors and not simply

17  look at them in isolation.  But even if you're going to

18  consider them, proceed to use them to make the required

19  superiority finding of Rule 23(b) -- I'm sorry -- the

20  required predominance finding of Rule 23(b)(3) and to make

21  the separate superiority finding of Rule 23(b) with respect

22  to the claims as a whole.

23          Let me turn briefly, though -- I'd like to turn

24  back to the interaction of 23(b) and (c)(4) -- I know I'm

25  pressed for time -- and just briefly touch upon the

1  application of the Gates factors in this case, which may be

2  the easiest way of resolving it.

3           We detailed the variations in state law in the

4  briefing.  We think the district court erred in concluding

5  Pennsylvania law could apply.  And with respect to the

6  variations in state law, it's not enough to say each of these

7  states has duties as an element of negligent inflection of

8  emotional distress.  This is a novel claim, attempting to

9  create broad new duties.  If you're going to say the state

10  law is the same, you have to do more than simply say they all

11  have duty as an element.  You would have to show that every

12  state would impose the same sweeping duty on credentialing

13  organizations.

14           With respect to the type of claim at issue, as we

15  pointed out, emotional distress is not a claim where you can

16  bifurcate damages and liability.  What my friend is going to

17  say is that the emotional distress is solely due to treatment

18  by Dr. Akoda.  That's not the case, though.

19           And I point you to Ms. Russell's deposition

20  testimony on Joint Appendix Page 403 because what she says

21  there is, "it's not just feeling violated by treatment by Dr.

22  Akoda, but it's feeling violated by the institutions that

23  allowed her to be treated by Dr. Akoda."  She's feeling

24  violated that -- in her view, she thinks ECFMG is a government

25  organization that performs background checks -- but in her

1    view, it's the institutions that were supposed to protect her

2    from Dr. Akoda that failed.  So her alleged emotional

3    distress really is traced to her view of ECFMG's actions, not

4    just the fact that she was treated by Dr. Akoda.  And in

5    analyzing that emotional distress, you would need to look at

6    all of the circumstances leading up to it.

7            Again, we argued this, we argued Spence to the

8    district court, it wasn't considered.  With the efficiencies,

9    as we pointed out, virtually all of the information presented

10    in any common proceedings would need to re-presented in any

11    individual proceedings.  Causation, all of our affirmative

12    defenses, the vast meat of the case is left for subsequent,

13    individual proceedings.  This case really is Gates, where the

14    plaintiffs were seeking to certify narrow, abstract questions

15    of duty and breach, while leaving the vast bulk of the case

16    for subsequent treatment in individual proceedings.

17            THE COURT:  Thank you, Counsel.  I mean, if you

18    have -- if -- I didn't mean to cut you off.  Did you want to

19    finish up here?

20            MR. PETERSON:  No.  Thank you.

21            With respect to Rules 23(b) and (c)(4) -- and I'm

22    sorry, Your Honor, I believe I'm into my rebuttal time.

23            THE COURT:  It's -- no, no, go ahead, go ahead.  Go

24    on, Counsel.

25            MR. PETERSON:  Thank you.

1          I just encourage the Court to look at the advisory

2    committee notes in 1990 -- 1966 to Rule 23, with respect to

3    Rule 23(b)(3) and 23(c)(4).  Both of them use the same

4    example, a fraud claim in which liability issues are suitable

5    for common treatment and damages are individualized.  And

6    what Rule 23(b)'s comments say is that is an example in which

7    the common liability issues predominate over the

8    individualized damage question.  That's the same example

9    called back to in Rule 23(c)(4), not as a way of evading the

10   predominance test, but pointing out the predominance test was

11   satisfied.

12         The circuits that have gone astray -- the Second

13   Circuit in the Nassau decision, the Sixth Circuit in its Behr

14   decision -- have both misread the advisory committee notes to

15   23(c)(4), suggesting that fraud example is an example of

16   evading the predominance requirements of 23(b)(3), not

17   correctly recognizing it as an example in which the

18   predominance requirements are satisfied.

19         THE COURT:  Thank you, Counsel.  We'll get you back

20   up on rebuttal shortly.

21         Mr. Thronson.

22         MR. THRONSON:  Thank you, Judge Restrepo.  May it

23   please the Court, Patrick Johnson on behalf of

24   (indiscernible) class.

25         The district court acted within its broad

1   discretion in certifying the negligence elements of duty and

2   breach which are indisputably common to all class members  A

3   single course of conduct in one state by the sole defendant

4   gave rise to claims of one type of class-wide harm under one

5   legal theory.

6           THE COURT:  Let me start --

7           MR. THRONSON:  All plaintiffs --

8           THE COURT:  Let me back you up to the Gates

9   factors.  All right?

10          MR. THRONSON:  Sure.

11          THE COURT:  Did the district court do a robust

12  enough analysis, so to speak, of the Gates factors?

13          MR. THRONSON:  Yes, Your Honor.  There are two

14  factors that my colleague indicated -- claimed were not

15  addressed in the district court's opinion in the reply brief.

16  The type of claims and issues in question -- that's addressed

17  throughout the district court's opinion.  And the district

18  court performed a very careful and discriminating analysis in

19  determining whether, for example, the entire issue of

20  liability could be certified, versus certain elements of

21  negligence in this case.  And that's on Pages Joint Appendix

22  45 and 56 and onward.

23          The second is the -- whether the substantive law

24  separates the issues from other issues concerning liability

25  or remedy.  If you look at the ALI Principles on which the

```
 1   Gates factors were modeled, the question there is whether,
 2   essentially, the district court can appropriately carve at
 3   the joint and find issues that can be efficiently and
 4   appropriately isolated for common treatment -- for common
 5   resolution, while leaving the remaining issues for
 6   individual resolution.  So you see consideration of those --
 7   that issue at 56 and 59 through 62.
 8              THE COURT:  The efficiency --
 9              THE COURT:  Mr. Thronson --
10              THE COURT:  Sorry.  Mr. Bibas, go ahead.  Judge
11   Bibas, go ahead.
12              THE COURT:  Sorry.  We should get back to
13   efficiencies.  But I did want to ask you about a couple of
14   factors that your friend doesn't focus on.  I didn't see
15   express discussion of Number 2, overall complexity; Number 6,
16   potential preclusive effect, or Number 7, repercussions of
17   certification on resolution of remaining issues.  Do you see
18   that in the record?
19              MR. THRONSON:  I -- in terms of the overall
20   complexity of the case, I think that -- I mean, the district
21   court accurately describes what the case is about, what the
22   claims are, talks about that individual -- these individual
23   elements of negligence can be isolated for class-wide
24   resolution, contemplates what the follow-on proceedings will
25   involve, in terms of the resolution of individual claims.  I
```

 1 | think that's inherent in the entire discussion, Judge Bibas.

 2 |         In terms of the potential preclusive effect, on

 3 | Joint Appendix 60 through 61, the Court, for example,

 4 | discusses whether non-mutual collateral estoppel could be

 5 | sufficient and determines that class treatment -- determines

 6 | that it can't be, that it won't be because it will generate

 7 | inconsistent outcomes.  And if ECFMG prevails in one trial,

 8 | they can't use that result against another plaintiff, and

 9 | that the preclusive effect of a class determination of these

10 | issues is a superior way --

11 |         THE COURT:  And how about the repercussions on

12 | other remaining issues?

13 |         MR. THRONSON:  I see that discussed on 60 through

14 | 61, which is, again, a discussion of preclusion; and also on

15 | 61, the individual proceedings will remain which will focus

16 | on causation and damages need not impact each other.  So I

17 | see the district court considering that there.

18 |         THE COURT:  And maybe it considered it, but let's

19 | talk about that in the light of efficiency.  So let's assume

20 | you prevail down the line on duty and breach, and now you're

21 | at a damages phase of this proceeding.  What's that going to

22 | look like?

23 |         MR. THRONSON:  What it will look like, Your Honor,

24 | is a series of mini-trials and --

25 |         THE COURT:  Like 700, maybe, mini-trials?

1        MR. THRONSON:  Well, likely not.  I think how the

2  district court -- obviously, it would be up to the district

3  court's discretion and judgment, in terms of how the class

4  proceeding pans out and what the case looks like at that

5  stage.

6        THE COURT:  Even if you --

7        MR. THRONSON:  We might be --

8        THE COURT:  -- had maybe --

9        MR. THRONSON:  -- structured as -- like a mass tort

10  case, where --

11        THE COURT:  But even if you had just --

12        MR. THRONSON:  -- you have a bellwether --

13        THE COURT:  Even you had just a handful of mini-

14  trials, you would still have to present evidence.  Damages is

15  tethered to duties and breach, right?  And causation.

16        MR. THRONSON:  Well, here, what you would avoid by

17  using the class device is repetitive, expensive presentation

18  of expert testimony on the standard of care.  So the parties

19  have identified approximately 15 experts, and the majority of

20  them pertain to standard of care.  And in resolving issues of

21  duties of breach, you don't have to present that evidence

22  repeatedly, fly experts in from all over the country and

23  present them at 700 individual trials.  You know, we

24  represent 550 claimants.  I think there's evidence in the

25  record that there are about 720 who were treated at Prince

 1 | George's Hospital Center, at the very least.

 2 |         So you have some kind of limited presentation of

 3 | the evidence that will -- of the factual record -- that could

 4 | be through answers to special interrogatories that are

 5 | submitted at the class proceeding, it could be through a

 6 | stipulation entered into by the parties, it could be through

 7 | presentation of witness testimony -- that would allow the

 8 | jury to develop an understanding of what occurred, and -- but

 9 | again, no expert testimony on liability.

10 |         And then you have testimony of the plaintiff, we

11 | have testimony of perhaps one or two fact witnesses

12 | (indiscernible) physician or someone who's evaluated the

13 | plaintiff, to testify as to the nature of the impact.  So

14 | causation and damages would be resolved in those individual

15 | proceedings.  And most likely, Your Honor, like most

16 | individual -- like most MDLs resolve, they don't resolve 700

17 | individual cases.  After litigating a number of these,

18 | eventually, the parties are able to -- it facilitates

19 | settlements and it facilitates an appropriate valuation of

20 | the case.

21 |         To turn briefly to the Gates factors because we

22 | were on that immediately beforehand.  The Gates factors are

23 | the means by which predominance and superiority are resolved

24 | in the context of an issue class certification.  What the

25 | ALI Principles did and what the district -- what this Court

1  adopted is a means of determining, with precision, the
2  considerations that are involved in the interplay between
3  (b)(3) and (c)(4).
4          So, for example, Section 2.02, Comment A, indicates
5  "this section as a whole, not just the phrase 'materially
6  advance,' delineates the multi-faceted inquiries presently
7  encapsulated under the predominance concept."
8          The reporter's notes indicates the objective of
9  these factors is to assist both courts and lawyers by
10  identifying with greater precision the considerations
11  reflected in the interplay between Subsections (b)(3) and
12  (c)(4), as set forth in existing case law.
13          What the Gates factors don't contemplate is that
14  the Court go through a detailed analysis of the Gates factors
15  as pertaining to the issue class, and then back up and do an
16  evaluation of (b)(3) as it pertains to the entire claim.
17  That's not in the text of Gates, and it doesn't make sense
18  for -- in terms of the text and structure of Rule 23 as we
19  described in the brief.
20          THE COURT:  What about doing it -- what about doing
21  it in the other order?  Start with (a) and then do (b),
22  especially (b)(3).  And then, if you can't satisfy
23  predominance and superiority, you don't get to (c)(4).
24  Instead of doing (c)(4) and then backing up to (b), why not
25  do (b)(3); and then, if it's satisfied, go to (c)(4)?

1          MR. THRONSON:  That was a -- Judge Porter, that was

2     a path that the district court -- that the Circuit Court

3     considered, but then rejected in Gates.  The Court considered

4     (b)(3) and then went on to the consideration of whether the

5     class satisfied (c)(4).  If (b)(3) certification were

6     required for the entire claim before considering (c)(4), the

7     -- this Court would not have had to go on to (c)(4).

8          And the reason is that that avoids -- I think that

9     mode of operating would avoid the efficiencies that are

10    presented by the class device.  I mean, here, you have issues

11    of duty and breach that involve the conduct of one defendant

12    in one state, it's a single course of conduct that are

13    indisputably common to all class members.  And it's

14    appropriate to give the district -- under Rule 23 and under

15    general principles of case management, to give district

16    courts the tool to isolate those issues for common treatment

17    and for common resolution.  And that's exactly what the ALI

18    Principles contemplate.

19         THE COURT:  All right.  So Gates really left this

20    issue open.  It didn't really decide either way, you know.

21    And the Fifth Circuit viewed (c)(4) as just, okay, if you've

22    satisfied (a) and (b), it might be a little cleaner to let

23    the Court do it this way.  Why shouldn't we follow the Fifth

24    Circuit's approach and not allow (c)(4) to -- you know, if a

25    class doesn't satisfy (b)(3), then (c)(4) is not going to

1  broaden it or allow it in -- you know, if (b)(3) is only

2  partially asserted satisfied.

3           MR. THRONSON:  Judge Bibas, I think I disagree with

4  the idea that Gates didn't resolve that question.  I mean,

5  this Court expressly considered Castano --

6           THE COURT:  Right.

7           MR. THRONSON:  -- and decided not to follow it.

8           THE COURT:  I understand that argument.

9           MR. THRONSON:  And so --

10          THE COURT:  But let's assume that Gates leaves the

11  issue open.  Why should we favor the majority side of the

12  circuit split, as opposed to the Fifth Circuit's approach?

13          MR. THRONSON:  First of all, all of the rest of the

14  circuits who have considered the issue have come into

15  alignment on the question and have rejected Castano.  Even

16  the Fifth Circuit has moved away from Castano.

17          Moreover, if the entire case can be satisfied as to

18  (b)(3), there's no reason to then consider whether the

19  discrete issue within that case needs to be satisfied.

20          THE COURT:  So (c)(4) would be superfluous.

21          MR. THRONSON:  Exactly, exactly.  That's precisely

22  the consider -- the concern that the Fourth Circuit

23  identified in Gunnells.

24          THE COURT:  Okay.

25          MR. THRONSON:  I would disagree, too, with my

1 | colleague's characterization of the Gates factors as not

2 | addressing superiority.  The Gates factors expressly

3 | considered the -- whether the proceeding can be efficiently

4 | resolved.  And if you look at Section 2.02 of the ALI

5 | Principles, it discusses -- I can quote from it for you

6 | directly.

7 |        It asked district courts to consider whether issue

8 | certification will materially advance the resolution of

9 | multiple civil claims by addressing the core of the dispute

10 | in a manner superior to other realistic procedural

11 | alternatives.  That tracks the superiority requirement of

12 | Rule 23(b)(3).

13 |        THE COURT:  I'm going to ask you to talk about

14 | choice of law a little.  Your friend spent some time on this.

15 | And I want you both to talk about the substance of why choice

16 | of law is appropriate, and also the record the district court

17 | made on choice of law.  You know, is it so clear that

18 | Pennsylvania law applies?  And did the district court say

19 | enough about Maryland and D.C. law, such that it has a record

20 | to justify why it thought Pennsylvania law is the one that

21 | governs here.

22 |        MR. THRONSON:  We believe so, Judge Bibas.  We

23 | believe the district court did sufficiently consider the

24 | issue, did thoughtfully consider whether the laws of these

25 | different states materially differ in a way that would impact

1   manageability in certifying these issues for class-wide

2   treatment.

3           I mean, the real options are that Pennsylvania law

4   applies --

5           THE COURT:  Uh-huh.

6           MR. THRONSON:  -- to all claims, or that D.C. and

7   Maryland law apply to all claims.

8           THE COURT:  Right.

9           MR. THRONSON:  And in neither instance is class

10  certification impaired.  I mean, it -- at the worst, worst-

11  case scenario, you have different classes certified,

12  depending on where the plaintiff resides.

13          THE COURT:  Well, but make the arguments because

14  your friend says, okay, Maryland law, in particular, doesn't

15  have this separate tort, and the person was injured in

16  Maryland, and so you're going to be in a morass about which

17  tort we're talking about here.  So, you know, what's the case

18  that it really is Pennsylvania law that governs?  And what's

19  the case that, even if it isn't Pennsylvania law that

20  governs, that it just -- it really doesn't matter which law

21  governs?

22          MR. THRONSON:  Sure.  So the -- taking the second

23  point first, there's no dispute as to the negligence cause of

24  action.  So my colleague doesn't make any contention that,

25  somehow, the laws of these different states and districts are

1  | materially different on negligence.

2  |        The question as to negligent infliction of

3  | emotional distress, the district court appropriately

4  | concluded that there was no functional difference between --

5  | certainly, there's no difference between D.C. and

6  | Pennsylvania, there's no issue raised by my colleague there.

7  | And there's no real functional difference between those two

8  | jurisdictions and Pennsylvania and Maryland because Maryland

9  | permits the recovery of emotional distress damages in a

10 | negligence cause of action without physical impact.

11 |        THE COURT:  Have you done a fifty-state survey?

12 | I'm just kind of curious, when this issue and case goes on to

13 | other people who have moved elsewhere, like how widespread

14 | these approaches are?

15 |        MR. THRONSON:  The approach of negligent

16 | infliction --

17 |        THE COURT:  Of having --

18 |        MR. THRONSON:  -- (indiscernible)

19 |        THE COURT:  -- separate negligent infliction tort

20 | or having the functional equivalent folded inside negligence.

21 |        MR. THRONSON:  I have not done a fifty-state survey

22 | of that, Your Honor.  I'm happy to (indiscernible)

23 |        THE COURT:  That's all right.  So then let's assume

24 | that he has something to the point that Maryland's difference

25 | matters.  How clear is it that Pennsylvania law really ought

1    to govern all of these?  I think he's pushed that point.

2          MR. THRONSON:  Because what's -- my colleague

3    focuses the choice of law question on conduct that is really

4    not part of this aspect of the case and not relevant to the

5    parties who are actually in the case.  I mean, this case is

6    about ECFMG's conduct in Pennsylvania.  ECFMG is a

7    Pennsylvania corporation.  It's not about what Akoda did,

8    it's not about what other state medical boards did for the

9    purpose of determining choice of law.  It's really about what

10   a Pennsylvania corporate citizen did.

11         And it would be a strange outcome to have the

12   application of Pennsylvania tort law to regulate the conduct

13   of a Pennsylvania corporation depend on the fortuitous

14   location of a plaintiff at that time the particular plaintiff

15   happened to be injured.  And so I think the district court

16   appropriately determined that, really, Pennsylvania had the

17   most substantial relationship to the dispute; and, therefore,

18   Pennsylvania law should govern.  And the analysis is sound

19   there.

20         THE COURT:  Could you touch on counsel's argument

21   with respect to this conflict of interest?

22         MR. THRONSON:  Certainly.  First of all, as, Judge

23   Restrepo, you made a reference to, only a fundamental

24   conflict of interest can defeat adequacy.  The district court

25   made this finding at Page 20 of its opinion, citing Dewey v.

 1 | Volkswagen.  My colleague doesn't contest this.
 2 |        And what a "fundamental conflict of interest" means
 3 | is that some members of the class benefitted, while other
 4 | members were harmed by the relevant conduct.  Here, the
 5 | district court appropriately found that no one benefitted
 6 | from the conduct.
 7 |        And so it would be -- there's no real basis that my
 8 | colleague identifies to deem the district courts to have
 9 | clearly erred in this finding.  I mean, there's no argument
10 | that the district court misapplied circuit precedent or
11 | Supreme Court precedent.  There's no argument that, somehow
12 | -- that my colleague's speculative argument about the
13 | potential impact of this notice upon individuals, that that
14 | is contained in a precedent that was misapplied.
15 |        The important thing, too, for the Court to
16 | recognize is that this argument does not apply to the over
17 | 500 individuals who are already represented.  So these are
18 | individuals who already aware of the claim and are already
19 | signed up and they're in the record.  And so this -- the
20 | adequacy argument does not apply to them.
21 |        Moreover, it's important to recognize that
22 | plaintiffs don't seek to inflict emotional injury on anyone.
23 | They seek to vindicate their rights and the rights of the
24 | class members.  And in any event, if there is such a person
25 | out there who, despite the widespread media coverage of this

1  | case, were to determine that -- were to be, you know,

2  | emotionally distressed by receiving notice of this and didn't

3  | know about it beforehand, ECFMG, under our theory, is the

4  | cause of that emotional distress.  The Court or the mailman

5  | or counsel, plaintiffs' counsel, are just the messenger for

6  | that.  I mean, the -- we don't cut off ECFMG as a proximate

7  | cause of that emotional distress.  So it's important to

8  | distinguish between the cause of injury and the means by

9  | which that injury comes to light for an individual plaintiff.

10 |         Actually, briefly, on typicality, Your Honor.

11 | There are a number of hurdles to overcome, I believe, for

12 | this Court to find in favor of my colleague on typicality.

13 | First is the discussion in Newton v. Merrill Lynch.  It's a

14 | case that's cited on Page 23 of ECFMG's brief.  And as to

15 | typicality, Judge Scirica articulated:

16 |         "The criterion acts as a bar to class certification

17 | only when the legal theories of the named representatives

18 | potentially conflict with those of the absentees.  If the

19 | claims of the named plaintiffs and putative class members

20 | involve the same conduct by the defendant, typicality is

21 | established, regardless of factual differences."

22 |         We believe that language is dispositive here.

23 |         Also, the Court's language in the NFL concussion

24 | cases that typicality is a low threshold.  And in that case,

25 | only 28 percent of the class members were expected to suffer

1   any injury, and that was no barrier to the class

2   certification for (indiscernible)

3          THE COURT:  That's typicality.  Now talk about this

4   adequacy argument that the notice itself was going to

5   traumatize your clients.

6          MR. THRONSON:  Certainly.  There, we find that,

7   first of all, as I was mentioning to Judge Restrepo, that a

8   fundamental conflict of interest is required in order for

9   adequacy to be impaired, which is some individuals benefitted

10  and other individuals were harmed.  And we don't -- there's

11  no contention that that's the case here by appellant, and

12  there's no challenge to that particular test or any kind of

13  argument that that test doesn't apply.  The district court

14  made that finding explicitly, so we believe that the district

15  court's finding on adequacy is sound.  Again, it doesn't

16  apply to the individuals who are already represented, who are

17  over 500 in number.

18         And ECFMG is the cause of the class members'

19  injuries; I mean, the cause in two respects:  First, that it

20  was the -- sorry.  Let me back up for a second.

21         In that scenario, let's assume there is someone out

22  there who did not know about this issue, and finds out

23  through some kind of court-approved notice that would reflect

24  the district court's careful consideration of this matter and

25  the potential impact upon plaintiffs of receiving it.  ECFMG

1 | is the cause of whatever distress occurs.  I mean, it's just
2 | -- it would be as strange to argue that somehow the mail
3 | carrier or the Court were the cause of emotional distress in
4 | that scenario, as it would be to argue that somehow the news
5 | media is the cause of an individual's distress and for the
6 | rest of the plaintiffs, and that somehow there's an action
7 | against them.  So, again, it's important to distinguish
8 | between the cause of the injury and the means by which the
9 | injury comes to light.  The Court and class counsel would be
10 | merely the messenger under that scenario.
11 |            And I think, in pointing out that if this -- just
12 | one final point.  We think that Gates is sound, we don't
13 | seek any modification to Gates, contrary to my colleague's
14 | contention in its brief.  We don't believe that Gates
15 | overruled and modified in any way.
16 |            We do believe that Rule 23 is trans-substantive,
17 | and that -- meaning that the mere facts that a party is
18 | claiming emotional distress doesn't mean that the class
19 | certification is precluded.  You can see that in the Gunnells
20 | case, where emotional distress was one of the claims and the
21 | Fourth Circuit, nonetheless, certified issues classes there.
22 | So we're just merely saying that Gates and Rule 23 don't
23 | contemplate that emotional harm can be rejected vel non.
24 |            THE COURT:  Does it matter that --
25 |            MR. THRONSON:  And your Honor --



AdvancedONE
LEGAL
(866) 715-7770
advancedONE.com

1        THE COURT:  Does it matter -- does it matter that,

2   in a negligence action for emotional distress, damages cannot

3   be bifurcated from liability?

4        MR. THRONSON:  I don't think that's universally the

5   rule, Your Honor.  I think that -- and in this particular

6   case, we're facing a different scenario, where -- in an

7   ordinary negligence case, you're talking about the personal

8   interaction between the plaintiff and the defendant and you

9   need to develop a factual record to determine the effect of

10  defendant's actions on the plaintiff.

11       Here, there's no direct interaction between the

12  plaintiff and the defendant.  The defendant's conduct can be,

13  you know, isolated.  It's a common course of conduct and can

14  be addressed on a common basis and without any issue of

15  having emotional distress be addressed separately because the

16  emotional distress arises out of the interactions with Akoda,

17  either -- again, there's no Dr. Akoda.

18       Let's be clear.  There is a Mr. Igberase.  There's

19  no medically licensed individual named "Akoda."  He doesn't

20  have a board certification, he doesn't have a medical

21  license.  The license was stripped for committing a crime of

22  moral turpitude.

23       But the emotional distress arises out of that

24  interaction and, separately, for some, for plaintiffs finding

25  out about ECFMG's conduct and Akoda/Igberase's true identity.

```
 1   So we believe that there is a separation there that permits

 2   these issues to be resolved separately.

 3            THE COURT:  Thank you very much.  I'm sorry, I

 4   didn't mean to cut you off.  Anything else you want to add

 5   for us?

 6            MR. THRONSON:  Nothing else.  Thank you, Judge

 7   Restrepo.

 8            THE COURT:  All right.  Take care.

 9            Mr. Peterson.

10            MR. PETERSON:  Thank you, Your Honor.  A few points

11   in rebuttal.

12            First, what you heard from my friend during his

13   argument is the first time that the plaintiffs have put

14   together any kind of concrete trial plan as to how this case

15   will actually be tried.  Now we think that's wrong.  But more

16   significantly, that's the sort of thing that should have been

17   analyzed in the district court and not for the first time

18   during oral argument on appeal.  The fact that we are

19   disputing, right now, what evidence would need to be

20   presented at each proceeding, what issues would need to be

21   pre -- decided at each proceeding is, essentially,

22   confirmation that the district court didn't rigorously

23   analyze how this case would actually be tried below.

24            And I'll note I can understand why my friend would

25   want to try the case that way, but there's no answer to
```

1  causation in his trial plan.  There's no answer to when and

2  which jury would actually look at ECFMG's conduct, compared

3  to all of the other numerous causes of the alleged emotional

4  injury suffered by plaintiffs and decide whether ECFMG was

5  actually the proximate cause of anyone's injuries.

6           Second, there were references to the majority of

7  the circuit split.  Judge Bibas, I do want to suggest I think

8  the circuit split may have been unsettled somewhat by the

9  Supreme Court's Comcast decision in 2013.  If you look at the

10  wake of Comcast and what some of the circuits did; in

11  particular, the Seventh Circuit on remand in Butler v. Sears,

12  Roebuck & Company --  that was a remand from the Supreme

13  Court, a common liability class and individual damage issues

14  under Rule 23(c)(4).  It went back down to the Seventh

15  Circuit.

16           The Seventh Circuit didn't say, because this is a

17  23(c)(4) class, we can look at predominance, just focused on

18  the common liability issues.  The Seventh Circuit looked at

19  it and said, well, we need to look at predominance, comparing

20  the common liability issues against the individual damages

21  issues, and correctly determined, even in a 23(c)(4) class,

22  that those issues predominated.  But it still made that

23  comparison.

24           THE COURT:  Well, what do you say to your friend's

25  argument that, if you do it in that order, you render (c)(4)

1  superfluous?

2       MR. PETERSON:  Well, I say his argument renders

3  23(b)(3) superfluous --

4       THE COURT:  I --

5       MR. PETERSON:  -- (indiscernible)

6       THE COURT:  I know.

7       MR. PETERSON:  So I think the -- I actually

8  disagree.  And I think the Fourth Circuit went astray in

9  Gunnells when it suggested that you should just -- the

10 alternative is to ignore (c)(4) as you proceed through the

11 (b)(3) analysis -- and Judge Porter, respectfully, I do

12 think (c)(4) and the availability of the power under (c)(4)

13 is important in a 23(b)(3) class action.  You need to know

14 which issues the Court is being asked to give class

15 treatment to and what will actually be tried on a class-wide

16 basis, as opposed to individually, any time you're

17 proceeding through the superiority and predominance analysis

18 of (b)(3).

19       So, far from rendering 23(c)(4) a dead letter, in

20 our view, Rule 23(c)(4) is used and is important every time

21 you have a class action in which not all of the issues are

22 being given class-wide treatment, which is a relatively

23 common occurrence, albeit often implicitly, rather than

24 explicitly under 23(c)(4).

25       Third, with respect to choice of law, as I think my

1 | friend indicated, the only real relationship that
2 | Pennsylvania has to this lawsuit is the fact that ECFMG is
3 | located there, that ECFMG's communications were with out-of-
4 | state entities.  Now ECFMG's communications are to hospitals
5 | located out of state, ECFMG's communications located to
6 | medical boards out of state.  The location of the defendant
7 | tends to be the least significant factor in the choice of law
8 | analysis.
9 |          And again, what's critical here is not just that,
10 | at a high level, the tort is recognized; not just, at a high
11 | level, that these states recognize a cause of action for
12 | negligence.  What matters is whether these states would
13 | actually recognize the duty that plaintiffs are seeking to
14 | impose.  These are novel claims.  This is an extraordinarily
15 | broad duty.  A suggestion that ECFMG owes any kind of duty at
16 | all to any kind of patient treated by any foreign medical
17 | graduate is a broad, expansive proposition, and it's one that
18 | would need to be tested and questioned under the law of each
19 | of these states.
20 |          Fourth, with respect to the adequacy discussion and
21 | the conflict, my friend talked about it as the injury coming
22 | to light, and I think that's not a framing that we agree
23 | with.  It's not about an injury coming to light, it's about
24 | not suffering an injury.
25 |          This is not the usual case in which there is a

1    plaintiff who has suffered a physical or pecuniary injury or

2    even an emotional injury, walks into a lawyer's office,

3    finds out about it, and then walks out being represented.

4    This is a case in which there are class members who have

5    suffered no injury at all, who don't even know that they were

6    ever examined by Dr. Akoda, who are happily living their

7    lives and who will continue happily living their lives, not

8    with no injury that has come to light, but with no injury

9    whatsoever.

10            And under my friend's theory, they suffer that

11   injury and they suffer compensable emotional distress --

12   which is not a small thing -- upon being notified of the

13   class.  Again, this is novel.  I don't think either party has

14   found a case which involves this.  But I do think it's a

15   serious consideration when the plaintiffs' theory is that the

16   class certification itself will, in fact, cause the injury

17   that will then allow the class members to recover.  Not an

18   injury coming to light, but an injury actually occurring.

19   It's not about causation and it's no about whether ECF [sic]

20   is legally responsible for it -- although we certainly think

21   it's not -- but it's about the fact that there is no injury

22   pre-close -- pre-certification, and then there is an injury

23   post-certification.

24            And Your Honor, if I can close just on one point.

25            THE COURT:  Sure.

```
 1        MR. PETERSON:  It is a question of causation and
 2   it's a question of whether these claims can be severed in the
 3   manner suggested by the district court.  The -- ECFMG needs
 4   to be able to present its defenses.  Class certification
 5   cannot be used can deprive a defendant of the right to
 6   present its case and present its arguments, including, here,
 7   the fact that any emotional distress traceable to ECFMG needs
 8   to be considered in light of all of the evidence of ECFMG's
 9   conduct, and that causation needs to be weighed in light of
10   all of the different actors, including ECFMG's conduct.
11   These claims are not divisible, and class certification
12   was error.
13        THE COURT:  Counsel, thank you very much.
14        I'm going to ask that you folks reach out to the
15   Clerk's Office and make arrangements to docket the transcript
16   -- and you'll split the costs -- of this argument.
17        MR. THRONSON:  Certainly, Your Honor.
18        MR. PETERSON:  Thank you, Your Honor.
19        THE COURT:  And thanks again for working with us to
20   reschedule this.  Have a great rest of your day.
21        MR. PETERSON:  Thank you.
22        THE COURT:  We're in recess.
23        MR. THRONSON:  Thank you, Your Honor.
24        (Proceedings concluded)
25                        ******
```

```
 1                          CERTIFICATION

 2

 3           I certify that the foregoing is a correct

 4    transcript from the electronic sound recording of the

 5    proceedings in the above-entitled matter to the best of my

 6    knowledge and ability.

 7

 8

 9

10

11    _____    February 18, 2021
      Coleen Rand, AAERT Cert. No. 341
12    Certified Court Transcriptionist
      For AdvancedONE Legal
13

14

15

16

17

18

19

20

21

22

23

24

25
```

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

<u>CERTIFICATE OF ACCURACY</u>

On behalf of all counsel I hereby certify that I have reviewed the foregoing transcript, and

that it is an accurate transcription of the oral arguments held on Thursday, February 11, 2021.

February 24, 2021
Dated

Patrick A. Thronson